# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

JERRY COX, an individual

    Plaintiff,

vs.

MARIPOSA COUNTY; MARIPOSA COUNTY SHERIFF'S OFFICE; SHERIFF DEPUTY WILLIAM ATKINSON; SHERIFF DEPUTY WESLEY SMITH; ASHLEY HARRIS; CALIFORNIA RECEIVERSHIP GROUP; MARK ADAMS; and DOES 1 through 100, inclusive,

    Defendants.

**CASE NO. 19-CV-01105-AWI-BAM**

**ORDER DISMISSING CLAIMS AGAINST DEFENDANT CALIFORNIA RECEIVERSHIP GROUP AND DEFENDANT MARK ADAMS FOR LACK OF SUBJECT MATTER JURISDICTION**

(Doc. No. 6)

## **INTRODUCTION**

As alleged in the Complaint, the County of Mariposa ("County") brought 16 felony counts against Plaintiff Jerry Cox ("Cox") in 2015 and 2016 in connection with an alleged rape, only to drop the charges after several months of contentious discovery exposed improprieties in the investigation, as conducted by the Mariposa County Sheriff ("MCS"), and revealed that the alleged victim had lied under oath. During the same period, the County initiated a receivership in Mariposa Superior Court (the "Receivership") where Defendant California Receivership Group ("CRG") and Defendant Mark Adams ("Adams" and together with CRG, the "Receiver") were tasked with correcting scores of health and safety violations involving various structures on nearly 500 acres of land belonging to Cox in Mariposa County (the "Property"). The Receiver took control of the

Property and ran up hundreds of thousands of dollars in bills (largely comprising fees for professional services rendered by itself and its affiliates) but failed to rehabilitate the Property. The Receiver put the Property up for sale "as is" to cover its fees and other expenses relating to the Receivership, and Cox now faces chronic homelessness and destitution after several years of working the Property as a farm, ranch and agritourism business in a remunerative fashion.

Cox filed this action on August 12, 2019 alleging multiple claims under state and federal law against the County, the MCS, the Receiver and various other defendants who allegedly played a role in the foregoing events. The Receiver brought a motion to dismiss—primarily for lack of subject matter jurisdiction—and a special motion to strike pursuant to section 425.16 of the California Code of Civil Procedure, which essentially provides for early summary judgment on state law claims involving acts relating to free speech and petitioning for redress. For the reasons set forth below, the Court will dismiss the claims against the Receiver without prejudice for lack of subject matter jurisdiction and will deny the special motion to strike as moot.

## **BACKGROUND**

The Court assumes the following facts, which are culled from the Complaint and materials subject to judicial notice, are true for purposes of deciding this motion:

Cox owned—directly or indirectly[1]—477-acres known as the Bison Creek Ranch in Mariposa County, California (the "Property"). Doc. No. 1 ¶¶ 8, 18, 35. The Property comprises three parcels and was operated for a period of several years "as a farm, ranch and agritourism business." Id. ¶ 35.

CRG is a California company that "purports to specialize in receiverships to bring non-code compliant properties up to code." Doc. No. 1 ¶ 43. Adams is the president and CEO of CRG. Id. ¶ 44.

On November 13, 2015, the MCS arrested and jailed Cox in connection with an alleged rape on the Property. Doc. No. 1 ¶¶ 59, 69. In 2015 and 2016, the County filed a criminal

---

[1] The manner in which title for the Property is held is not at issue in this motion, but the question of whether title is held by Cox or by Cox's company, JDC Land Holdings, LLC, is a point of contention in another motion pending before the Court. The Court expresses no view on that question here.

2

complaint in Mariposa Superior Court charging Cox with 16 felonies, including forcible rape with a special allegation of great bodily injury, kidnapping, criminal threats and battery. Id. ¶ 74. An extended period of contentious discovery ensued in which the MCS and County withheld and failed to collect exculpatory evidence, and on August 14, 2017, the County dismissed all criminal charges against Cox stemming from the alleged rape pursuant to section 1385 of the California Penal Code (which provides for dismissal of a criminal action on the judge's motion or "upon the application of the prosecuting attorney"). Id. ¶ 146; Cal. Penal Code § 1385.

On October 14, 2016—while the felony charges against Cox were still pending and related discovery was still underway—the MCS executed a civil search warrant in connection with the Property based on a sealed affidavit, Doc. No. 1 ¶¶ 99, 101, and on March 13, 2017, the County filed a Verified Complaint for Nuisance Abatement and Receivership in Mariposa Superior Court (the "Receivership Action") falsely alleging 101 building, health and safety code violations on the Property. Id. ¶ 104; Doc. No. 9-1 ¶ 10.

Cox's company, JDC Land Holdings, LLC, filed an Answer to the County's complaint on April 6, 2017, and on June 20, 2017, the County filed a Motion for Appointment of Receiver pursuant to section 17980.7(c) of the California Health and Safety Code. Doc. No. 1 ¶ 131.

