UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY COX, an Individual,<br><br>　　　　　　Plaintiff,<br>　　v.<br><br>MARIPOSA COUNTY; MARIPOSA COUNTY SHERIFF'S OFFICE; SHERIFF DEPUTY WILLIAM ATKINSON; SHERIFF DEPUTY WESLEY SMITH; ASHLEY HARRIS; CALIFORNIA RECEIVERSHIP GROUP ("CRG") AND MARK ADAMS IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, AND DOES 1 THROUGH 100, INCLUSIVE.<br><br>　　　　　　Defendants. | CASE NO. 1:19-CV-01105-AWI-BAM<br><br>**ORDER DENYING MOTION TO STAY BY DEFENDANT ASHLEY HARRIS**<br><br>(Doc. No. 53) |

Defendant Ashley Harris brings this motion based on the *Colorado River* doctrine to stay Plaintiff Jerry Cox's claims against her pending final disposition of a proceeding in Mariposa Superior Court. Doc. No. 53. For the reasons that follow, the motion will be denied.

## BACKGROUND

Additional details regarding this case are set forth in the Court's May 1, 2020 order on the special motion to strike brought by Mariposa County, the Mariposa Sheriff's Office, Sheriff Deputy William Atkinson and Sheriff Deputy Wesley Smith (together, the "County Defendants"), see Doc. No. 44, but the background most relevant to this motion is as follows:

1    In 2015 and 2016, Mariposa County brought more than a dozen criminal counts against Cox in Mariposa Superior Court for rape and related offenses based on accusations made by Harris and an investigation conducted by the Mariposa County Sheriff's Office. While the criminal case against Cox was pending, Mariposa County secured a civil warrant to inspect a several-hundred-acre property that Cox owned through a limited liability corporation in Mariposa County (the "Property"). That inspection identified more than 100 purported health and safety violations. All criminal counts against Cox were ultimately dismissed by the prosecution, but Mariposa County brought a civil action against Cox based on purported health and safety violations that culminated in a costly receivership and the forced sale of the Property.

    On August 22, 2018, Cox brought claims for defamation, libel, malicious prosecution and abuse of process against Harris on an *in pro per* basis in Mariposa Superior Court (the "State Court Action"), alleging that Harris's rape accusation against him was false. Doc. No. 53 at 18. On December 18, 2018, Cox dismissed the defamation, libel and abuse of process claims through newly retained counsel, id. at 33 & 60, and on December 19, 2018, Harris brought a special motion to strike pursuant to California's anti-SLAPP statute, asserting that her statements regarding the alleged rape constituted protected speech and that Cox could not establish a probability of prevailing on his claims. Id. at 23. The state court granted the motion as to the malicious prosecution claim (the only claim remaining at the time Harris's anti-SLAPP motion was filed) on findings that Cox's dismissal of the defamation and libel claims eliminated factual allegations required to state a malicious prosecution claim and that, regardless, it was unlikely Cox could prevail on a malicious prosecution claim because DNA evidence contradicted Cox's assertion that he had not had sexual contact with Harris. Id. at 63. Cox appealed the order on May 10, 2019, and that appeal is pending. Id. at 74.[1]

---

[1] Harris seeks judicial notice for various records from the State Court Action. See Doc. No. 53 at 14. The request is granted as to the August 22, 2018 complaint, the December 18, 2018 request for dismissal and the 5th Appellate District docket for *Cox v. Harris*, Case No. F079240, as well as for the May 6, 2019 order granting Harris's motion to strike and the court reporter's transcript from the March 11, 2019 hearing on the motion to strike, see Pickup v. Brown, 2012 WL 6024387, at *3 (E.D. Cal. Dec. 4, 2012) ("Transcripts from other court proceedings are proper subjects of judicial notice."), because the content of those records is not subject to reasonable dispute and they provide relevant information as to the nature, scope and status of the State Court Action. See Fed. R. Civ. Pro. 201(b)(2); Trigueros v. Adams, 658 F.3d 983, 987 (9th Cir. 2011) (stating that federal courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters

On August 12, 2019, Cox filed the instant action. The Complaint alleges that Harris falsely reported that Cox raped her and committed other crimes against her on the Property in November 2015. According to Cox, those false accusations triggered Mariposa County's failed criminal case against him, which was marred by the destruction of evidence and other misconduct on the part of the Defendants[2] and which only came to an end when the prosecution was confronted with conclusive evidence, in the form of sworn deposition testimony from another case, that Harris's accusations against Cox could not be credited. The Complaint also alleges that Harris fraudulently sought a restraining order against Cox in 2017 and that she made false statements to help secure a warrant for the civil inspection that ultimately resulted in the confiscation and sale of the Property.

