# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY COX, an Individual,<br><br>　　　　　　Plaintiff,<br>　v.<br><br>MARIPOSA COUNTY; MARIPOSA COUNTY SHERIFF'S OFFICE; SHERIFF DEPUTY WILLIAM ATKINSON; SHERIFF DEPUTY WESLEY SMITH; ASHLEY HARRIS; CALIFORNIA RECEIVERSHIP GROUP ("CRG"); MARK ADAMS IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, AND DOES 1 THROUGH 100, INCLUSIVE.<br><br>　　　　　　Defendants. | CASE NO. 1:19-CV-01105-AWI-BAM<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS BY DEFENDANT ASHLEY HARRIS**<br><br>(Doc. No. 52) |

　　　Defendant Ashley Harris brings a motion seeking dismissal under Federal Rule of Civil Procedure ("Rule") 12(b)(6) of all five of Plaintiff Jerry Cox's claims against her in this action, including claims under state law and 42 U.S.C. § 1983. See Doc. No. 52. The motion has been fully briefed and the Court has deemed it suitable for decision without oral argument, pursuant to Local Rule 230(g). For the reasons that follow, the motion will be granted in part and denied in part.

## BACKGROUND[1]

　　　Cox alleges that the series of events underlying his claims started on November 13, 2015, when he informed Harris, who had been staying for several weeks at property he owned in

---

[1] This section summarizes allegations set forth in the Complaint. See Doc. No. 1.

Mariposa County (the "Property"), that she would have to vacate the cabin she (and apparently others) were occupying to make room for vacation renters. Doc. No. 1 ¶ 58. According to Cox, Harris was upset about being displaced and, after stopping at a bar to consume alcohol with one Darlene Windham (who was also staying on the Property), went to the Mariposa California Highway Patrol ("CHP") station to report that Cox had raped her and held her captive on the Property. Id. ¶¶ 58-59. The CHP officer noted that Harris had been drinking and that there were text messages on her cell phone contradicting her claims. Id. ¶ 60. The CHP officer referred the matter to the Mariposa County Sheriff for jurisdictional reasons, id. ¶ 61, whereupon Harris falsely told Atkinson and Smith that Cox raped her, sodomized her, and held her against her will at the cabin from November 11-13, 2015. Id.

Harris further told Atkinson and Smith that she and Cox had met through an online dating site, FarmersOnly.com and that she had emails and text messages with Cox (as well as messages to her mother regarding Cox) on the cell phone in her possession at the time of the interview. Doc. No. 1 ¶ 62. In addition to falsely accusing Cox of rape and kidnapping, Harris falsely stated that she met Cox for the first time on November 11, 2015; that the doors of the cabin locked from the outside; that she was unable to use her cell phone to call for help during her three-day period of captivity; and that she was only able to escape because Windham came to the cabin on the morning of November 13, 2015 to prepare it for guests. Id. ¶¶ 63-65. According to the Complaint, Atkinson and Smith did not conduct any investigation into Harris's online activity—as to FamersOnly.com or otherwise— and did not view, download or otherwise preserve records on Harris's cell phone. Id. ¶¶ 62, 67.

Cox further alleges that Atkinson falsified police reports and other records by misrepresenting exculpatory statements by Windham, who was "extremely skeptical" of Harris's story and who had "informed Atkinson and/or Smith" that Harris had lied about her alcohol intake and that Harris's "sexual relations with Cox were purely consensual," in addition to "inform[ing] the [Mariposa County Sheriff's Office] that Harris[] was free to come and go from the ranch at any time." Doc. No. 1 ¶ 68.

Later on November 13, 2015, a Mariposa County Sheriff deputy arrested Cox at the

1  direction of Atkinson and Smith, without a warrant and based solely on Harris's "fabricated and
2  uncorroborated story." Doc. No. 1 ¶ 69. Atkinson then interviewed Cox. Id. Cox denied Cox's
3  allegations and provided Atkinson with the names of witnesses who were at the Property during
4  the period in question. Id. Cox's cell phone was seized during the interview. Id. Cox's bail was set
5  at $500,000, and Cox remained in jail for at least two weeks while arranging bail. Id.

6      On November 14, 2015, Atkinson signed an affidavit for a warrant to search the Property
7  that contained false statements by Harris, but omitted Cox's denials and Windham's statements to
8  Atkinson "that she had not witnessed or heard anything unusual between Cox and Harris" while
9  sharing the cabin with them during the period in question. Doc. No. 1 ¶ 72. The Mariposa County
10 Sheriff conducted a search of the Property on November 14, 2015. Id. ¶ 73. The search showed
11 that the door to the cabin locked from the inside and that the cabin had functioning landline
12 telephone service and functioning cell phone service. Id. According to Cox, however, the
13 Mariposa County Sheriff's Office failed to document the phone service or the "multiple exit
14 points" from the cabin. Id.