On July 17, 2017, the Mariposa Superior Court issued an Order Appointing Receiver, appointing Adams "as the Court's receiver over the [] Property, with full powers granted to receivers under Health and Safety Code section 17980.7(c) and Code of Civil Procedure sections 564, et seq." [2] Doc. No. 1 ¶ 138; Doc. No. 9-1, page 33 of 120, lines 12 through 15.

---

[2] The Court takes judicial notice *sua sponte* of the Order Appointing Receiver pursuant to Federal Rule of Evidence 201(b)(2) and (c)(2); Valdez v. Sanford, 2010 WL 11601045, at *2 (C.D. Cal. Oct. 20, 2010) (stating that "the court may, *sua sponte*, take judicial notice of 'adjudicative facts' (e.g., court records, pleadings, etc.) and other facts not subject to reasonable dispute and either 'generally known' in the community or 'capable of accurate and ready determination by reference to sources whose accuracy cannot be reasonably questioned.' " (quoting Edie v. Baca, 2009 WL 3417844, at *3 (C.D. Cal. Oct. 19, 2009) (internal quotation marks omitted)); see also, In re CitX Corp., 302 B.R. 144, 147 (Bankr. E.D. Pa. 2003) (taking notice of state court orders in deciding Rule 12(b)(1) motion).

In addition, Cox filed a request that the Court take judicial notice of an order from the California Court of Appeal in *Heinl v. Adams*, where the court apparently upheld an award in favor of plaintiffs for fees incurred in prosecuting slander of title and abuse of process claims against Adams, and an order to show cause in a California Superior Court case captioned *State of California v. Jack A. McGuire*, where the court stated that it was "extremely skeptical" of costs incurred by Adams in connection with rehabilitating a receivership property. Doc. No. 9-10. The Court denies Cox's request for judicial notice on the grounds that these records, while disturbing, are irrelevant to the instant motions. See

| | |
|---|---|
| 1 | Specifically, the Order Appointing Receiver provided, *inter alia*, that "Receiver shall take full and complete possession and control of the [] Property," Doc. No. 9-1, page 34 of 120, lines 4 through 6; "manage the [] Property and [] pay the operating expenses of the [] Property, including taxes, insurance, utilities, maintenance and other debts," id., page 34 of 120, lines 7 through 8; "develop a rehabilitation plan for the [] Property," id., page 34 of 120, lines 12 through 15; and "rehabilitate the [] Property in accordance with the rehabilitation plan approved by [the Mariposa Superior] Court …." Id., page 34 of 120, lines 16 through 18. |

Further, the Order Appointing Receiver provided that "Receiver may temporarily relocate occupants of the [] Property, as necessary, to effectuate the rehabilitation of the [] Property," Doc. No. 9-1, page 35 of 120, lines 11 through 12; "borrow funds as necessary to pay for the rehabilitation of the [] Property and to pay the costs and debts of the receivership estate," id., page 35 of 120, lines 1 through 2; and "apply to [the Superior Court] to sell the [] Property" pursuant to Code of Civil Procedure section 568.5 in order to satisfy financial obligations secured by the Property. Id., page 35 of 120, lines 7 through 10.

The Receiver failed to develop a rehabilitation plan and grossly exaggerated the cost of rehabilitating the Property. Doc. No. 1 ¶¶ 106, 108. Moreover, the Receiver used the Property to secure $250,000 in funding but did not use those funds on repairs, property taxes, business taxes, utilities, or other obligations relating to the Receivership. Id. ¶¶ 109, 126. While in possession of the Property, the Receiver also engaged in feeding practices dangerous to "free range" animals on the Property, id. ¶ 112; failed to secure animals properly, leading to the disappearance of two horses and injury to another, id. ¶ 113; and mischaracterized the condition of structures on the Property to the Mariposa Superior Court. Id. ¶¶ 114-17 & 119-20. In addition, the Complaint alleges that guards installed on the Property by the Receiver "used Cox's off-road Honda Pioneer for several months and damaged the machine steering and suspension;" that "guards' children and grandchildren were seen vacationing" on the Property; and that the Receiver or its agents broke into, seized and vandalized adjacent property belonging to Cox at 6108 Mosher Road "even

---

California v. M & P Investments, 308 F. Supp. 2d 1137, 1143 (E.D. Cal. 2003).

4

though it was not subject to the [Receivership]." Id. ¶ 120. All told, the Receiver ran up $700,000 in bills in connection with the Receivership and is now attempting to force the sale of the Property—at a price far below its appraised value—to get paid. Id. ¶¶ 128, 145.

Finally, the Receiver posted marketing videos on the CRG website falsely stating that Cox had endangered tourists by allowing the Property to fall into disrepair and that farm animals on the Property were neglected. Doc. No. 1 ¶ 104.

Cox sought leave from the Mariposa Superior Court to sue the Receiver in connection with the foregoing allegations but leave was denied. Doc. No. 1 ¶¶ 51, 144. He then filed this action against CRG, Adams, MCS, the County and others alleging multiple claims for violation of state and federal law, including several civil rights claims under 42 U.S.C § 1983 and the United States Constitution. Doc. No. 1.