Based on these allegations, the Complaint alleges fourteen claims against the Defendants for violations of state law, federal law and Cox's rights under the United States Constitution. As to Harris, in particular, Cox alleges a claim under 42 U.S.C. § 1983 for violation of his rights to due process and equal protection under the 14th Amendment; a claim under 42 U.S.C. § 1983 for violation of his rights against arrest, search, seizure, detention and prosecution without probable cause under the 4th Amendment; a claim for conspiracy to deprive him of his constitutional rights; a claim for intentional interference with prospective economic advantage; and a negligence claim.

## **MOTION TO STAY**

Harris argues that the Court should stay the claims against her in this action under the *Colorado River* doctrine because they are "premised on the very same alleged conduct" as the claims against her in the State Court Action. See Doc. No. 53. Harris further contends that Cox engaged in improper forum shopping by bringing suit in this Court after the Mariposa Superior Court ruled against him on her anti-SLAPP motion. See id.

Cox, for his part, argues that there is but minor overlap between this action and the State Court Action and that it makes sense, on multiple dimensions, to litigate his interwoven claims

---

at issue"). Harris's request is otherwise denied as irrelevant to the disposition of this motion. See Neylon v. County of Inyo, 2016 WL 6834097, at *4 (E.D. Cal. Nov. 21, 2016) (Ishii, J.). Cox's request for judicial notice, Doc. No. 72, is denied because the Court did not have cause to make use of the records referenced in that request, other than records of which notice has already been taken at Harris's request.

[2] "Defendants" refers to Mariposa County, the Mariposa County Sheriff's Office, Deputy Atkinson, Deputy Smith and Harris. CRG and Adams were dismissed from this action for reasons irrelevant to this motion on April 7, 2020. See Doc. No. 42.

3

against multiple defendants in a single federal action, particularly since several of his claims involve civil rights. See Doc. No. 71.

**LEGAL FRAMEWORK**

As set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), the *Colorado River* doctrine deals "with the problem posed by the contemporaneous exercise of concurrent jurisdiction by state and federal courts." Smith v. Central Ariz. Water Conservation Dist., 418 F.3d 1028, 1032 (9th Cir. 2005) (citing Gilbertson v. Albright, 381 F.3d 965, 982 n.17 (9th Cir. 2004) (en banc)). In "exceedingly rare" circumstances, *Colorado River* recognizes "a narrow exception to the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." Smith, 418 F.3d at 1032-33 (quoting Holder v. Holder, 305 F.3d 854, 867 (9th Cir. 2002)) (internal quotation marks omitted). If "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation" show that the federal case should defer to the state case, then the federal court may abstain from exercising jurisdiction over the federal case. R.R. St. & Co. Inc. v. Transp. Ins. Co., 656 F.3d 966, 978 (9th Cir. 2011) (quoting Colorado River, 424 U.S. at 817) (internal quotation marks and brackets omitted).

In deciding whether to dismiss or stay a federal case in favor of a state case, courts in the Ninth Circuit examine eight factors: "(1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court." R.R. St. & Co., 656 F.3d at 978-79 (citing Holder, 305 F.3d at 870). "These factors are to be applied in a pragmatic and flexible way, as part of a balancing process rather than as a 'mechanical checklist.' " Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co., 843 F.2d 1253, 1257 (9th Cir. 1988) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983)). "Some factors may not apply in some cases, and '[a]ny doubt as to whether a factor exists should be resolved

against a stay' or dismissal." Montanore Minerals Corp. v. Bakie, 867 F.3d 1160, 1166 (9th Cir. 2017), as amended on denial of reh'g and reh'g en banc (Oct. 18, 2017) (quoting Seneca Ins. Co., Inc. v. Strange Land, Inc., 862 F.3d 835, 842 (9th Cir. 2017)).

# ANALYSIS

The Court addresses each of the *Colorado River* factors in turn.

## I. First Court to Assume Jurisdiction Over Any Property at Stake

The first factor, relating to jurisdiction over property, is irrelevant since no property is at stake in the claims against Harris in this case or the State Court Action. See R.R. Street & Co., 656 F.3d at 979.