15     Also on November 14, 2015, Atkinson interviewed Harris for a second time. Doc. No. 1 ¶
16 77. During that interview, Atkinson obtained Harris's cell phone number and informed her that he
17 needed her cell phone to download conversations with Cox. Id. Atkinson did not, however, take
18 possession of Harris's cell phone—or download its contents—at that time. Id.

19     On November 16, 2015, the Mariposa County district attorney filed a criminal complaint
20 against Cox comprising 11 felony charges, plus enhancements. Doc. No. 1 ¶ 74.

21     On November 25, 2015, Harris was interviewed by Smith and a deputy district attorney.
22 Doc. No. 1 ¶ 78. During that interview, Harris made reference to exchanging messages with Cox
23 on FarmersOnly.com and her cell phone and to contacting witnesses through Facebook. Id. The
24 deputy district attorney took snapshots of a selection of text messages between Harris and Cox on
25 Harris's cell phone, but did not take possession of the phone, download records from the phone, or
26 photograph any "exculpatory text messages" evidencing the consensual nature of the relationship
27 between Cox and Harris. Id.

28     On February 22, 2016, the County amended the criminal complaint to allege 16 felonies

against Cox, including rape, sodomy and kidnapping. Doc. No. 1 ¶ 74.

On March 10, 2016, new defense counsel substituted in for Cox and requested discovery relevant to the proceedings. Doc. No. ¶ 79.

On April 4, 2016, Cox made an informal discovery request of the Mariposa County district attorney seeking "[a] copy of all messages between Ashley Harris and Cox in the prosecution's possession, be they text/SMS messages, Facebook messages, messages transmitted through FarmersOnly.com, or otherwise." Doc. No. 1 ¶ 81.

On April 19, 2016, Cox brough a motion to enforce that request, Doc. No. 1 ¶ 82, and on April 21, 2016, Mariposa County filed a response to the motion, stating it was unable to produce the records in question because "the Department of Justice [wa]s still analyzing the defendant's phone and computer." Id.

On May 13, 2016, the Mariposa Superior Court authorized a defense subpoena seeking all messages relating to Harris, Cox or the Property in the possession of Harris's mother. Doc. No. 1 ¶ 84. Harris's mother avoided service of the subpoena and Mariposa County made no efforts to obtain exculpatory evidence from her. Id. Records later obtained by Cox showed that Harris was in regular communication with her mother (and others) through her cell phone during the period that she claimed to have been held captive on the Property. Id.

On June 20, 2016, Mariposa County provided the forensic download of Cox's phone to Cox's defense. Doc. No. 1 ¶ 86. This production occurred six months after Mariposa County completed the download on December 23, 2015 and contained 22 messages between Harris and Cox during the period in which Harris claimed to have been held against her will. Id.

On August 8, 2016, the Mariposa Superior Court issued a discovery order authorizing Cox to issue subpoenas to Verizon Communications ("Verizon"), Facebook, Inc. and FarmersOnly.com seeking production of messages involving Harris. Doc. No. 1 ¶ 88. Mariposa County had not previously sought to obtain records from these entities. Id. Records from Verizon ultimately showed that Harris sent and received 166 text messages in the period between November 10 and November 13, 2015. Id. ¶ 91.

On October 14, 2016, Mariposa County searched the Property for building, health and

safety code violations pursuant to a civil warrant based on affidavit containing false claims from the criminal case. Doc. No. 1 ¶¶ 99, 102.

On March 7, 2017, Cox received discovery from the County showing that the DOJ did not conduct the forensic download of Harris's phone until December 8, 2016. Doc. No. 1 ¶ 92. Harris maintained possession of her phone for a year prior to the download, but although Harris claimed she needed to retain the phone for personal use, there were no messages on the phone after November 13, 2015. Id. ¶ 93. An analysis conducted by Cox's defense further showed that at least 49 messages between Cox and Harris that appeared on Cox's cell phone did not appear in the County's download of Harris's cell phone. Id. ¶ 94.

On March 13, 2017, the County brought a motion to place the Property in receivership (the "Receivership"), claiming to have found 101 building, health and safety violations. Doc. No. 1 ¶ 104. The Receivership resulted in hundreds of thousands of dollars in costs and culminated in the forced sale of the Property. See Id. ¶¶ 99-145.

On June 2, 2017, Harris testified in a deposition for another case that she had never been a victim of sexual assault or abuse. Doc. No. 1 ¶ 97.

On August 14, 2017, the County dismissed all criminal charges against Cox on the district attorney's motion, while the civil action involving supposed building, health and safety violations on the Property (the "Receivership action") continued. Doc. No. 1 ¶ 146.