## **LEGAL STANDARD**

"Federal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). The presumption is that federal courts are "without jurisdiction unless the contrary affirmatively appears." Fifty Associates v. Prudential Ins. Co. of America, 446 F.2d 1187, 1190 (9th Cir. 1970) (citations omitted). Limits on the jurisdiction of federal courts "must neither be disregarded nor evaded." Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978). Where jurisdiction is lacking, the court is deprived of any power to adjudicate the merits of claims. Hampton v. Pac. Inv. Mgmt. Co. LLC, 869 F.3d 844, 846 (9th Cir. 2017) (citing Wages v. I.R.S., 915 F.2d 1230, 1234 (9th Cir. 1990)). Accordingly, a court without jurisdiction over certain claims has no choice but to dismiss them "regardless of their gravity or potential validity." See United States v. Tenet Healthcare Corp., 343 F. Supp. 2d 922, 925 (C.D. Cal. 2004) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998)).

"The burden of establishing federal jurisdiction is on the party invoking federal jurisdiction." United States v. Marks, 530 F.3d 799, 810 (9th Cir. 2008). To meet this burden, the party invoking federal jurisdiction must plead sufficient allegations to show a proper basis for the court to assert subject matter jurisdiction over an action. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936).

A party may challenge a court's jurisdiction over the subject matter of a complaint under Federal Rules of Civil Procedure 12(b)(1). <u>See</u> Fed. R. Civ. Proc. 12(b)(1). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." <u>Safe Air for Everyone v. Meyer</u>, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing <u>White v. Lee</u>, 227 F.3d 1214, 1242 (9th Cir. 2000)). Where, as here, a facial challenge is brought, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." <u>Id.</u>

A defendant seeking to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), however, is not bound solely by the facts alleged in the complaint, <u>see</u> <u>Nesbit v. Gears Unlimited, Inc.</u>, 347 F.3d 72, 76–77 (3rd Cir. 2003) (citation omitted); <u>see</u> <u>also</u>, <u>In re CitX Corp.</u>, 302 B.R. 144, 147 n.5 (Bankr. E.D. Pa. 2003) (taking judicial notice of state court order appointing receiver in deciding Rule 12(b)(1) motion), and courts are "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." <u>Warren v. Fox Family Worldwide, Inc.</u>, 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotation marks, and citations omitted).

## **DISCUSSION AND ANALYSIS**

In its motion to dismiss, the Receiver brings a facial challenge to the Court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and contends that Cox has failed to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6). Doc. No. 6. Specifically, the motion to dismiss makes arguments based on the *Barton* doctrine, the *Younger* abstention doctrine, the *Rooker-Feldman* doctrine and the *Noerr-Pennington* doctrine, as well as certain immunities. <u>Id.</u> The motion to strike is a so-called "Anti-SLAPP" motion. It seeks an order striking the state law causes of action against the Receiver under section 425.16 of the California Code of Civil Procedure on the grounds that the action is "a strategic lawsuit against public participation aimed at chilling [the Receiver's] participation in the underlying state court receivership." Doc. No. 6, pages 1 and 2 of 31.

Cox argues, in the main, that the doctrines and immunities on which the Receiver's motion to dismiss is based do not apply here because "the gravamen of [his] claims against the [Receiver] … stem from actions the [Receiver] took outside the scope of [the Receiver's] duties." Doc. No. 9,

6

page 7 of 30, lines 23 through 27. Further, Cox argues that his state law claims against the Receiver are not subject to dismissal under section 425.16 of the California Code of Civil Procedure because the Receiver was not engaged in petitioning the government for relief. Id., page 8 of 30 line 26 through page 9 of 30 line 1.

For the reasons set forth below, the Court will dismiss Cox's claims against the Receiver for lack of subject matter jurisdiction under to the *Barton* doctrine, without addressing the merits of such claims and without prejudice to pursuing such claims in state court. In addition, the Court will deny the Receiver's special motion to strike as moot.

**I.    *Barton* Doctrine**

In *Barton v. Barbour*, 104 U.S. 126 (1881), the United States Supreme Court held that federal common law bars suits against receivers in courts other than the court charged with administration of a receivership estate. 104 U.S. at 127. Thus, a party must obtain leave of the appointing court before initiating an action in another forum against a receiver for acts done in the receiver's official capacity. In re Crown Vantage, Inc., 421 F.3d 963, 970 (9th Cir. 2005) (citations omitted); see also, Barton, 104 U.S. at 127 ("It is a general rule that before suit is brought against a receiver leave of the court by which he was appointed must be obtained."); Med. Dev. Int'l v. California Dep't of Corr. & Rehab., 585 F.3d 1211, 1216–17 (9th Cir. 2009) ("The requirement that a party obtain leave from the appointing court before suing a receiver in another venue 'is long-standing.' " (quoting In re Castillo, 297 F.3d 940, 945 (9th Cir. 2002)).