## II. Inconvenience of the Federal Forum

This courthouse and Mariposa Superior Court are within 100 miles of one another. See Doc. No. 95 at 6:12-14. Consequently, neither forum has a significant advantage as to convenience and this factor is neutral. See Montanore, 867 F.3d at 1167.

## III. Avoidance of Piecemeal Litigation

For purposes of the *Colorado River* analysis, "[p]iecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." Seneca Ins. Co., 862 F.3d at 842 (quoting Am. Int'l Underwriters, Inc., 843 F.2d at 1258) (internal quotation marks omitted). Essentially all lawsuits that are prone to a *Colorado River* analysis, however, will involve piecemeal litigation to some extent. Id. Therefore, for this factor to weigh in favor of abstention, there must be "exceptional circumstances present that demonstrate that piecemeal litigation would be particularly problematic." Id. at 843 (citing Travelers Indem. Co. v. Madonna, 914 F.2d 1364, 1369 (9th Cir. 1990)).

"Exceptional circumstances" exist when there is a "special or important rationale or legislative preference for resolving [all] issues in a single proceeding." Seneca Ins. Co., 862 F.3d at 843. For example, in *Colorado River* itself, exceptional circumstances were found to exist because there was a strong federal policy for adjudicating the water rights claims at issue in a state court proceeding. Colorado River, 424 U.S. at 819; see United States v. Morros, 268 F.3d 695, 706–07 (9th Cir. 2001) ("[I]t is evident that the avoidance of piecemeal litigation factor is met, as

5

it was in ... *Colorado River* itself, only when there is evidence of a strong federal policy that all claims should be tried in the state courts." (citation and internal quotation marks omitted)).

Harris argues that "the threat of piecemeal litigation is certain" here because both this action and the State Court Action have the "singular goal" of recovering damages from Harris "for having complained … to law enforcement about being raped by Cox." Doc. No. 53 at 9:12-18. That is not however, "the totality of what Harris is alleged to have done"—or the "sole premise"—for proceeding against Harris in this lawsuit, as Harris claims. See id. at 9:14-18. The Complaint in this lawsuit alleges not only that Harris's rape accusation against Cox was false, but that she fraudulently sought a restraining order against Cox years later and conspired with the County Defendants in persecuting Cox by destroying exculpatory evidence in the criminal case and making false statements to secure the warrant that led to the inspection, civil action and Cox's expropriation. Doc. No. 1 ¶¶ 27, 98-99.  Further, the Court sees no policy favoring state court litigation of any of the claims or conduct at issue here. See Morros, 268 F.3d at 706–07.

In short, the Court sees little risk of piecemeal litigation in the *Colorado River* sense, and thus, this factor does not weigh in favor of abstention.

**IV.     The Order in Which the Forums Obtained Jurisdiction**

The fourth factor in the *Colorado River* analysis is concerned with preventing waste of judicial resources and undue burden on defendants, see Madonna, 914 F.2d at 1370, and "as with the other *Colorado River* factors, is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." Moses H. Cone Mem'l Hosp., 460 U.S. at 21. "Thus, priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." Id. In R.R. St. & Co., for example, the Ninth Circuit found this factor to be an "important consideration" weighing in favor of abstention because the state court had made "significant progress" prior to the filing of the federal action—including "conduct[ing] discovery," "initiat[ing] a phased approach to the litigation" and "issu[ing] an order concerning foundational legal matters"—and was thus "positioned to fully adjudicate" the dispute. R.R. St. & Co., 656 F.3d at 980; see Montanore, 867 F.3d at 1168 & 1170 (directing district court to stay action under *Colorado River* where the state court "had made

6

substantial progress, by the time the federal proceeding was filed").

Harris contends that this factor favors a stay because the State Court Action was filed nearly a year before Cox brought this case and has since progressed to appeal. The Court cannot agree. As set forth above, Cox filed a complaint against Harris in state court on an *in pro per* basis, setting forth four causes of action. He then retained counsel who dismissed three of the four causes of action, leaving nothing but a malicious prosecution claim. The trial court granted Harris's special anti-SLAPP motion to strike as to the malicious prosecution claim on a finding that dismissal of other claims stripped the complaint of factual allegations required to state a malicious prosecution claim and a finding that DNA evidence showed Cox had sexual contact with Harris, such that, in the trial court's view, Cox had not shown a probability of prevailing on the malicious prosecution claim. Doc. No. 53 at 63:13-24.