On July 26, 2019, a Superior Court judge in another county denied Harris's request for a restraining order against Cox in connection with the alleged rape based on findings, in the judge's words, that ""Harris lacked credibility," "[h]er testimony just could not hold water," and "[a]ny reasonable person could not conclude her story was straight." Doc. No. 1 ¶¶ 66, 98.

Cox filed this action on August 12, 2019 alleging fourteen claims under state and federal law against Harris, Mariposa County, the Mariposa County Sheriff's Office, Atkinson, Smith, Mark Adams and the California Receivership Group ("CRG").[2] As to Harris in particular, Cox

---

[2] Mariposa County, the Mariposa County Sheriff's Office, Atkinson and Smith may be collectively referred to herein as the "County Defendants." Atkinson and Smith together may be referred to herein as the "Deputy Defendants." Adams and CRG (who may be referred to together as the "Receiver") were terminated as defendants in this action on April 7, 2020. See Doc. No. 42.

alleges Section 1983 claims for violation of his due process and equal protection rights under the Fourteenth Amendment; a Section 1983 claim for violation of his rights under the Fourth Amendment; a Section 1983 claim for conspiracy to deprive him of his constitutional rights;[3] a claim for intentional interference with prospective economic advantage; and a claim for negligence.[4] Id.

## LEGAL FRAMEWORK

Under Federal Rule of Civil Procedure 12(b)(6), a cause of action may be dismissed where a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011); Johnson v. Riverside Healthcare Sys., LP, 534 F.3d 1116, 1121−22 (9th Cir. 2008). To survive a Rule 12(b)(6) motion for failure to allege sufficient facts, a complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Compliance with this rule ensures that the defendant has "fair notice of what the ... claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)) (internal quotation marks omitted). Under this standard, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570) (internal quotation marks omitted). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. Id. at 663 (citation omitted).

In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as

---

[3] Harris characterizes Cox's conspiracy claim as a state law claim. See Doc. No. 52 at 8:10-13 (stating that Cox has attempted to allege "state-law claims for relief for intentional interference with prospective advantage, conspiracy to deprive him of his constitutional rights, and negligence"). It appears to the Court that Cox's conspiracy claim is brought under Section 1983, see Doc. No. 1 ¶ 1 (alleging that "Defendants ... violated Plaintiff's federal statutory and Constitutional civil rights under 42 U.S.C. § 1983 [] stemming, *inter alia*, from … Conspiracy"); see also, Radcliffe v. Rainbow Constr. Co., 254 F.3d 772, 783 (9th Cir. 2001) (recognizing claim under 42 U.S.C. § 1983 for conspiracy to deprive someone of constitutional rights), but the Court will allow for both possibilities in deciding this motion.

[4] Cox seeks judicial notice for nine documents in connection with his opposition to Harris's motion to dismiss. See Doc. No. 72. The records for which Cox seeks judicial notice had no bearing on this order, and the request is therefore denied. See Neylon v. County of Inyo, 2016 WL 6834097, at *4 (E.D. Cal. Nov. 21, 2016) (Ishii, J.).

true and construed in the light most favorable to the nonmoving party. See Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015); Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008). But the Court is "not 'required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.' " Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoted source omitted). Complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Iqbal, 556 U.S. at 678; Johnson v. Fed. Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015). Rather, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quoting Iqbal, 556 U.S. at 678).

"If the running of [a] statute [of limitations] is apparent on the face of the complaint, the defense may be raised by a motion to dismiss." Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980) (citations omitted). A motion to dismiss based on the running of a statute of limitations period, however, may be granted only "if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1206–07 (9th Cir. 1995) (quoting Jablon, 614 F.2d at 682) (internal quotation marks omitted). "In fact, a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." Id. (citing Jablon, 614 F.2d at 682).

If a motion to dismiss is granted, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Henry A. v Willden, 678 F.3d 991, 1005 (9th Cir. 2012) (quoted source omitted).

## DISCUSSION

Harris contends that all of Cox's claims against her are time-barred; that his Section 1983 claims against her fail because he has not alleged facts showing that she acted "under color of state

law": and that his state law claims against her fail because her "conduct in making a police report is absolutely privileged" under Section 47(b) of the California Civil Code. The Court will first address the timeliness of Cox's claims and then turn to the other issues raised in Harris's motion to the extent warranted.

## I.  STATUTES OF LIMITATIONS

Cox states that his claims against Harris accrued on November 13, 2015, Doc. No. 70 at 16:10-11[5] ("Defendants are correct that [Cox's] claims accrued on November 13, 2015 ...." ), and does not dispute that his Section 1983 claims, as well as his state law claims, are subject to two-year statutes of limitations.[6] Cox argues, however, that the statutes of limitations applicable to his claims were tolled under Section 945.3 of the California Government Code until the August 14, 2017 dismissal of Mariposa County's criminal case against him and that he therefore had until August 14, 2019—two days after he filed this action—to bring the claims in question here against Harris. Id., Part III.B.