Without leave of the appointing court, "the other forum lack[s] subject matter jurisdiction over the suit." In re Harris, 590 F.3d 730, 741–42 (9th Cir. 2009) (citation and internal quotation marks omitted); see also, In re Crown Vantage, Inc., 421 F.3d at 971; In re Kashani, 190 B.R. 875, 884 (B.A.P. 9th Cir. 1995). This well-settled rule, which is has become known as the *Barton* doctrine, ensures that the appointing court maintains appropriate control over the receivership.[3] In re DeLorean, 991 F.2d 1236, 1240 (6th Cir. 1993).

The Ninth Circuit recognizes two exceptions to the *Barton* doctrine. See Catholic Bishop

---

[3] Cox asserts, based on *Medical Devices International v. California Department of Corrections & Rehabilitation*, 585 F.3d 1211 (9th Cir. 2009) that "the policies underlying the *Barton* doctrine apply with greater force to bankruptcy

7

of Spokane v. Paine Hamblen, LLP, 2013 WL 11319241, at *1 n.1 (E.D. Wash. May 15, 2013). First, the *Barton* doctrine does not bar suit where a court-appointed officer engages in conduct beyond his authority. See Leonard v. Vrooman, 383 F.2d 556, 560 (9th Cir. 1976). Second, a limited statutory exception exists under 28 U.S.C. § 959(a) where a court-appointed officer operates a business in a receivership or bankruptcy estate. See 28 U.S.C. § 959(a); In re Crown Vantage, Inc., 421 F.3d at 971-72. Cox's opposition to the Receiver's motion to dismiss makes reference to both of these exceptions, so the Court will address each in turn.[4]

### A. The *Ultra Vires* Exception to the *Barton* Doctrine

Under the *ultra vires* exception to the *Barton* doctrine, a plaintiff is not required to get leave from the appointing court to sue a receiver who acts in excess of his authority or in an unofficial capacity. Vrooman, 383 F.2d at 560; see also, In re Davis, 312 B.R. 681, 686–87 (Bankr. D. Nev. 2004). For example, *Barton* itself provides that "if, by mistake or wrongfully, the receiver takes possession of property belonging to another, such person may bring suit therefore against him personally as a matter of right; for in such case the receiver would be acting *ultra vires*." Barton, 104 U.S. at 134.

The *ultra vires* exception, however, is a "narrowly defined concept that applies only to actions which are completely outside the scope of a [receiver's] duties and responsibilities." Kirschner v. Blixseth, 2012 WL 12885076, at *9 (C.D. Cal. Nov. 1, 2012), rev'd on other grounds sub nom. Glasser v. Blixseth, 649 F. App'x 506 (9th Cir. 2016); see also, Lurie v. Blackwell, 285 Mont. 404, 408 (1997) (finding that "the doctrine of *ultra vires* applies when a trustee is without authority to perform an act in any circumstances or for any purpose"). It does not apply to claims brought against a receiver acting in its official capacity, even where the alleged wrongdoing

---

proceedings than to [] proceedings involving receivers." Doc. No. 9, page 17 of 30, lines 9 through 14. While that may be true, *Barton* itself involved a receiver appointed by a state court and the Court is not aware of case law that draws a meaningful distinction between receivers and bankruptcy trustees in making jurisdictional determinations based on the *Barton* doctrine. Thus, as is common practice in the Ninth Circuit, this Order draws on cases involving bankruptcy trustees as well as cases involving receivers for purposes of the *Barton* doctrine analysis. See e.g., Freeman v. Cty. of Orange, 669 F. App'x 348, 349 (9th Cir. 2016).

[4] Because the *Barton* doctrine is jurisdictional, it is decided under Rule 12(b)(1). See Ryan v. Ruby, 2012 WL 523930, at *1 n.1 (S.D. Cal. Feb. 15, 2012).

involves civil rights violations, intentional torts or other egregious conduct. See Yagman v. Kittay, 2017 WL 6060603, at *3 (C.D. Cal. Apr. 18, 2017) (stating that "the *Barton* doctrine is applicable to both intentional and negligent conduct"); see also, Lawrence v. Goldberg, 573 F.3d 1265, 1271 (11th Cir. 2009) (finding that claims under the Racketeer–Influenced Corrupt Organizations Act and 42 U.S.C. § 1983 fell within scope of the *Barton* doctrine because they were all related to plaintiff's bankruptcy proceeding); Muratore v. Darr, 375 F.3d 140, 147 (1st Cir. 2004) (stating that there is "no basis for recognizing some generalized tort exception to the *Barton* doctrine"); Alexander v. Hedback, 2012 WL 2004103, at *14 (D. Minn. June 5, 2012), aff'd, 718 F.3d 762 (8th Cir. 2013) (dismissing claims against bankruptcy trustee "premised on dispossessing" plaintiff of property, including trespass, battery, abuse of process, and conspiracy); Satterfield v. Malloy, 2011 WL 2293940, at *4 (N.D. Okla. June 8, 2011), aff'd, 700 F.3d 1231 (10th Cir. 2012) (finding that the *ultra vires* exception did not apply where "the essence of [the] allegations relate[d] to [defendant's] execution of his duties as trustee" and rejecting contention that "unlawful and improper acts" fell "outside the scope" of defendant trustee's authority); In re Markos Gurnee P'ship, 182 B.R. 211, 224 (Bankr. N.D. Ill. 1995), aff'd sub nom. State of Ill., Dep't of Revenue v. Schechter, 195 B.R. 380 (N.D. Ill. 1996) (finding that an act "does not become *ultra vires* because it violates an obligation imposed by state law").