The trial court order on Harris's anti-SLAPP motion is the sole object of the pending appeal and, as far as the Court can tell, the only event of significance that has taken place to date in the State Court Action. As set forth below, it is not clear from the briefing to what extent an appellate decision affirming the trial court would affect claims against Harris in this case (which involve more than the rape accusation), and in the event of reversal, the trial court would be no further along than this Court in conducting discovery and such. This factor, therefore, does not weigh in favor of a stay.

## V. Whether State or Federal Law Provides the Rule of Decision on the Merits

The fifth factor in the *Colorado River* analysis looks at "whether federal law or state law provides the rule of decision on the merits." R.R. St. & Co., 656 F.3d at 978, 980. "[T]he presence of federal-law issues must always be a major consideration weighing against surrender." Madonna, 914 F.2d at 1370 (quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 26) (internal quotation marks omitted).

The Complaint alleges claims against Harris for violation of Cox's constitutional rights, as well as state law claims for intentional interference with prospective economic advantage and negligence. These state law claims manifestly do not present "complex and difficult issues better resolved by a state court," Seneca Ins. Co., 862 F.3d at 844, and the claims involving

7

constitutional rights uniquely call for the Court's attention. See Tovar v. Billmeyer, 609 F.2d 1291, 1293 (9th Cir. 1979) (stating that "the unflagging obligation of the federal courts to exercise the jurisdiction given to them ... is particularly weighty when those seeking a hearing in federal court are asserting ... [a] right to relief under 42 U.S.C. § 1983" (citation and internal quotation marks omitted)). The Court therefore finds this factor weighs against a stay.

## VI. Whether the State Court Proceedings Can Adequately Protect the Rights of the Federal Litigants

This factor concerns "whether the state court might be unable to enforce federal rights." Seneca Ins. Co., 862 F.3d at 845. "If the state court cannot adequately protect the rights of the federal litigants, a *Colorado River* stay is inappropriate." Montanore, 867 F.3d at 1169 (quoting R.R. St. & Co., 656 F.3d at 981) (internal quotation marks omitted). A state lawsuit cannot adequately protect the rights of a federal litigant if the federal litigant would not be able to raise and enforce his or her claims in the state lawsuit. R.R. St. & Co. Inc., 656 F.3d at 981. For example, a state lawsuit might be inadequate if the state court lacks jurisdiction to hear the federal litigant's claim. See Holder, 305 F.3d at 869 n.5.

It appears Mariposa Superior Court could hear all the claims Cox alleges against Harris in this lawsuit, but this factor is generally not used to justify abstention. See Montanore, 867 F.3d at 1169. Rather, it works to bar abstention where, for one reason or another, a state court is unable to provide all the relief a litigant is seeking. Id. The Court therefore finds this factor is neutral in this instance.

## VII. Avoidance of Forum Shopping

The seventh factor in the *Colorado River* analysis weighs in favor of abstention where the plaintiff engages in forum shopping or seeks to "avoid adverse rulings by the state court." Nakash v. Marciano, 882 F.2d 1411, 1417 (9th Cir. 1989) (citations omitted). "When evaluating forum shopping under *Colorado River*, [courts] consider whether either party improperly sought more favorable rules in its choice of forum or pursued suit in a new forum after facing setbacks in the original proceeding." Seneca Ins. Co., 862 F.3d at 846 (citations omitted). "To avoid forum shopping, courts may consider 'the vexatious or reactive nature of either the federal or state

8

litigation.' " R.R. St. & Co. Inc., 656 F.3d at 981 (quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 17 n.20).

Harris argues that this factor weighs in favor of abstention because Cox filed this "action a number of months after the State Court ruled against him by granting Harris' anti-SLAPP motion." Doc. No. 53 at 11:17-18. The Court sees little indication, however, of improper forum shopping here. As noted above, Cox brought the State Court Action on an *in pro per* basis, alleging four state law claims against Harris, as the only defendant, based solely on the rape accusation. After engaging counsel, he dismissed three of the four claims in the State Court Action before any adjudication had taken place and then fashioned an omnibus lawsuit to litigate all his claims in connection with both the criminal case and the civil case, under federal as well as state law, against multiple defendants in one fell swoop. Moreover, Cox has identified several advantages to the composition of his federal case—including judicial economy and the concurrent resolution of claims—that have nothing to do with the trial court's reaction to his malicious prosecution claim. Cf. Riley v. City of Richmond, 2014 WL 5073804, at *4 (N.D. Cal. Oct. 9, 2014) (finding that the forum shopping factor weighed in favor of a stay where plaintiff had split related claims across state and federal courts when he could have instead brought them all "in a single forum"). In short, Cox appears to have valid reasons unrelated to the trial court ruling on Harris's anti-SLAPP motion to bring the instant action, and thus, the Court finds that this factor does not weigh in favor of abstention.