Section 945.3 states, in pertinent part, as follows:

> No person charged by indictment, information, complaint, or other accusatory pleading charging a criminal offense may bring a civil action for money or damages against a peace officer or the public entity employing a peace officer based upon conduct of the peace officer relating to the offense for which the accused is charged, including an act or omission in investigating or reporting the offense or arresting or detaining the accused, while the charges against the accused are pending before a superior court.
>
> Any applicable statute of limitations for filing and prosecuting these actions shall be tolled during the period that the charges are pending before a superior court.

---

[5] Citations to documents on the Court's electronic docket use the page number in the CM/ECF stamp at the top of each page.

[6] Except where inconsistent with federal law, the applicable statute of limitations for actions brought pursuant to 42 U.S.C. § 1983 is the forum state's statute of limitations for personal injury actions. Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004) (citing Fink v. Shedler, 192 F.3d 911, 914 (9th Cir. 1999)). The current version of the statute of limitations for personal injury actions in California—which took effect on January 1, 2003—provides that a personal injury action must be brought within two years after the cause of action arose. Cal. Code Civ. Proc. § 335.1; see also, Canatella v. Van De Kamp, 486 F.3d 1128, 1132 (9th Cir. 2007). The limitations period applicable to claims for negligence and intentional interference with prospective economic advantage under California law is also two years. Knoell v. Petrovich, 76 Cal. App. 4th 164, 168 (1999) (citing Cal. Code Civ. Proc. § 339, subd. 1) (interference with prospective business advantage); So v. Shin, 212 Cal. App. 4th 652, 662 (2013), as modified on denial of reh'g (Jan. 28, 2013) (citing Cal. Code Civ. Proc. §§ 335, 335.1) (negligence).

Cal. Gov. Code § 945.3. The tolling component of Section 945.3 applies to claims under Section 1983, Harding v. Galceran, 889 F.2d 906, 908 (9th Cir. 1989), in addition to claims under state law. Cardenas v. Cty. of Riverside, 2008 WL 11409164, at *5 (C.D. Cal. Apr. 25, 2008).

Although Section 945.3 only purports to toll claims "against a peace officer or the public entity employing a peace officer," Cox argues that it tolled his claims against Harris because "the policy behind the statute makes it applicable in the context of [the] conspiracy" he purports to allege against Harris and the County Defendants. Doc. No. 70 at 17:3-7. Specifically, Cox contends that tolling under Section 945.3 is intended to increase access to courts by eliminating the need to defend a criminal action and prosecute a civil action at the same time; ensure recovery for the violation of federal constitutional or statutory rights by providing more time to file a Section 1983 action; and promote "consistent adjudication in state and federal courts." Id.

The Court does not agree with Cox's characterization of Section 945.3 policy, which has more to do with protecting the plea bargain process and otherwise avoiding complications in criminal proceedings,[7] but in any event, courts have consistently found—regardless of policy considerations—that a defendant must qualify as a "peace officer" under California Penal Code §§ 830 et seq. for Section 945.3 to apply. In *Matthews v. Macanas*, for example, the Ninth Circuit held that Section 945.3's tolling provision does not apply to federal officers because federal officers are not "California peace officers" under Section 830.8(a) of the California Penal Code. 990 F.2d 467, 469 (9th Cir. 1993), abrogated on other grounds as stated in Pascual v. Matsumura, 165 F. Supp. 2d 1149, 1151 (D. Haw. 2001); see also Kamar v. Krolczyk, 2008 WL 2880414, at *15 (E.D. Cal. July 22, 2008) (Ishii, J.) ("Because federal officers are not 'peace officers' under California law, Section 945.3's tolling provision does not apply to federal officials."). In *Mitchell v. Culver*, similarly, the court found that Section 945.3 did not apply to federal park rangers involved in a traffic stop. 2015 WL 5037398, at *2 (E.D. Cal. Aug. 25, 2015). And in *Salazar v. City of Adelanto*, the court found that that Section 945.3 did not apply to "mayors" or to "municipal code compliance officers" involved in a drug raid. 2020 WL 5778122, at *5 (C.D. Cal.

---

[7] See Damjanovic v. Ambrose, 3 Cal. App. 4th 503, 509 (1992) ("The purpose of the [Section 945.3] is to prevent criminal defendants from using civil lawsuits to gain leverage in criminal plea bargaining.").