Thus, "[t]o determine whether a complained-of act falls under the *Barton* doctrine, courts consider the nature of the function that the [court-appointed officer] was performing during commission of the actions for which liability is sought." McDaniel v. Blust, 668 F.3d 153, 156–57 (4th Cir. 2012). A plaintiff may hold receivers personally liable for actions taken outside the scope of their authority, see Barton, 104 U.S. at 134, but acts are presumed to be part of the duties of the court-appointed officer unless plaintiff "alleges at the outset facts demonstrating otherwise." McDaniel, 668 F.3d at 156–57 (quoting In re Lowenbraun, 453 F.3d 314, 322 (6th Cir. 2006)) (internal quotation marks omitted).

The Receiver contends that the *Barton* doctrine applies here because the Mariposa Superior Court "expressly denied" leave to file suit, Doc. No. 6 at 12:9-22, and all of the allegations against the Receiver—including allegations that the Receiver was "somehow coordinating with the Court

9

and County to take the Property"—"arise directly from, and are based entirely on" the Receivership. Id. at 12:15-16.

Cox, for his part, concedes that the Mariposa Superior Court denied leave to file suit against the Receiver, Doc. No. 9 at 14:8-10, but contends that the claims in question here fall within the *ultra vires* exception to the *Barton* doctrine because his "70-page Complaint … provides detailed allegations that the [Receiver] abused his authority and acted well outside the scope of his appointment," including allegations that the Receiver "placed armed guards on the Ranch who invited family and kids to vacation on the property, trashed Cox's cabin and left it flooded and rat-infested, used and damaged Cox's vehicles and heavy equipment, neglected and abused [] ranch animals causing some of them to be killed while others escaped," and failed to comply "with the [appointing] court's order to obtain bids, develop a rehabilitation plan, and pay for the upkeep, utilities and taxes on the Ranch." Doc. No. 9, page 18 of 30, lines 8 through 17.

However wrongful they may be, however, such acts plainly relate to the execution of the Receivers' duties as set forth in the Order Appointing Receiver, see Lawrence, 573 F.3d at 1271; see also, Satterfield, 2011 WL 2293940, at *4 (finding that the *ultra vires* exception did not apply where "the essence of [the] allegations relate[d] to [defendant's] execution of his duties as trustee"), which expressly authorizes the Receiver to "take full and complete possession and control of the [] Property, including the tangible and intangible personal property located on or about the [] Property or used in connection with the [] Property," Doc. No. 9-1, page 34 of 120, lines 4 through 6; "manage the [] Property and [] pay the operating expenses of the [] Property, including taxes, insurance, utilities, maintenance and other debts," Doc. No. 9-1, page 34 of 120, lines 7-8; and "rehabilitate the [] Property." Doc. No. 9-1, page 34 of 120, lines 16 through 18.

Scouring the Complaint, the Court notes four allegations that merit closer scrutiny in connection with the *Barton* doctrine analysis: (i) the allegation that the Receiver falsified health and safety violations in the "Receiver's Motion for Appointment of Receiver" in order "to take control over the Property," Doc. No. 1 ¶ 114; (ii) the allegation that the Receiver took possession of 6108 Mosher Road even though it was not part of the Receivership, id. 1 ¶ 120; (iii) the allegation that the Receiver posted marketing videos making false and disparaging statements

about Cox and the Property, id. ¶ 104; and (iv) the allegation that the Receiver improperly recorded a Notice of Foreclosure and put the Property up for sale to collect fees and cover expenses relating to Receivership. Id. ¶ 143. As set forth below, however, none of these allegations warrant exercising jurisdiction based on the *ultra vires* exception to the *Barton* doctrine.

### 1. *Motion for Appointment of Receiver*

Improprieties on the Receiver's part in connection with the Motion for Appointment of Receiver could be relevant to the *Barton* analysis because actions taken prior to the Order Appointing Receiver could be found to fall outside the scope of the Receivership. See In re Nat'l Century Fin. Enterprises, Inc., 426 B.R. 282, 293 (Bankr. S.D. Ohio 2010) ("To the extent a litigant suing a trustee … grounds his or her causes of action entirely on events that occurred prior to the commencement of bankruptcy [], such litigation would not violate the *Barton* Doctrine."); In re J.S. II, L.L.C., 389 B.R. 570, 584 (Bankr. N.D. Ill. 2008) ("[T]he *Barton* doctrine would be inapplicable for events occurring [prepetition].").