**VIII. Whether the State Lawsuit Will Resolve All Issues in Federal Lawsuit**

A court may abstain from exercising jurisdiction under *Colorado River* "only if it has 'full confidence' that the parallel state proceeding will end the litigation." Intel Corp. v. Advanced Micro Devices, Inc., 12 F.3d 908, 913 (9th Cir. 1993) (quoting Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 277 (1988)). "When a district court decides to dismiss or stay under *Colorado River*, it [ ] concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties" and that "the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses." Intel, 12 F.3d at 913 (quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 28).

"If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all ...." Id. However, "exact parallelism [between the state and federal lawsuits] ... is not required." Nakash, 882 F.2d at 1416. "It is enough if the two proceedings are 'substantially similar,' " and courts "should be particularly reluctant to find that the actions are not parallel when the federal action is but a 'spin-off' of more comprehensive state litigation." Id. at 1416-1417 (citing Lumen Const., Inc. v. Brant Const. Co., 780 F.2d 691, 695 (7th Cir. 1985) (stating that in analyzing dismissal or stay under *Colorado River*, courts "look not for formal symmetry between the two actions, but for a substantial likelihood that the state litigation will dispose of all claims presented in the federal case") and Calvert Fire Ins. Co. v. American Mut. Reins. Co., 600 F.2d 1228, 1233 (7th Cir.1979)). This factor can only weigh against abstention; it cannot weigh in favor of a stay or dismissal. Seneca Ins. Co., 862 F.3d at 845 (citing Moses H. Cone Mem'l Hosp., 460 U.S. at 25–26 and Colorado River, 424 U.S. at 817).

    Harris argues that the State Court Action will resolve all issues relating to her in this lawsuit because "both proceedings are premised on the identical factual allegation: that Cox was harmed as a result of Harris' accusation that Cox raped her." Doc. No. 53 at 11:25-27. The Mariposa Superior Court, however, decided Harris's anti-SLAPP motion based on a complaint that, by the Mariposa Superior Court's reckoning, contained no allegations whatsoever as to Harris's conduct once the first and second claims had been dismissed. Indeed, after noting the dismissal of Cox's first and second claims, the Mariposa Superior Court stated: "There are no acts now alleged." See Doc. No. 53 at 63:3-12; see also, Doc. No. 53 at 18-20. Moreover, this lawsuit does more than allege that Harris falsely accused Cox of rape. It also alleges that Harris conspired with other Defendants to deprive Cox of his property and constitutional rights through, *inter alia*, the destruction of evidence and a false affidavit in support of an inspection warrant that ultimately led to the confiscation of Cox's property. The Court sees little, if any, possibility that the State Court Action will reach such issues in its current form, even assuming it somehow disposes of the rape accusation.[3] The Court therefore finds that this factor weighs heavily against (and arguably

---

[3] Harris asserts, with little elaboration, that an appellate court order affirming the trial court's order on Harris's anti-SLAPP motion would have res judicata effect as to all claims against Harris in this action because they all involve the same "primary right"—"to be free from allegedly false accusations of criminal conduct." Doc. No. 95 at 11:5-9.

precludes) abstention. See Intel, 12 F.3d at 913.

**CONCLUSION**

As set forth above, the Court finds that at least two *Colorado River* factors weigh decisively against a stay and that none of the other *Colorado River* factors weighs in favor of a stay. The motion will therefore be denied. See Smith, 418 F.3d at 1032-33.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that the motion to stay brought by Defendant Ashley Harris (Doc. No. 53) is DENIED.

IT IS SO ORDERED.

Dated:   August 23, 2021

SENIOR DISTRICT JUDGE

---

Even assuming some preclusive effect from the State Court Action based on a "primary right" theory, however, Harris has not convinced the Court that the primary right implicated by the rape accusation is the same as the primary right implicated by the alleged destruction of evidence; the primary right implicated by alleged false statements in connection with the inspection warrant; or the primary right implicated by Harris's alleged attempt to secure a fraudulent restraining order. In any event, this Court can address such issues in due course.