9

1  Aug. 31, 2020), report and recommendation adopted, 2020 WL 5764404 (C.D. Cal. Sept. 24,
2  2020). In light of such findings, the lack of authority to the contrary[8] and the plain language of the
3  statute itself, the Court sees no basis for extending Section 945.3 tolling to claims against a
4  civilian like Harris, regardless of policy considerations or a supposed conspiracy. See Damjanovic,
5  3 Cal. App. 4th at 506, 510–11 (reaching "the inescapable conclusion that the Legislature had in
6  mind only governmental entities as defendants when it drafted section 945.3" and finding that
7  Section 945.3 "is inapplicable to causes of action against civilian defendants").

8        The Court does not entirely agree, however, with Cox's legal conclusion that his claims
9  accrued with his arrest on November 13, 2015. The accrual of Cox's state law negligence and
10 interference claims is governed by California law. As set forth by the California Supreme Court:

> Generally, a cause of action accrues and the statute of limitation begins to run [under California law] when a suit may be maintained. Ordinarily this is when the wrongful act is done and the obligation or the liability arises, but it does not accrue until the party owning it is entitled to begin and prosecute an action thereon. In other words, a cause of action accrues upon the occurrence of the last element essential to the cause of action.

15 Howard Jarvis Taxpayers Ass'n v. City of La Habra, 25 Cal. 4th 809, 815 (2001), as modified
16 (July 18, 2001) (citations and internal punctuation omitted).

17       Cox's negligence claim alleges that Harris and other defendants breached their duty "to be
18 truthful in their reporting, to properly gather evidence and investigate Harris' allegations," Doc.
19 No. 1 ¶ 264, and to the extent it applies to Harris, the interference claim is based on the adverse
20 effect Harris's false allegations supposedly had on Cox's agritourism business. Id. ¶¶ 226-29. As
21 alleged in the Complaint, Cox was made aware of Harris's accusations against him when he was
22 arrested on November 13, 2015; when Mariposa County filed the 11-count criminal complaint
23 against him on November 16, 2015; and when Mariposa County filed an amended 16-count
24 criminal complaint against him on February 22, 2016. Id. ¶¶ 69, 74. Further, the Complaint alleges
25 that Cox became aware that Harris had withheld and destroyed evidence upon receipt in March
26 2017 of the DOJ download of Harris's phone. Id. ¶¶ 88, 91, 94. And the Complaint states that Cox

---

[8] Cox cites *McDonough v. Smith*, 139 S. Ct. 2149 (2019) in support of his argument for tolling under Section 945.3, Doc. No. 70 at 17:16-19, but that decision contains no reference to section 945.3, let alone any analysis regarding the types of defendants eligible for section 945.3 tolling.

10

1  became aware of the ill-effects of Harris's false allegations on his business in "February or March
2  2016" when a prospective client made "public and defamatory posts on social media sites" stating
3  that "Cox had ruined her wedding by getting charged [with] rape." Id. ¶ 100. All of these events
4  pre-date the August 12, 2019 filing of this action by more than two years and, thus, it is apparent
5  from the face of the Complaint that Cox's state law claims for negligence and interference against
6  Harris are time-barred. See Jablon, 614 F.2d at 682.

7        The accrual date of Cox's Section 1983 causes of action, however, "is a question of federal
8  law that is *not* resolved by reference to state law." Wallace v. Kato, 549 U.S. 384, 388 (2007)
9  (emphasis original). As set forth by the Supreme Court, "accrual analysis" for a Section 1983
10 claim "begins with identifying 'the specific constitutional right' alleged to have been infringed,"
11 McDonough, 139 S. Ct. at 2155 (quoted source omitted), which in turn "depends upon the
12 substantive basis of the claim." Cabrera v. City of Huntington Park, 159 F.3d 374, 380 (9th Cir.
13 1998), disapproved of on other grounds by Shalabi v. City of Fontana, 11 Cal. 5th 842 (2021).
14 Once that determination has been made, the Supreme Court "often decides accrual questions by
15 referring to the common-law principles governing analogous torts," and the Supreme Court has
16 never suggested "that the date on which a constitutional injury first occurs is the only date from
17 which a limitations period may run." McDonough, 139 S. Ct. at 2155–56, 2160.

18       In *Wallace v. Kato*, for example, the Supreme Court found, by analogy to the common law
19 tort of false imprisonment, that a Section 1983 claim for false arrest in violation of the Fourth
20 Amendment does not accrue until "the alleged false imprisonment ends," even though injury is
21 suffered and damages arise at the time of arrest. 549 U.S. at 389-90, 398. And in *McDonough v.*
22 *Smith*, similarly, the Supreme Court found, by analogy to the common law tort of malicious
23 prosecution, that a Section 1983 claim arising from the use of fabricated evidence in criminal
24 proceedings did not accrue until the termination of criminal proceedings in favor of the criminal
25 defendant. 139 S. Ct. at 2156-57.