The sole allegation in the Complaint suggesting that the Receiver brought the Motion for Appointment of Receiver, however, is directly contradicted by an allegation elsewhere in the Complaint—and by a paragraph in Cox's declaration—stating that it was the County (as opposed to the Receiver) that brought the Motion for Appointment of Receiver. Doc. No. 1 ¶ 131; Doc. No. 9-1 ¶ 12, page 3 of 120; see Warren, 328 F.3d at 1139. Moreover, even assuming the Receiver brought the Motion for Appointment of Receiver, any wrongdoing on the Receiver's part that occurred prior to commencement of the Receivership is inextricably intertwined with wrongdoing that took place after the Receivership took effect, which comprises the bulk (if not the entirety) of the Complaint as it pertains to the Receiver. See In re Nat'l Century Fin. Enterprises, Inc., 426 B.R. at 293 (finding that causes of action against bankruptcy trustee were subject to the *Barton* doctrine where plaintiff "crossed the divide of" the bankruptcy petition date and sued the trustees for "actions presumed to be within the scope of their authority"). Thus, the Court cannot find that the *ultra vires* exception is triggered by whatever involvement the Receiver might have had with the Motion for Appointment of Receiver.

11

### 2. *6108 Mosher Road*

The allegation about 6108 Mosher Road is noteworthy because the taking of property that is not part of a bankruptcy or receivership estate is one of the scenarios in which courts are most likely to find that a court-appointed officer acted outside the scope of his authority. See In re Weisser Eyecare, Inc., 245 B.R. 844, 851 (N.D. Ill. 2000) ("Courts which have held trustees personally liable for actions taken outside the scope of their authority, have mainly done so in matters involving a trustee's mistaken seizure of property not property of the estate, or other similar actions."). Such cases, however, typically involve the improper seizure of—and refusal to return—property owned by a third party. See, e.g., Vrooman, 383 F.2d at 560; Teton Millwork Sales v. Schlossberg, 311 F. App'x 145, 147–49 (10th Cir. 2009). Here, by contrast, Cox alleges that he, himself, owned 6108 Mosher Road; that it was immediately adjacent to the Property subject to the Receivership; and that the Receiver relinquished control of it after two weeks. Doc. No. 9-1 ¶¶ 13, 24. The Court has not found—and Cox has not provided—case law in which courts have exercised subject matter jurisdiction over claims against an officer appointed by another court on such facts, and the Court declines to find that application of the *ultra vires* exception is warranted here.

### 3. *Sale of the Property*

The fact that the Receiver unilaterally recorded a Notice of Foreclosure on the Property and put the Property up for sale without prior permission from the Mariposa Superior Court is significant because the Order Appointing Receiver provides only that the Receivers "may apply to [the appointing court] to sell the [] Property." Doc. No. 9-1 ¶ 9. Cox himself alleges, however, that the pending sale of the Property is subject to approval by the Superior Court and that the Superior Court previously approved a sale of the Property that was not consummated. Doc. No. 9-1 ¶ 45. Moreover, the Order Appointing Receiver expressly gives the Receiver power to sell property pursuant to section 568.5 of the California Code of Civil Procedure. Doc. No. 9-1, page 35 of 120, line 9-10; Cal. Code Civ. Pro. § 568.5. Thus, the allegations in the Complaint as to procedural irregularities in connection with a proposed sale of the Property subject to approval by the Mariposa Superior Court do not overcome the presumption that the Receiver's actions with

respect to the sale of the Property fall within the scope of its authority. See In re Weisser Eyecare, Inc., 245 B.R. 844, 851 (Bankr. N.D. Ill. 2000) (finding that trustee's failure to "meet the statutory procedural requirements" for the sale of a property did not render trustee's actions *ultra vires*).

### 4. *Disparaging Videos*

The allegation that the Receiver posted marketing videos to the CRG website disparaging Cox and the Property could implicate conduct outside the scope of the Receiver's authority, but courts have found that defamation relating to the subject matter of a receivership or bankruptcy trust does not trigger the *ultra vires* exception. See, e.g., Ryan, 2012 WL 523930, at *1 (dismissing defamation action under the *Barton* doctrine); Taraska v. Carmel, 223 B.R. 200, 203 (D. Ariz. 1998) (declining to entertain defamation suit against bankruptcy trustee without leave of appointing court). Moreover, the videos pertain only to a state law claim, Doc. No. 1 ¶ 210, and, given the Court's lack of jurisdiction over other claims relating to the Receiver, the Court finds that an exercise of supplemental jurisdiction would not be warranted here. See 28 U.S.C. § 1367(c)(4); Freeman v. Cty. of Orange, 669 F. App'x 348, 348–49 (9th Cir. 2016) (finding exercise of supplemental jurisdiction was unwarranted even assuming claim feel under an exception to the *Barton* doctrine).