26       Harris has not conducted any accrual analysis of consequence with respect to Cox's
27 Section 1983 claims and the Court is not required to credit Cox's questionable legal conclusion
28 that his claims accrued on November 13, 2015. See Maya v. Centex Corp., 658 F.3d 1060, 1067

1   (9th Cir. 2011) ("the reviewing court, though crediting factual assertions made in the pleadings, is
2   not required to credit legal conclusions"). Harris has therefore failed to show that Cox's Section
3   1983 claims are time-barred, and the Court will address her other arguments as to such claims.

4   **II.    "STATE ACTOR" REQUIREMENT FOR SECTION 1983 CLAIMS**

5   "To state a claim under § 1983, a [p]laintiff must allege the violation of a right secured by
6   the Constitution and laws of the United States and must show that the alleged deprivation was
7   committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). A
8   private individual can be subject to liability under § 1983, but "the party charged with the
9   deprivation must be a person who may fairly be said to be a state actor." Lugar v. Edmondson Oil
10  Co., Inc., 457 U.S. 922, 937 (1982); Sutton v. Providence St. Joseph Med. Ctr., 192 F.3d 826, 835
11  (9th Cir. 1999).

12  When addressing the question of whether a private individual "may fairly be said to be a
13  state actor," courts "start with the presumption that private conduct does not constitute
14  governmental action." Sutton, 192 F.3d at 835 (citing Harvey v. Harvey, 949 F.2d 1127, 1130
15  (11th Cir.1992)). The burden is on the party suing under Section 1983 to overcome that
16  presumption and show that the person being sued "acted under color of state law." See Franklin v.
17  Fox, 312 F.3d 423, 444-45 (9th Cir. 2002); Florer v. Congregation Pidyon Shevuyim, N.A., 639
18  F.3d 916, 922 (9th Cir. 2011) ("We start with the presumption that conduct by private actors is not
19  state action." (citation omitted)).

20  Courts have employed several different tests to make this determination, including the
21  "public function" test, the "joint action" test, the "compulsion or coercion" test, and the
22  "governmental nexus" test. See Sutton, 192 F.3d at 835-36; Johnson v. Knowles, 113 F.3d 1114,
23  1118 (9th Cir.), cert. denied, 522 U.S. 996 (1997). Under any test, however, "the inquiry into
24  whether private conduct is fairly attributable to the state must be determined based on the
25  circumstances of each case." Sutton, 192 F.3d at 835–36 (quoting Bass v. Parkwood Hosp., 180
26  F.3d 234, 242 (5th Cir.1999)).

27  Harris contends that Cox cannot satisfy any "state actor" test because Cox's claims against
28  her are based solely on the allegation that she made a false police report. See Doc. No. 52 at 11:7-

9) ("Putting aside that Harris's police report was true and not fabricated, merely making a report to the police is not acting on behalf of the state, in concert with state officials, or under color of state law.") Cox, for his part, contends that the "joint action" test is satisfied because Harris not only made false reports to authorities but also took it upon herself to withhold—and ultimately destroy—exculpatory evidence in cooperation with the County Defendants. See Doc. No. 70 at 13:23-24 (stating that "the Complaint is replete with specific factual allegations other than the mere filing of a police report").

"Private persons, jointly engaged with state officials in [a] challenged action, are acting 'under color' of law for purposes of [Section 1983]." Dennis v. Sparks, 449 U.S. 24, 27–28 (1980) (citation omitted). "One way to establish joint action is to demonstrate a conspiracy." Collins v. Womancare, 878 F.2d 1145, 1154 (9th Cir. 1989) (citation omitted). "Joint action also exists where a private party is 'a willful participant in joint action with the State or its agents.' " Id. Joint action "requires a substantial degree of cooperative action," Collins, 878 F.2d at 1154, and a private entity or individual may be "recognized as a joint participant in [] challenged activity" where "the state knowingly accepts the benefits derived from unconstitutional behavior." Florer, 639 F.3d at 926 (citation and internal quotation marks omitted); see also Peng v. Mei Chin Penghu, 335 F.3d 970, 980 (9th Cir. 2003) ("As the United States Supreme Court noted in *Soldal v. Cook County*, 506 U.S. 56, 60 n. 6 [] (1992), if the police condone activities by private parties that they know to be illegal, there exists 'sufficient evidence of conspiracy between the private parties and the officer to foreclose summary judgment' for the private parties.").

Harris is correct that courts have found that merely filing a police report—or otherwise complaining to authorities—does not constitute state action for Section 1983 purposes. See Collins, 878 F.2d at 1155 ("merely complaining to the police does not convert a private party into a state actor .... [n]or is execution by a private party of a sworn complaint which forms the basis of an arrest enough to convert the private party's acts into state action" (citations omitted)); Arnold v. IBM, 637 F.2d 1350, 1357–58 (9th Cir.1981) ("a person who supplies inaccurate information that leads to an arrest is not involved in joint activity with the state and, thus, not liable under section 1983").