For the foregoing reasons, the Court declines to exercise jurisdiction over any of Cox's claims against the Receiver based on the *ultra vires* exception,[5] and turns now to the statutory

---

[5] Notably, the cases cited by Cox only reinforce this conclusion. Cox argues, for example, that the Ninth Circuit held in *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298 (9th Cir. 1989) that "a receiver is not entitled to judicial immunity if the receiver's alleged acts are not 'intimately connected with his receivership duties.' " Doc. No. 6, page 17 of 30, lines 22 through 24. As the opposition acknowledges, however, *New Alaska* involved "the doctrine of quasi-judicial immunity" —not the *Barton* doctrine, *New Alaska*, 869 F.2d at 1302, and, in any event, the Ninth Circuit found that allegations that the receiver there charged "unjustified" fees and "mismanaged" assets were matters that "should have been pursued" before the appointing court. Id. at 1304. The Ninth Circuit did "decline to hold that the [receiver] [was] absolutely immune from allegations that he stole … assets," "slandered" a party subject to the receivership, and wrongfully retained possession of receivership property after the receivership terminated, id., but even assuming the principles of judicial immunity on which those findings were based apply here, those findings are not inconsistent with the Court's analysis and findings in this action.

In *Property Management & Investments, Inc. v. Lewis*, 752 F.2d 599 (11th Cir. 1985), similarly, the Eleventh Circuit found a receiver was immune from suit because allegations that he "caused injury to and destruction of [] business property by 'maliciously and deliberately releas[ing] news reports to the media ... that were false and defamatory' " and "by 'aid[ing] and abett[ing] ... in [the] ... conversion and/or embezzlement of [] corporate assets' " did not "indicate … activities *prima facie* beyond the scope of the official function of a state court receiver." Id. at 602-03.

13

exception to the *Barton* doctrine under 28 U.S.C. § 959(a).

**B. The Statutory Exception to the *Barton* Doctrine Under 28 U.S.C. § 959(a)**

The "carry on business" exception to the *Barton* doctrine in 28 U.S.C. § 959(a) is intended to permit actions—typically by third parties—redressing torts committed in furtherance of a business under the control of a receiver, bankruptcy trustee or other such court-appointed officer. Carter v. Rodgers, 220 F.3d 1249, 1254 (11th Cir. 2000) (citing In re Lehal Realty Assocs., 101 F.3d 272, 276 (2d Cir. 1996)); see also, In re Crown Vantage, Inc., 421 F.3d at 971. "By its terms," however, "this limited exception applies only if the trustee or other officer is actually operating the business, and only to 'acts or transactions in conducting [] business in the ordinary sense of the words or in pursuing [the] business as an operating enterprise.' " In re Crown Vantage, Inc., 421 F.3d at 971–72 (quoting Muratore, 375 F.3d at 144); see also Carter, 220 F.3d at 1254 (finding that Section 959(a) was "not applicable" because the "breaches attributed to [defendants] [were] not premised on an act or transaction of a fiduciary in carrying out [] business operations"). Moreover, "[m]erely collecting, taking steps to preserve, and/or holding assets … do not constitute 'carrying on business' as that term has been judicially interpreted." Matter of Campbell, 13 B.R. 974, 976 (Bankr. D. Idaho 1981). Thus, Section 959(a) does not apply where a receiver "acting in his official capacity conducts no business … other than to perform administrative tasks necessarily incident to the consolidation, preservation, and liquidation of" property. In Lehal Realty Assocs., 101 F.3d at 276 (citations omitted)); see also, Carter, 220 F.3d at 1254.

Cox's argument as to Section 959(a) (to the extent he makes one) is based on *Medical Devices International v. California Department of Corrections & Rehabilitation*, 585 F.3d 1211 (2009). Doc. No. 9 at 13:5-22. There, the U.S. District Court for the Northern District of

---

And in *Spitzer v. Aljoe*, 2015 WL 5737199 (N.D. Cal. Oct. 1, 2015), the U.S. District Court for the Northern District of California found under both the *Barton* doctrine and the doctrine of judicial immunity that plaintiffs had failed to allege that a state court receiver appointed pursuant to section 17980.7(c) of California Health and Safety Code (as the Receiver in this case was) had "acted in excess of his authority as receiver" where plaintiffs alleged that the receiver had unlawfully seized and deprived them of real and personal property and "acted in furtherance of a conspiracy" to do the same. Id. at *1. The Court fails to see how these cases bolster Cox's position.

14

California appointed a receiver "to take control of the delivery of medical services to all California state prisoners confined by [the California Department of Corrections & Rehabilitation (CDCR)]." *Med. Dev. Int'l*, 585 F.3d at 1213. In doing so, "[t]he court charged [the receiver] with "provid[ing] leadership and executive management" to the CDCR, and gave the receiver the "duty to control, oversee, supervise, and direct all administrative, personnel, financial, accounting, contractual, legal, and other operational functions of the medical delivery component of the CDCR." Id. Pursuant to this mandate, the receiver retained Medical Devices International (MDI) to provide medical services for two of CDCR's prisons and later terminated MDI without rendering full payment. Id. at 1213.