The Complaint, however, does not merely allege a false police report. It goes well beyond that to allege actions taken by the County Defendants and Harris to deprive Cox of perishable evidence directly relevant to rebutting Harris's assertions that she was held captive, forced to engage in nonconsensual sexual activity and otherwise abused by Cox over a period of three days. As alleged in the Complaint, the County apprised Harris that records on her cell phone were relevant to criminal charges against Cox (and went so far as to take snapshots of select messages deemed by the deputy district attorney to inculpate Cox), but nonetheless left the phone in Harris's possession for more than a year before finally downloading its contents. It then required months of motion practice for Cox's defense to get what remained of Harris's cell phone records from the County, whereupon an analysis conducted by Cox's defense showed that at least 49 messages between Cox and Harris had been deleted from Harris's cell phone and that there were no records at all on Harris's cell phone after the date of Cox's arrest. According to the Complaint, Cox's defense also found, from Verizon records, a high level of messaging activity on Harris's part during the period from November 10, 2015 and November 13, 2015, contradicting her claim (which she apparently maintained over a series of interviews taking place on different days) that she had been held captive with no way of reaching the outside world during that period.

Crediting these allegations, as the Court must at this stage in these proceedings, it is reasonable to infer that, after Harris made her initial report to police, Harris and the County Defendants worked in concert not only to perpetuate Harris's false accusations but also to destroy and delay the production of exculpatory evidence directly relevant to Cox's defense. Moreover, the allegations in the Complaint can reasonably be read to show not only that the County Defendants allowed Harris to withhold and destroy evidence, but that they condoned such conduct by leaving the cell phone in her possession for more than a year before downloading its contents, see Peng, 335 F.3d at 980, and benefited from such conduct by irreversibly reducing the body of exculpatory evidence available to Cox and otherwise burdening his defense. See Florer, 639 F.3d at 926. (9th Cir. 2011).

The Court therefore finds under the "joint action" test that Cox has adequately alleged Harris was acting "under color of law" for purposes of his Section 1983 claims.

## III. CONSPIRACY CLAIM

The elements of a cause of action for conspiracy under Section 1983 are: (1) the existence of an express or implied agreement to deprive a plaintiff of constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement.[9] Ting v. United States, 927 F.2d 1504, 1512 (9th Cir. 1991); Woodrum v. Woodward Co., 866 F.2d 1121, 1126 (9th Cir.1989). In other words, to allege conspiracy under Section 1983, a plaintiff must show "an agreement or 'meeting of the minds' to violate constitutional rights." Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002) (internal quotation marks and quoted source omitted). Such an agreement—or "meeting of the minds"—"need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants." Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1301 (9th Cir. 1999) (citation omitted); United States v. Clevenger, 733 F.2d 1356, 1358 (9th Cir. 1984). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1541 (9th Cir.1989) (en banc) (citation omitted).

Harris contends that "Cox's complaint is totally devoid of facts supporting his far-fetched allegation that Harris conspired with other defendants to violate his civil rights," again asserting that "the only substantive allegation he makes against Harris with any specificity is that she filed a police report." Doc. No. 52 at 13:7-11.

Cox, for his part, argues that the meeting of the minds required for a conspiracy claim under Section 1983 can be inferred from allegations relating to the "the intentional concealment of [Harris's] cell phone from [Cox's] defense team, its importance in terms of material and exculpatory evidence it contained, and the joint action of Harris and [Mariposa County Sheriff] deputies to compromise, and probably destroy that evidence and frustrate the efforts of Cox's

---

[9] As noted, s*upra*, at note 3, the Court reads the Complaint to allege a Section 1983 conspiracy claim, and not a state law conspiracy claim. In any event, to the extent Cox intended to allege a civil conspiracy claim under California law, it would be time-barred. Under California law, "[a] cause of action based on civil conspiracy accrues on the date of the commission of the last overt act in pursuance of the conspiracy." Kenworthy v. Brown, 248 Cal. App. 2d 298, 301-02 (1967). The Complaint allows for no conspiratorial act involving Harris that could have taken place after the August 14, 2017 dismissal of the criminal case against Cox, since the alleged conspiracy involves the suppression and destruction of evidence pertaining to the criminal case. See Doc. No. 70 at 14:2-5.

15

defense team to access it." Doc. No. 70 at 14:2-5.