MDI brought suit against the receiver in Sacramento Superior Court without first securing leave from the Northern District to do so and the action was then removed to the U.S. District Court for Eastern District of California. *Med. Dev. Int'l*, 585 F.3d at 1214. The district court dismissed the complaint under the *Barton* doctrine, but the Ninth Circuit reversed, finding that the district court had subject matter jurisdiction over MDI's suit against the receiver under Section 959(a) "to the extent that it [sought] an amount due under a contract" because the receiver "was the chief executive officer of the medical division of CDCR" and MDI was "challenging the [receiver's] conduct in operating CDCR's 'business' in an ongoing or usual manner." *Med. Dev. Int'l*, 585 F.3d at 1217-19.

Here, by contrast, the Complaint alleges that the Property was "operated as a farm, ranch and agritourism business since at least 2012," Doc. No. 1 ¶¶ 35, 54, but there is no indication that such businesses continued after the Receivership commenced in 2017 or that the Receiver had any role in operating them. Indeed, the opposition expressly states that the agritourism business "was no longer running," Doc. No. 9, at page 6 of 30, line 13, and, as set forth above, the allegations in the Complaint pertain solely to alleged acts relating to possession and management of the Property, including, for example, allegations that the Receiver failed to rehabilitate the Property as ordered; grossly exaggerated receivership costs to enrich themselves and others who putatively provided services relating to the receivership; neglected animals while in possession of the Property; allowed security guards to misuse the Property; failed to make tax and utility payments

relating to the Property; and put the Property up for sale in order to cover its inflated bills.

None of these acts constitute the operation of a farming, ranching or agritourism business, and thus the "carry on business" exception to the *Barton* doctrine under 28 U.S.C. § 959(a) does not apply to Cox's claims against the Receiver. See Muratore, 375 F.3d at 145 (finding Section 959(a) inapplicable where allegations related to defendant's action in the "fulfillment or non-fulfillment of his fiduciary responsibilities" as a court-appointed officer "as opposed to acts or transactions in the furtherance of [] business"); Satterfield, 2011 WL 2293940, at *5 (finding case fell outside of Section 959(a) because complaint was not based "on tortious acts committed in furtherance of [plaintiff's] business").

### C. *De Facto* Appeal of Superior Court Decision Denying Leave to Sue

Finally, Cox argues, without meaningful citation to authority, that the *Barton* doctrine does not bar his claims against the Receiver, Doc. No. 9, page 19 of 30, lines 15 through 17, because the Superior Court "improperly denied" his motions for leave to sue the Receiver and he "must be allowed to sue [the Receiver] in a separate action" where a jury trial is contemplated. Id., page 19 of 30, lines 20 through 22.

The Court can only read this argument as asking the Court to reverse—or, at least, look past—decisions made by the Mariposa Superior Court in the course of the Receivership Action. It should go without saying, however, that the Court will not ignore facts that have implications as to its jurisdiction, and the Ninth Circuit has expressly held that federal district courts lack jurisdiction to review not only final state court judgments but also interlocutory state court decisions such as those by the Mariposa Superior Court in connection with Cox's request for leave to sue the Receiver. Doe & Assocs. Law Offices v. Napolitano, 252 F.3d 1026, 1030 (9th Cir. 2001) (citing Richardson v. D.C. Ct. of App., 83 F.3d 1513, 1515 (D.C. Cir.1996)); see also G.C. & K.B. Investments, Inc. v. Wilson, 326 F.3d 1096, 1103 (9th Cir. 2003) (citing Napolitano, 252 F.3d at 1103). Cox's contention is therefore without merit.

### **CONCLUSION**

For the foregoing reasons, the Court finds, pursuant to the *Barton* doctrine, that it lacks

16

subject matter jurisdiction over Cox's claims against the Receiver. The Court must therefore dismiss those claims. The Court stresses, however, that this Order does not address the potential validity of Cox's claims against the Receiver (which involve a number of disturbing allegations) and that Cox's claims against the Receiver are dismissed without prejudice to bringing them in the proper forum. In light of the Court's holding with respect to the *Barton* doctrine, it is unnecessary for the Court to address the other arguments in the motion to dismiss and the Receiver's motion to strike is denied as moot.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. The motion to dismiss brought by Defendant CRG and Defendant Adams (Doc. No. 6) is GRANTED as to Defendant CRG and as to Defendant Adams;
2. All claims against Defendant CRG and all claims against Defendant Adams are DISMISSED WITHOUT PREJUDICE;
3. The special motion to strike brought by Defendant CRG and Defendant Adams (Doc. No. 6) is DENIED as moot; and
4. Defendant CRG and Defendant Adams are terminated as Defendants in this action.

IT IS SO ORDERED.

Dated:   April 6, 2020

_____
SENIOR DISTRICT JUDGE