The Court agrees with Cox. As noted above, the Complaint alleges that the County Defendants: (i) took immediate possession of Cox's phone, but left Harris's phone in her sole possession for more than a year, after ignoring messages that contradicted Harris's accusations; (ii) selectively preserved messages that inculpated Cox; and (iii) conveyed to Harris during interviews that cell phone records would bear on the outcome of the criminal case. Further, as alleged in the Complaint, the County actively sought to avoid producing the contents of Harris's phone to Cox and did not download the contents of Harris's phone until December 2016—13 months after Cox was arrested. There was then a further delay of three months in producing the downloaded records to Cox, whereupon Cox determined that 49 messages between Harris and himself had been destroyed and that no records at all after the November 13, 2015 date of his arrest had been preserved.

Harris argues based on *Arnold v. IBM*, 637 F.2d 1350 (9th Cir. 1981) and *King v. Massarweh*, 782 F.2d 825 (9th Cir. 1986) that Cox's conspiracy claim fails because Cox "has not alleged any facts that [] Harris exerted any control over the state's investigation of [him]." Doc. No. 96 at 8:8-9. The question addressed in the portion of the *Arnold* decision cited by Harris, however, was not whether there was a "meeting of the minds" between the state defendant and the private defendant, as required for a conspiracy, but whether the private defendant had exerted sufficient control over the actions of the state defendant to be deemed the "proximate cause" of the plaintiff's injury for purposes of a Section 1983 claim. The same is true as to the portion of the *King* decision cited by Harris. See King, 782 F.2d at 829 ("[T]his court has determined that, absent some showing that a private party had some control over state officials' decision to arrest a person or search his residence, the private party did not proximately cause the injuries stemming from the arrest and search" (citing *Arnold,* 637 F.2d at 1356)). Harris's motion does not seek dismissal for failure to satisfy the Section 1983 causation requirement, and in any event, Cox alleges that Harris herself retained the phone and destroyed records. The portions of *Arnold* and *King* cited by Harris are therefore irrelevant here.

Finally, as the Court's summary of Cox's allegations illustrates, there is no merit to

Harris's contention that Cox's allegations are merely "conclusory" or "boilerplate." See Doc. No. 96 at 9:11-24. Consistent with the well-settled *Iqbal* standard, the Complaint sets forth facts supporting a reasonable inference that there was a "meeting of the minds" between Harris and the Deputy Defendants to deprive Cox of exculpatory evidence. See Mendocino Envtl. Ctr., 192 F.3d at 1301. Harris's motion to dismiss will therefore be denied as to Cox's conspiracy claim under Section 1983.[10]

## CONCLUSION

In conclusion, the Court finds that the statutes of limitations on Cox's state law claims against Harris were not tolled by Section 945.3 of the California Government Code because Harris is not a "peace officer" under California law. Therefore, Cox's state law causes of action against Harris—including his causes of action for negligence, intentional interference with prospective economic advantage and (to the extent Cox asserts such a claim under state law) conspiracy— are time-barred. Amendment would be futile, so these causes of action will be dismissed with prejudice. See Willden, 678 F.3d at 1005. In light of this finding, it is unnecessary for the Court to address Harris's argument that liability on Cox's state law claims is precluded by privilege for police reports under Section 47(b) of the California Civil Code.

In addition, the Court finds that Cox has adequately alleged the "meeting of the minds" required for a conspiracy claim under Section 1983; that Cox's allegations satisfy the "joint action" test for a state actor; and that Harris failed to conduct the accrual analysis required to determine whether any of Cox's Section 1983 claims are time-barred. Therefore, Harris's motion to dismiss will be denied as to Cox's Section 1983 claims.

## ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant Ashley Harris's motion to dismiss (Doc. No. 52) is GRANTED IN PART and DENIED IN PART as follows:

    a. Plaintiff's state law claims against Harris (including claims for negligence,

---

[10] Harris does not attempt to show that the alleged conspiracy did not involve an underlying constitutional right. The Court, therefore, does not address that issue here.

   intentional interference with prospective economic advantage and, to the extent Plaintiff asserts such a claim under state law, conspiracy) are time-barred and DISMISSED WITH PREJUDICE; and

   b. The motion is DENIED as to Plaintiff's claims against Harris under 42 U.S.C. § 1983 (including, for avoidance of doubt, Plaintiff's conspiracy claim);

2. Harris is further DIRECTED to consult the Court's order on the County Defendants' motion to dismiss (Doc. No. 45) for aspects of that order that are relevant to her, including, specifically, the partial dismissal of certain claims, leave granted to Plaintiff to file a First Amended Complaint, and the timing of Harris's answer or other response to Plaintiff's pleading;

3. This matter is referred back to the magistrate judge for further proceedings consistent with this order.

IT IS SO ORDERED.

Dated: October 26, 2021

　　　　　　　　　　　　　　　　　　　SENIOR DISTRICT JUDGE