1
2
3
4
5                    **UNITED STATES DISTRICT COURT**
6                    **EASTERN DISTRICT OF CALIFORNIA**
7

8   JERRY COX, an Individual,                    CASE NO. 1:19-CV-01105-AWI-BAM

9                          Plaintiff,
                                                 **ORDER GRANTING IN PART AND**
10         v.                                    **DENYING IN PART COUNTY**
                                                 **DEFENDANTS' MOTION TO DISMISS**
11  MARIPOSA COUNTY; MARIPOSA
    COUNTY SHERIFF'S OFFICE; SHERIFF
12  DEPUTY WILLIAM ATKINSON;
    SHERIFF DEPUTY WESLEY SMITH;                 (Doc. No. 45)
13  ASHLEY HARRIS; CALIFORNIA
    RECEIVERSHIP GROUP
14  ("CRG"); MARK ADAMS IN HIS
    INDIVIDUAL AND OFFICIAL
15  CAPACITY, AND DOES 1 THROUGH
    100, INCLUSIVE.
16
                           Defendants.
17

18
19
20
21
22         Defendants Mariposa County, the Mariposa County Sheriff's Office, Sheriff Deputy

23  William Atkinson and Sheriff Deputy Wesley Smith (together, the "County Defendants") have

24  brought a motion seeking dismissal of all claims against them in this action. See Doc. No. 45. The

25  motion has been fully briefed and the Court has deemed it suitable for decision without oral

26  argument, pursuant to Local Rule 230(g). For the reasons that follow, the motion will be granted

27  in part and denied in part.

28

1

## BACKGROUND[1]

2   Cox alleges that the series of events underlying his claims started on November 13, 2015,

3   when he informed Harris, who had been staying for several weeks at property he owned in

4   Mariposa County (the "Property"), that she would have to vacate the cabin she (and apparently

5   others) were occupying to make room for vacation renters. Doc. No. 1 ¶ 58. According to Cox,

6   Harris was upset about being displaced and, after stopping at a bar to consume alcohol with one

7   Darlene Windham (who was also staying on the Property), went to the Mariposa California

8   Highway Patrol ("CHP") station to report that Cox had raped her and held her captive on the

9   Property. Id. ¶¶ 58-59. The CHP officer noted that Harris had been drinking and that there were

10  text messages on her cell phone contradicting her claims. Id. ¶ 60. The CHP officer referred the

11  matter to the Mariposa County Sheriff for jurisdictional reasons, id. ¶ 61, whereupon Harris falsely

12  told Atkinson and Smith (together, the "Deputy Defendants") that Cox raped her, sodomized her,

13  and held her against her will at the cabin from November 11-13, 2015. Id.

14  Harris further told Atkinson and Smith that she and Cox had met through an online dating

15  site, FarmersOnly.com and that she had emails and text messages with Cox (as well as messages

16  to her mother regarding Cox) on the cell phone in her possession at the time of the interview. Doc.

17  No. 1 ¶ 62. In addition to falsely accusing Cox of rape and kidnapping, Harris falsely stated that

18  she met Cox for the first time on November 11, 2015; that the doors of the cabin locked from the

19  outside; that she was unable to use her cell phone to call for help during her three-day period of

20  captivity; and that she was only able to escape because Windham came to the cabin on the

21  morning of November 13, 2015 to prepare it for guests. Id. ¶¶ 63-65. According to the Complaint,

22  Atkinson and Smith did not conduct any investigation into Harris's online activity—as to

23  FamersOnly.com or otherwise— and did not view, download or otherwise preserve records on

24  Harris's cell phone. Id. ¶¶ 62, 67.

25  Cox further alleges that Atkinson falsified police reports and other records by

26

27  _____

[1] This section summarizes allegations set forth in the Complaint. See Doc. No. 1.

28

misrepresenting exculpatory statements by Windham, who was "extremely skeptical" of Harris's story and who had "informed Atkinson and/or Smith" that Harris had lied about her alcohol intake and that Harris's "sexual relations with Cox were purely consensual," in addition to "inform[ing] the [Mariposa County Sheriff's Office] that Harris[] was free to come and go from the ranch at any time." Doc. No. 1 ¶ 68.

Later on November 13, 2015, a Mariposa County Sheriff deputy arrested Cox at the direction of Atkinson and Smith, without a warrant and based solely on Harris's "fabricated and uncorroborated story." Doc. No. 1 ¶ 69. Atkinson then interviewed Cox. Id. Cox denied Cox's allegations and provided Atkinson with the names of witnesses who were at the Property during the period in question. Id. Cox's cell phone was seized during the interview. Id. Cox's bail was set at $500,000, and Cox remained in jail for at least two weeks while arranging bail. Id.

 On November 14, 2015, Atkinson signed an affidavit for a warrant to search the Property that contained false statements by Harris but omitted Cox's denials and Windham's statements to Atkinson "that she had not witnessed or heard anything unusual between Cox and Harris" while sharing the cabin with them during the period in question. Doc. No. 1 ¶ 72. The Mariposa County Sheriff conducted a search of the Property on November 14, 2015. Id. ¶ 73. The search showed that the door to the cabin locked from the inside and that the cabin had functioning landline telephone service and functioning cell phone service. Id. According to Cox, however, the Mariposa County Sheriff's Office failed to document the phone service or the "multiple exit points" from the cabin. Id.

Also on November 14, 2015, Atkinson interviewed Harris for a second time. Doc. No. 1 ¶ 77. During that interview, Atkinson obtained Harris's cell phone number and informed her that he needed her cell phone to download conversations with Cox. Id. Atkinson did not, however, take possession of Harris's cell phone—or download its contents—at that time. Id.

On November 16, 2015, the Mariposa County district attorney filed a criminal complaint against Cox comprising 11 felony charges, plus enhancements. Doc. No. 1 ¶ 74.

On November 25, 2015, Harris was interviewed by Smith and a deputy district attorney. Doc. No. 1 ¶ 78. During that interview, Harris made reference to exchanging messages with Cox

on FarmersOnly.com and her cell phone and to contacting witnesses through Facebook. Id. The deputy district attorney took snapshots of a selection of text messages between Harris and Cox on Harris's cell phone, but did not take possession of the phone, download records from the phone, or photograph any "exculpatory text messages" evidencing the consensual nature of the relationship between Cox and Harris. Id.

On February 22, 2016, the County amended the criminal complaint to allege 16 felonies against Cox, including rape, sodomy and kidnapping. Doc. No. 1 ¶ 74.

On March 10, 2016, new defense counsel substituted in for Cox and requested discovery relevant to the proceedings. Doc. No. ¶ 79.

On April 4, 2016, Cox made an informal discovery request of the Mariposa County district attorney seeking "[a] copy of all messages between Ashley Harris and Cox in the prosecution's possession, be they text/SMS messages, Facebook messages, messages transmitted through FarmersOnly.com, or otherwise." Doc. No. 1 ¶ 81.

On April 19, 2016, Cox brough a motion to enforce that request, Doc. No. 1 ¶ 82, and on April 21, 2016, Mariposa County filed a response to the motion, stating it was unable to produce the records in question because "the Department of Justice [wa]s still analyzing the defendant's phone and computer." Id.

On May 13, 2016, the Mariposa Superior Court authorized a defense subpoena seeking all messages relating to Harris, Cox or the Property in the possession of Harris's mother. Doc. No. 1 ¶ 84. Harris's mother avoided service of the subpoena and Mariposa County made no efforts to obtain exculpatory evidence from her. Id. Records later obtained by Cox showed that Harris was in regular communication with her mother (and others) through her cell phone during the period that she claimed to have been held captive on the Property. Id.

On June 20, 2016, Mariposa County provided the forensic download of Cox's phone to Cox's defense. Doc. No. 1 ¶ 86. This production occurred six months after Mariposa County completed the download on December 23, 2015 and contained 22 messages between Harris and Cox during the period in which Harris claimed to have been held against her will. Id.

On August 8, 2016, the Mariposa Superior Court issued a discovery order authorizing Cox

to issue subpoenas to Verizon Communications ("Verizon"), Facebook, Inc. and FarmersOnly.com seeking production of messages involving Harris. Doc. No. 1 ¶ 88. Mariposa County had not previously sought to obtain records from these entities. Id. Records from Verizon ultimately showed that Harris sent and received 166 text messages in the period between November 10 and November 13, 2015. Id. ¶ 91.

On October 14, 2016, Mariposa County searched the Property for building, health and safety code violations pursuant to a civil warrant based on affidavit containing false claims from the criminal case. Doc. No. 1 ¶¶ 99, 102.

On March 7, 2017, Cox received discovery from the County showing that the Department of Justice ("DOJ") did not conduct the forensic download of Harris's phone until December 8, 2016. Doc. No. 1 ¶ 92. Harris maintained possession of her phone for a year prior to the download, but although Harris claimed she needed to retain the phone for personal use, there were no messages on the phone after November 13, 2015. Id. ¶ 93. An analysis conducted by Cox's defense further showed that at least 49 messages between Cox and Harris that appeared on Cox's cell phone did not appear in the County's download of Harris's cell phone. Id. ¶ 94.

On March 13, 2017, the County brought a motion to place the Property in receivership (the "Receivership"), claiming to have found 101 building, health and safety violations. Doc. No. 1 ¶ 104. The Receivership resulted in hundreds of thousands of dollars in costs and culminated in the forced sale of the Property. See Id. ¶¶ 99-145.

On June 2, 2017, Harris testified in a deposition for another case that she had never been a victim of sexual assault or abuse. Doc. No. 1 ¶ 97.

On August 14, 2017, the County dismissed all criminal charges against Cox on the district attorney's motion, while the civil action involving supposed building, health and safety violations on the Property (the "Receivership action") continued. Doc. No. 1 ¶ 146.

On July 26, 2019, a Superior Court judge in another county denied Harris's request for a restraining order against Cox in connection with the alleged rape based on findings, in the judge's words, that ""Harris lacked credibility," "[h]er testimony just could not hold water," and "[a]ny reasonable person could not conclude her story was straight." Doc. No. 1 ¶¶ 66, 98.

1    Cox filed this action on August 12, 2019 alleging fourteen claims under state and federal

2  law against Harris and the County Defendants, as well as Mark Adams and the California

3  Receivership Group ("CRG") (together, the "Receiver"),[2] in connection with the foregoing events

4  (and others not directly relevant to this motion).

5                                        **LEGAL FRAMEWORK**

6        Under Federal Rule of Civil Procedure 12(b)(6), a cause of action may be dismissed where

7  a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

8  Dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the

9  absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar,

10  646 F.3d 1240, 1242 (9th Cir. 2011); Johnson v. Riverside Healthcare Sys., LP, 534 F.3d 1116,

11  1121−22 (9th Cir. 2008). To survive a Rule[3] 12(b)(6) motion for failure to allege sufficient facts, a

12  complaint must include a "short and plain statement of the claim showing that the pleader is

13  entitled to relief." Fed. R. Civ. P. 8(a)(2). Compliance with this rule ensures that the defendant has

14  "fair notice of what the ... claim is and the grounds upon which it rests." Bell Atl. Corp. v.

15  Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)) (internal

16  quotation marks omitted). Under this standard, a complaint must contain sufficient factual matter

17  to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

18  (quoting Twombly, 550 U.S. at 570) (internal quotation marks omitted). A claim has facial

19  plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

20  inference that the defendant is liable for the alleged misconduct. Id. at 663 (citation omitted).

21        In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as

22  true and construed in the light most favorable to the nonmoving party. See Mollett v. Netflix, Inc.,

23  795 F.3d 1062, 1065 (9th Cir. 2015); Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th

24  Cir. 2008). But the Court is "not 'required to accept as true allegations that contradict exhibits

25  attached to the Complaint or matters properly subject to judicial notice, or allegations that are

26  merely conclusory, unwarranted deductions of fact, or unreasonable inferences.' " Seven Arts

27

28  [2] Adams and CRG were dismissed from this action on jurisdictional grounds on April 7, 2020. See Doc. No. 42.
    [3] Unless otherwise indicated, "Rule," as used herein, refers to the Federal Rules of Civil Procedure.

1   Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoted

2   source omitted). Complaints that offer no more than "labels and conclusions" or "a formulaic

3   recitation of the elements of a cause of action will not do." Iqbal, 556 U.S. at 678; Johnson v. Fed.

4   Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015). Rather, "for a complaint to

5   survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from

6   that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S.

7   Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quoting Iqbal, 556 U.S. at 678).

8   "If the running of [a] statute [of limitations] is apparent on the face of the complaint, the

9   defense may be raised by a motion to dismiss." Jablon v. Dean Witter & Co., 614 F.2d 677, 682

10   (9th Cir. 1980) (citations omitted). A motion to dismiss based on the running of a statute of

11   limitations period, however, may be granted only "if the assertions of the complaint, read with the

12   required liberality, would not permit the plaintiff to prove that the statute was tolled." Supermail

13   Cargo, Inc. v. United States, 68 F.3d 1204, 1206–07 (9th Cir. 1995) (quoting Jablon, 614 F.2d at

14   682) (internal quotation marks omitted). "In fact, a complaint cannot be dismissed unless it

15   appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness

16   of the claim." Id. (citing Jablon, 614 F.2d at 682).

17   If a motion to dismiss is granted, "a district court should grant leave to amend even if no

18   request to amend the pleading was made, unless it determines that the pleading could not possibly

19   be cured by the allegation of other facts." Henry A. v Willden, 678 F.3d 991, 1005 (9th Cir. 2012)

20   (quoted source omitted).

21   **DISCUSSION**

22   The County Defendants contend that Cox's claims against them are barred because he was

23   required to bring all of them in the Receivership action and that Cox lacks standing to bring claims

24   involving the Property because he is not the legal owner of the Property. Further, they argue that

25   the Mariposa County Sheriff's Office is improperly duplicative of Mariposa County as a defendant

26   on Cox's Section 1983 claims; that Cox's federal claims are time-barred; that Cox's state law

27   claims are barred under the California Government Claims Act; and that Cox has failed to state a

28

1   claim on which relief can be granted under federal or state law. The Court addresses these

2   arguments—to the extent necessary—below.

3   **I.      STANDING TO BRING CLAIMS REGARDING THE PROPERTY**

4       **A. Parties' Arguments**

5           The County Defendants contend that Cox lacks standing to assert claims relating to the

6   Property because the Property was owned by JDC Land Company, LLC ("JDC"), not Cox.

7   Further, the County Defendants contend that whatever ownership stake Cox may have in JDC is

8   irrelevant because Cox was not the "record title owner" of the Property and took title to Property

9   "in the name of a corporate entity for liability, tax, and other reasons."

10          Cox argues that he has standing to bring claims arising from the County Defendants'

11  actions with respect to the Property because he holds beneficial title to the Property as the sole

12  member—and 100% owner—of JDC. He further contends that JDC was not named as a plaintiff

13  in this action because JDC was inoperative at the time this action was filed and that the County

14  Defendants should be estopped from contesting his standing with respect to the Property because

15  it was action on their part (in the form of installing a malfeasant receiver) that caused JDC to

16  lapse. Finally, he states that JDC has been restored to operational status and that he can cure the

17  alleged standing defect by joining JDC as a plaintiff now.

18      **B. Applicable Law**

19          Rule 12(b)(1) allows a party to seek dismissal for lack of standing. Fed. R. Civ. P.

20  12(b)(1); see White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). "In general, shareholders of a

21  corporation or members of an LLC lack prudential standing to assert individual claims based on

22  harm to the corporation or LLC in which they own shares." Solarmore Mgmt. Servs., Inc. v.

23  Bankr. Est. of DC Solar Sols., 2021 WL 3077470, at *3 (E.D. Cal. July 21, 2021) (citing, *inter*

24  *alia*, Erlich v. Glasner, 418 F.2d 226, 227 (9th Cir. 1969)); see also Woods View II, LLC v. Kitsap

25  County, 484 F. App'x 160, 161 (9th Cir. 2012) (sole member of LLC engaged in real estate

26  development lacked standing to bring individual Section 1983 claims against County and County

27  officials when member's financial losses were "derivative of [the LLC's] own losses" and member

28  "was not injured directly and independently of the limited liability company"); Rosenberg v. DVI

Receivables, XIV, LLC, 2012 WL 5198341, at *2 (S.D. Fla. Oct. 19, 2012) (stating that "the shareholder standing rule has been applied to members of LLCs").

In *Fleck and Associates, Inc. v. Phoenix*, the Ninth Circuit "explained th[e] prudential limitation on standing as follows":

> Standing doctrine involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise. The constitutional aspect inquires whether the plaintiff has made out a case or controversy between himself and the defendant within the meaning of Article III by demonstrating a sufficient personal stake in the outcome. The prudential limitations, in contrast, restrict the grounds a plaintiff may put forward in seeking to vindicate his personal stake.

471 F.3d 1100, 1103–04 (9th Cir. 2006); Finstuen v. Crutcher, 496 F.3d 1139, 1147 (10th Cir. 2007) ("Prudential standing is not jurisdictional in the same sense as Article III standing."). Thus, the "standing inquiry does not end with the threshold constitutional question," and "[e]ven where plaintiffs meet the bare minimum of the Article III case or controversy requirement, [courts] typically decline to hear cases asserting rights properly belonging to third parties rather than the plaintiff." McCollum v. California Dep't of Corr. & Rehab., 647 F.3d 870, 878 (9th Cir. 2011) (citing Singleton v. Wulff, 428 U.S. 106, 113 (1976)); Bd. of County Comm'rs v. Geringer, 297 F.3d 1108, 1111 (10th Cir.2002) ("The standing inquiry requires us to consider both constitutional limits on federal-court jurisdiction and prudential limitations on its exercise." (quoted source and internal quotations omitted)).

"A shareholder does have standing, however, when he or she has been injured directly and independently from the corporation." RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1057 (9th Cir. 2002) (quoted source and internal quotation marks omitted); see also Meland v. Weber, 2 F.4th 838, 847–48 (9th Cir. 2021) ("If a shareholder has 'a direct, personal interest' in his cause of action … the claim is not derivative and thus there are no prudential standing concerns." (quoting Franchise Tax Bd. of California v. Alcan Aluminium Ltd., 493 U.S. 331, 336 (1990). Moreover, "[t]he same conduct may result in injury to both the corporation and the individual shareholders." RK Ventures, Inc., 307 F.3d at 1057 (citing Gomez v. Alexian Bros. Hosp., 698 F.2d 1019, 1021 (9th Cir.1983) (per curiam)); Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1319 (9th Cir. 1989) ("The fact that these injuries arose from the same conduct as the corporate injuries does not

1  preclude a finding of direct and independent injury to individual plaintiffs for standing purposes.

2  This circuit has held that the same conduct can result in both corporate and individual injuries."

3  (citations omitted)).

4     **C. Discussion**

5     The Court will decline to dismiss claims involving the Property for lack of standing for

6  two reasons. First, Cox alleges that he suffered harm to his reputation and that he was "forced to

7  vacate" the Property, "rendered homeless" and "forced to sell his tractors, trucks, livestock, horses

8  and bison of significant worth" due to the County Defendants' actions with respect to the

9  Property. Doc. No. 1 ¶¶ 140, 145, 257, 259. Further, the Court notes that the warrant authorizing

10 the search of the Property on October 14, 2016 expressly authorized inspection of essentially

11 everything on the Property, including not only "the interior and exterior of all buildings,

12 structures, homes, houses, rooms, barns, garages, vehicles, basements, attics, sheds, units, open

13 fields, yards [and] storage facilities," but also "all … drawers, cabinets, papers, and electronic

14 files" located on the Property. Doc. No. 25 at 80 of 97. At least some of those "papers[] and

15 electronic files" presumably belonged to Cox and arguably implicated his interests as an

16 individual, independent of JDC's interests. Thus, Cox has alleged "more than personal economic

17 injury resulting from a wrong to the [JDC]" and, in that respect, has satisfied both constitutional

18 and prudential standing requirements for claims in connection with the Property. See Elizabeth

19 Retail Properties LLC v. KeyBank Nat. Ass'n, 83 F. Supp. 3d 972, 988 (D. Or. 2015) (finding

20 standing where plaintiff sought "damages in her individual capacity for defamation and damage to

21 her business reputation" in addition to seeking compensation for harms suffered by companies in

22 which she held shares).

23    Further, '[u]nlike constitutional standing, defects in prudential standing do not act as limits

24 on a court's subject matter jurisdiction." Lujano v. Town of Cicero, 2012 WL 4499326, at *5

25 (N.D. Ill. Sept. 28, 2012) (citing 6A Wright & Miller, Federal Practice and Procedure § 1542 (2d

26 ed. 2009)); see also Finstuen v. Crutcher, 496 F.3d 1139, 1147 (10th Cir. 2007) ("Prudential

27 standing is not jurisdictional in the same sense as Article III standing."). The Court therefore sees

28 no reason not to give Cox the opportunity to cure whatever deficit there might be in prudential

1  standing by joining JDC as a plaintiff in this action on claims arising from the Property. Fed. R.

2  Civ. P. 17(a)(3) (providing for the joinder of a real party in interest after a complaint is filed); see

3  also Activision Blizzard Inc. v. Acceleration Bay LLC, 2016 WL 4548985, at *1-*2 (N.D. Cal.

4  Sept. 1, 2016) (giving plaintiff 14 days to cure defect in prudential standing by joining a party);

5  Lavaggi v. Republic of Argentina, 2008 WL 4449347, at *2 (S.D.N.Y. Sept. 30, 2008) ("Unlike a

6  deficiency in constitutional standing, a failure to satisfy the prudential requirements of standing

7  can be cured after the complaint is filed."); Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,

8  106 F.3d 11, 18-21 (2d Cir. 1997) (permitting an amendment to add plaintiffs in order to cure a

9  defect of prudential standing).

10     The Court therefore declines to dismiss any claims regarding the Property for lack of

11  standing and will grant leave for JDC to be joined in this action as a plaintiff.

12  **II.     FAILURE TO BRING CLAIMS IN THE RECEIVERSHIP ACTION**

13     The County Defendants argue that Cox's claims are barred by Section 426.30(a) of the

14  California Code of Civil Procedure as compulsory cross-claims that had to be brought, if at all, in

15  the Receivership action.

16     Section 426.30 of the California Code of Civil Procedure states as follows:

17     (a) Except as otherwise provided by statute, if a party against whom a complaint
       has been filed and served fails to allege in a cross-complaint any related cause
18       of action which (at the time of serving his answer to the complaint) he has
       against the plaintiff, such party may not thereafter in any other action assert
19       against the plaintiff the related cause of action not pleaded.

20     (b) This section does not apply if either of the following are established:

21     (1) The court in which the action is pending does not have jurisdiction to render
       a personal judgment against the person who failed to plead the related cause
22       of action.

23     (2) The person who failed to plead the related cause of action did not file an
       answer to the complaint against him.
24

25     It is undisputed that JDC was the only defendant in the Receivership action and that Cox

26  himself was never served with a summons and complaint and never filed an answer. Thus, on its

27  face, Section 426.30 does not appear to have any applicability to claims Cox brings in this action.

28  See Maldonado v. Harris, 370 F.3d 945, 952 (9th Cir. 2004) (applying the "plain language" of

Section 426.30 and stating that "preclusion provisions like the compulsory cross-complaint state should be read narrowly").

The County Defendants contend that, despite the plain language of Section 426.30, Cox was "required to bring his claims as cross-claims" in the Receivership action because all the claims Cox alleges in this case (including claims relating to the criminal case) involve "the same transaction, occurrence, or series of transactions or occurrences" as the Receivership action. Doc. No. 45-1 at 15:24-16:11. The Court notes the County Defendants' view that the Receivership action and the criminal case arise from the "same transaction, occurrence, or series of transactions or occurrences," but the County Defendants fail to explain how Cox's ownership interest in JDC triggered an obligation (or even right) on his part to intervene in the County's case against JDC. See Banerian v. O'Malley, 42 Cal. App. 3d 604, 612 n.4 (Ct. App. 1974) (stating that, under Section 426.30, a cross-complaint is "permissive … between parties and nonparties").

The County Defendants are essentially taking the position that Cox and JDC should be considered one and the same for purposes of Section 426.30. Doc. No. 97 at 10:12-16 (noting that Cox is "the 100% owner of JDC" and JDC is a "single proprietorship"). That conflicts, however, not only with settled law distinguishing LLCs from their members, see Abrahim & Sons Enterprises v. Equilon Enterprises, LLC, 292 F.3d 958, 962 (9th Cir. 2002) ("Corporations and LLCs are distinct legal entities, separate from their stockholders or members."), but also with the County Defendants' argument (addressed above) that Cox and JDC are distinct from one another for purposes of standing. Doc. No. 45-1 at 17:2-8 (stating that "real party in interest" in claims involving the Property is not Cox, but "the corporate entity JDC").

The question of compulsory counter-claims could conceivably become relevant to this case if JDC is joined as a plaintiff (as discussed above), but the Court sees no basis to bar any of the claims under Section 426.30, as the Complaint is pled.

## III.   MARIPOSA COUNTY SHERIFF'S OFFICE AS SECTION 1983 DEFENDANT

The County Defendants contend that Cox's Section 1983 claims against the Mariposa County Sheriff's Office should be dismissed with prejudice because Mariposa County is named as a defendant on the same claims and it is not proper to plead municipal liability against municipal

"sub-agencies." Doc. No. 45-1 at 33:19-26.

A claim for civil rights violations under Section 1983 requires a "person" who acted under color of state law. See 42 U.S.C. § 1983. Local governmental units, such as counties and cities, are considered "persons" within the meaning of Section 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 70 (1989); County of Los Angeles v. Superior Court, 68 Cal. App. 4th 1166, 1171 (1998). Local government sub-units, however, are not generally considered "persons" within the meaning of Section 1983. See Vance v. County of Santa Clara, 928 F. Supp. 993, 995-96 (N.D.Cal.1996) (stating that "naming a municipal department as a defendant is not an appropriate means of pleading a § 1983 action against a municipality" and dismissing the Santa Clara Department of Corrections from the action); see also Sanders v. Aranas, , 2008 WL 268972, at *3 (E.D. Cal. Jan. 29, 2008) (finding that the Fresno Police Department cannot be sued under Section 1983 because it is a sub-division of the City of Fresno) (Ishii, J.).

The Court therefore agrees with the County Defendants that, as a subdivision of Mariposa County, the Mariposa County Sheriff's Office is not a proper defendant on Cox's Section 1983 claims. See Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir.1992) (affirming district court's dismissal of claims against a county sheriff's department); Brockmeier v. Solano County Sheriff's Dept., 2006 WL 3760276, *4 (E.D.Cal. 2006) (finding that the Solano County Sheriff's Department was not a proper defendant for purposes of plaintiff's Section 1983 claims). Cox's Section 1983 claims will therefore be dismissed with prejudice as to the Mariposa County Sheriff's Office, leaving Mariposa County as the sole municipal defendant on each such claim.

## IV.     TIMELINESS OF SECTION 1983 CLAIMS

### A. Parties' Arguments

The County Defendants contend that Cox's Section 1983 claims are time-barred under Section 335.1 of the California Code of Civil Procedure because they accrued more than two years before this action was filed on August 12, 2019. Specifically, the County Defendants contend that all claims in connection with the Receivership action (including, for example, claims arising from the October 14, 2016 code enforcement search) necessarily accrued before the Mariposa Superior Court appointed a receiver over the Property on July 17, 2017 and that all claims relating to the

criminal case accrued either when Cox was arrested on November 13, 2015; when the Property
was searched on November 14, 2015; or when the criminal complaint was filed against Cox on
November 16, 2015. Relatedly, the County Defendants contend that no claims against them can be
based on actions taken by the Receiver after the Receivership took effect because the Receiver
acted as an agent of the Mariposa Superior Court, not as an agent of the County.

Cox does not dispute that California's two-year statute of limitations for personal injury
actions under Section 335.1 applies to his Section 1983 claims but argues that his claims were
tolled during the pendency of the criminal case and the "intertwined" Receivership case (which is
still ongoing) by Section 945.3 of the California Government Code. Further, Cox argues that
accrual of his claims was delayed to the extent his claims involve conspiracy or continuing
violations.

The County Defendants concede that Section 945.3 may have tolled claims arising from
the criminal case but take the position that Section 945.3 cannot toll claims arising from events
relating to the Receivership case. Further, the County Defendants contend that Cox's accrual
arguments with respect to conspiracy and continuing violations are of no consequence because the
County Defendants cannot be said to have taken action of any kind in connection with the
Receivership case after the Receiver was appointed by the Mariposa Superior Court on July 17,
2017.

**B. Discussion**

The Court finds that the County Defendants have failed to show that Cox's Section 1983
claims are time-barred for two reasons. First, the County Defendants have not adequately
addressed the question of when each of Cox's Section 1983 claims accrued. "Although courts look
to state law for the length of the limitations period, the time at which a § 1983 claim accrues 'is a
question of federal law.'" McDonough v. Smith, 139 S. Ct. 2149, 2155 (2019) (quoting Wallace
v. Kato, 549 U.S. 384, 388 (2007)). "That time is presumptively when the plaintiff has a complete
and present cause of action, but the answer is not always so simple." Id. (internal quotation marks,
quoted source and other citation omitted). "Where, for example, a particular claim may not
realistically be brought while a violation is ongoing, such a claim may accrue at a later date." Id.

1 (citing <u>Wallace</u>, 549 at 389).

2   As set forth by the United States Supreme Court, "accrual analysis" for a Section 1983

3 claim "begins with identifying 'the specific constitutional right' alleged to have been infringed,"

4 <u>McDonough</u>, 139 S. Ct. at 2155 (citation omitted), which in turn "depends upon the substantive

5 basis of the claim." <u>Cabrera v. City of Huntington Park</u>, 159 F.3d 374, 380 (9th Cir. 1998),

6 disapproved of on other grounds by <u>Shalabi v. City of Fontana</u>, 11 Cal. 5th 842 (2021). Once that

7 determination has been made, the Supreme Court "often decides accrual questions by referring to

8 the common-law principles governing analogous torts," and the Supreme Court has never

9 suggested "that the date on which a constitutional injury first occurs is the only date from which a

10 limitations period may run." <u>McDonough</u>, 139 S. Ct. at 2155, 2160 (citations omitted).

11   In *Wallace v. Kato*, for example, the Supreme Court found, by analogy to the common law

12 tort of false imprisonment, that a Section 1983 claim for false arrest in violation of the Fourth

13 Amendment does not accrue until "the alleged false imprisonment ends," even though injury is

14 suffered and damages arise at the time of arrest. 549 U.S. at 389-90, 398. And in *McDonough v.*

15 *Smith*, similarly, the Supreme Court found, by analogy to the common law tort of malicious

16 prosecution, that a Section 1983 claim arising from the use of fabricated evidence in criminal

17 proceedings did not accrue until the termination of criminal proceedings in favor of the criminal

18 defendant. 139 S. Ct. at 2156-57.

19   The County Defendants have not conducted any such accrual analysis with respect to

20 Cox's Section 1983 claims, and the Court will neither credit the County Defendants' conclusory

21 assertions as to when Cox's Section 1983 claims accrued nor undertake the required accrual

22 analysis itself.

23   Second, the County Defendants appear to concede that tolling under Section 945.3 may be

24 applicable to Cox's Section 1983 claims with respect to the criminal case but do not address, with

25 any specificity, the question of which claims are subject to tolling.[4] Similarly, the County

26

27 [4] In contrast to accrual (which is governed by federal law), the tolling of Section 1983 claims in governed by state law. <u>Lucchesi v. Bar-O Boys Ranch</u>, 353 F.3d 691, 694 (9th Cir. 2003) ("State law governs the statutes of limitations for section 1983 actions as well as questions regarding the tolling of such limitations periods.") (citing <u>Wilson v. Garcia</u>, 471 U.S. 261, 269 (1985)).

28

Defendants have not satisfied the Court that Section 945.3 does not toll Section 1983 claims involving conduct involving code enforcement and the Receivership case.

Section 945.3 states, in part, as follows:

No person charged by indictment, information, complaint, or other accusatory pleading charging a criminal offense may bring a civil action for money or damages against a peace officer or the public entity employing a peace officer based upon conduct of the peace officer relating to the offense for which the accused is charged, including an act or omission in investigating or reporting the offense or arresting or detaining the accused, while the charges against the accused are pending before a superior court.

On February 22, 2016, the criminal complaint against Cox was amended to allege 16 separate felonies with enhancements, and October 14, 2016—while the criminal charges were still pending— Mariposa County and the Mariposa County Sheriff's Office executed a search of the Property pursuant, allegedly, to a warrant based on an affidavit executed by Atkinson and containing allegations from the criminal case. While this inspection was putatively "civil" in nature, Cox contends that it was "intertwined" with the criminal case and the County Defendants themselves take the position in briefing this motion that claims involving the criminal case and claims involving the Receivership case are "related claims" arising from "the same transaction, occurrence, or series of transactions or occurrences." Doc. No. 45-1 at 15:24-16:11. As such, the Court cannot presently rule out the possibility that Section 945.3 tolled Section 1983 claims relating to the "civil" search of the Property or other aspects of the Receivership case.

For the foregoing reasons, the Court will not dismiss (at this juncture) any of Cox's Section 1983 claims against the County Defendants on the grounds that they are time-barred.

## V.   FAILURE TO STATE A CLAIM UNDER FEDERAL LAW

The vehicle for vindication of an alleged violation of a citizen's constitutional rights is generally an action pursuant to 42 U.S.C. § 1983.[5] Section 1983 itself is not a source of substantive rights. Rather, it provides a cause of action against any person who, acting under color of state law, subjects a citizen of the United States to the deprivation of any rights, privileges, or

---

[5] In relevant part, Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress...." 42 U.S.C. § 1983.

immunities secured by the Constitution or limited federal statutory rights. See 42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must plead (1) that the defendant acted under color of state law and (2) that the defendant deprived him of rights secured by the Constitution or federal statutes. West v. Atkins, 487 U.S. 42, 48 (1988); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006); see also Long v. Cty. of Fresno, 2014 WL 3689694, at *3 (E.D. Cal. July 24, 2014) (Ishii, J.).

Cox alleges four Section 1983 claims against the County Defendants, including claims implicating rights under the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, the Fourth Amendment. In addition, Cox brings a claim under the Fifth Amendment against the County. The County Defendants contend all of these claims are subject to dismissal under Rule 12(b)(6) for failure to state a claim on which relief can be granted. The Court will address each claim in turn.

**A. First Claim: Due Process Clause of the Fourteenth Amendment**

Cox claims that the County Defendants violated his due process rights under the Fourteenth Amendment by effecting his arrest based on an accusation that was plainly false; charging him with 11 criminal counts plus enhancements without first engaging in a proper investigation; failing to collect, preserve and produce exculpatory evidence that would have exonerated him at the outset of the criminal case; ignoring exculpatory evidence that was readily available and actually known to law enforcement; relying on false statements from Harris that were contradicted by eyewitness testimony, cell phone records and other forms of evidence; using false allegations from the criminal case to secure a code enforcement warrant; and exaggerating or falsifying 101 code violations to lay the groundwork for displacing Cox and stripping him of his property through a meritless and corrupt receivership action.

1. Parties' Arguments

The County Defendants characterize this as a "substantive due process" claim and assert that, to the extent it is predicated on Cox's arrest and prosecution, it is "covered by the Fourth Amendment, not the substantive due process clause" of the Fourteenth Amendment. Doc. No. 45-1 at 21:19-21. According to the County Defendants, the "protections of substantive due process"

are for the most part limited to "marriage, family, procreation, and the right to bodily integrity" and, thus, the "generalized notion of substantive due process" is not applicable here. The County Defendants further argue Cox has no substantive due process claim in connection with the Property, because he cannot show that the County Defendants' actions were "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." Doc. No. 45-1 at 22:7-11.

Cox, for his part, generally contends that the County Defendants' motion improperly addresses the merits of his Section 1983 claims and that the claim in question here covers violations of both substantive and procedural due process rights under the Fourteenth Amendment. See Doc. No. 68, Part IX.A. Further, Cox states that the substantive due process claim is based not only on his arrest, imprisonment and prosecution without probable cause, but also his allegations that the County Defendants prosecuted the criminal case knowing it was without merit; imposed "extrajudicial" punishment on him through code enforcement action; and conspired (or at least worked in concert) with Harris to suppress or destroy exculpatory evidence.

### 2. Discussion

The Fourteenth Amendment Due Process Clause "protects persons against deprivations of life, liberty, or property." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). The Due Process Clause provides two distinct but related rights: procedural due process and substantive due process. Albright v. Oliver, 510 U.S. 266, 272 (1994). "The touchstone of due process is protection of the individual against arbitrary action of government, whether the fault lies in a denial of fundamental procedural fairness or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective." County of Sacramento v. Lewis, 523 U.S. 833, 845–46 (1998)) (citations and internal punctuations omitted).

#### a. Procedural Due Process

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist., 149 F.3d 971, 982 (9th Cir. 1998). Cox argues that "Mariposa's actions as described in the Complaint, taken as true, present

significant violations of [his] procedural [] due process rights," Doc. No. 68 at 27:21-25, but he never identifies—either in the Complaint or his briefing—which of these "actions" supposedly involved procedural due process violations. Further, the Court notes that the Complaint alleges that warrants were issued for searches and (at least indirectly) that a hearing was conducted in connection with his detention. See e.g. Doc. No. 1 ¶¶ 70, 72. The Court therefore agrees with the County Defendants that Cox has failed to state a procedural due process claim.

The Court will dismiss Cox's procedural due process with leave to amend, consistent with this order and Rule 11. Further, to the extent Cox elects to amend his procedural due process claim, the Court advises him to plead it separately, instead of combining it with his substantive due process claim. The foregoing also applies to Cox's procedural due process claim as alleged against Harris.

*b. Substantive Due Process*

Substantive due process "forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.' " United States v. Salerno, 481 U.S. 739, 746 (1987) (quoted sources and internal quotation marks omitted); Corales v. Bennett, 567 F.3d 554, 568 (9th Cir. 2009). In other words, the substantive protections of the Due Process Clause are intended to prevent government officials "from abusing their power or employing it as an instrument of oppression." Cty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (quoted source and internal punctuation omitted). To state a substantive due process claim, a plaintiff "must plead that the government's action was 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.' " Lebbos v. Judges of Superior Ct., 883 F.2d 810, 818 (9th Cir. 1989) (quoted source omitted).

Here, Cox has alleged that he was arrested and imprisoned on an accusation that was obviously false by deputies who had no interest in the truth, held on excessive bail, and forced to defend 16 felonies with enhancements in a case known to be without merit, while the County Defendants conspired (or at least worked in concert) with Harris to suppress and destroy evidence that would have resulted in his immediate exoneration, in order to railroad him into a life sentence

or, at a minimum, prolong the prosecution. Further, he alleges that the County Defendants imposed "extrajudicial" punishment on him by instigating a search of the Property pursuant to a warranted based on a falsified affidavit, ginning up 101 exaggerated or falsified code violations, and bringing an unjustified receivership case that culminated in the loss of his reputation, livelihood and property.

The County Defendants argue that Cox cannot state a substantive due process claim based on code enforcement activity involving the Property because the County has an "obvious interest in preventing health and safety hazards by enforcing the housing code." Doc. No. 45-1 at 23:6-13. This argument, however, fails to address allegations involving the criminal case (or the alleged nexus between the criminal case and code enforcement action),[6] and in any event, Cox has set forth allegations supporting a reasonable inference that code enforcement action was undertaken "with the purpose to harm [him] for reasons unrelated to legitimate law enforcement objectives." See Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir. 2008).

Further, the Court does not agree with the County Defendants contention that Cox's claim must be analyzed under the Fourth Amendment. In *Albright v. Oliver*, 510 U.S. 266, (1994), a plurality of the Supreme Court established the principle "that no substantive due process right exists under the Fourteenth Amendment to be free from prosecution without probable cause" and "suggested that the plaintiff in that case might have set forth a proper § 1983 claim had he argued that the state's pretrial deprivations of his personal liberty violated the Fourth Amendment."

---

[6] The County Defendants' contention that the Receivership action did not "coincide[] with the County's failed criminal case against Cox" is odd. Doc. No. 45-1 at 23:19-26. The relevant timeline, as alleged in the Complaint, is as follows: February 22, 2016, the County adds five felonies to the criminal complaint against Cox; June 20, 2016, the County finally provides Cox with the forensic download of Cox's phone to Cox's defense counsel, allegedly showing 22 messages between Harris and Cox during the period in which Harris claimed to have been held against her will; August 8, 2016, the Mariposa Superior Court authorizes Cox's defense to issue a subpoena to Verizon that ultimately shows Harris sent and received 166 text messages during the period in which she claimed to have been held against her will; October 14, 2016, Mariposa County executes a civil search warrant to inspect the Property; March 7, 2017, the County provides Cox with a download of Harris's cell phone showing that dozens of text messages involving Cox had been deleted; March 13, 2017, the County brings a motion to place the Property in receivership, based on 101 putative building, health and safety code violations; June 2, 2017, Harris testifies in another case that she had never been a victim of sexual assault or abuse; and August 14, 2017, the County dismisses all criminal charges against Cox on its own motion, while the Receivership action continued. In the Court's view, this timeline leaves little room to argue that code enforcement action with respect to the Property did not coincide with the criminal case against Cox. Further, the Court again notes the County Defendants' contention on this motion that the claims in this case arise from "the same transaction, occurrence, or series of transactions or occurrences" as the Receivership action. Id. at 15:24-16:11.

<u>Awabdy v. City of Adelanto</u>, 368 F.3d 1062, 1069 (9th Cir. 2004) (citations omitted). Cox does not merely allege, however, that he was detained, prosecuted and subjected to searches without probable cause. <u>Cf.</u> <u>Manuel v. City of Joliet, III</u>, 137 S.Ct. 911, 919 (2017) ("If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment.") As set forth above, he alleges that he was investigated and prosecuted based on an obviously false accusation even though the County Defendants knew the criminal charges against him were without merit. He also alleges that the County Defendants fabricated evidence (including, for example, the affidavit on which the October 14, 2016 search warrant was based); conspired (or at least worked in concert with) Harris to suppress and destroy exculpatory evidence; and sought to impose "extrajudicial" punishment on him, for crimes they knew he did not commit, through unwarranted code enforcement action. These allegations go well beyond government action without probable cause and consequently, *Albright* does not bar Cox from bringing a substantive due process claim under the Fourteenth Amendment. <u>Cf.</u> <u>Garnett v. Undercover Officer C0039</u>, 838 F.3d 265, 278 (2d Cir. 2016) (stating that "probable cause, which is a Fourth Amendment concept, should not be used to immunize a police officer who violates an arrestee's non-Fourth Amendment constitutional rights"); <u>Gantt v. City of Los Angeles</u>, 717 F.3d 702, 709 (9th Cir. 2013) (recognizing substantive due process claim involving fabrication of evidence); <u>Awabdy</u>, 368 F.3d at 1069 (recognizing malicious prosecution claim involving the violation of rights under the Fourteenth Amendment and rejecting the notion that "Fourth Amendment violations are the only proper [constitutional] grounds for malicious prosecution claims under § 1983").

The County Defendants' motion to dismiss will therefore be denied as to Cox's substantive due process claim under the Fourteenth Amendment. <u>See</u> <u>Cooper v. Woodford</u>, 2009 WL 256131, at *2 (E.D. Cal. Feb. 4, 2009), report and recommendation adopted, 2009 WL 800184 (E.D. Cal. Mar. 25, 2009) (Ishii, J.) ("[] Plaintiff's allegations that Defendants Morales and Alvarez planted a weapon on him and falsified reports, and Defendant Garza did not give him a fair hearing, all of which ultimately led to an extension of his earliest parole date, are sufficient to state a due process claim.").

**B.  Second Claim: Equal Protection Clause of the Fourteenth Amendment**

Cox alleges that the County Defendants discriminatorily prosecuted him using improper investigatory tactics because he was a heterosexual male accused of sexual assault and that his equal protection rights as a landowner were violated by unwarranted and excessive code enforcement action.

1.  Parties' Arguments

The County Defendants argue that Cox's "conclusory allegations" are insufficient to state an equal protection claim because no inference of an equal protection violation can be drawn from the mere fact that Cox is a man who was arrested for rape. The County Defendants also argue that Cox fails to identify "any specific County policy that allegedly resulted in the violation of his equal protection rights" and that Cox fails to allege facts showing that "the County treated heterosexual men who are accused of rape less favorably than other persons who are similarly accused of rape." Doc. No. 45-1 at 25:6-11. Further, the County Defendants argue that Cox fails to state an equal protection claim in connection with the Property because the mere selective enforcement of laws is not an equal protection violation and "the County has a compelling government interest in enforcing health and safety and building codes." Id. at 25:14-25.

Cox, for his part, argues that he has adequately pled that the County Defendants violated his "equal protection rights [] as a male individual, land owner, and business owner to be free from discriminatory treatment and selective enforcement of the laws." Doc. No. 68 at 29: 5-10. According to Cox, "[t]he Complaint alleges copious facts" showing equal protection violations, including an "admission made by the deputies and the Sheriff, that they acted with the motive of discriminating against [him] solely because he was heterosexual and a man." Id. at 29:19-24. Cox further contends that "the Sheriff's Office and the County, literally, trained the deputies to discriminate against heterosexual men" and the County Defendants "engaged in arbitrary and selective enforcement of the health and safety code laws against [him], singling [him] out for [an] unjust and disproportionate receivership case when such laws are rarely if ever used against similarly situated farmers and property owners in the County." Id. at 29:23-27.

2. <u>Discussion</u>

The Court will first address whether Cox has stated an equal protection claim in connection with the criminal case and then address whether Cox has stated an equal protection claim based solely on government action with respect to code enforcement.

*a. Criminal Case*

The Fourteenth Amendment provides, in part, that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." <u>Green v. City of Tucson</u>, 340 F.3d 891, 896 (9th Cir. 2003) (quoted source and internal quotation marks omitted). The purpose of the Equal Protection Clause is to secure all citizens "against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000).

"To establish a § 1983 equal protection violation, the plaintiff[ ] must show that the defendants, acting under color of state law, discriminated against [him] as [a] member[ ] of an identifiable class and that the discrimination was intentional." <u>Flores v. Morgan Hill Unified Sch. Dist.</u>, 324 F.3d 1130, 1134 (9th Cir. 2003) (citations omitted); <u>Joyce v. City & Cty. of San Francisco</u>, 846 F. Supp. 843, 858 (N.D. Cal. 1994) (citing <u>Personnel Administrator of Mass. v. Feeney</u>, 442 U.S. 256, 271–72 (1979)) ("Predicate to an equal protection clause violation is a finding of governmental action undertaken with an intent to discriminate against a particular individual or class of individuals.").

As set forth by the Supreme Court:

> "Discriminatory purpose" ... implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker ... selected ... a particular course of action at least in part "because of," not merely "in spite of," its adverse effects upon an identifiable group.

<u>Feeney</u>, 442 U.S. at 279 (footnotes and citation omitted); <u>Serrano v. Francis</u>, 345 F.3d 1071, 1082 (9th Cir. 2003) ("Intentional discrimination means that a defendant acted at least in part *because of*

a plaintiff's protected status." (emphasis original) (quoted source and internal quotation marks omitted)); <u>Monteiro v. Tempe Union High Sch. Dist.</u>, 158 F.3d 1022, 1026 (9th Cir. 1998) (The Ninth Circuit has "held that § 1983 claims based on Equal Protection violations must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent.").

As to the criminal case, the Complaint alleges that "Defendants utilized discriminatory classifications, policies, customs, practices, funding, training and procedures with the intent to prosecute a male suspect, Cox, under domestic violence and sexual assault laws using reckless investigatory and prosecutorial standards that would not apply to other classes of crimes." Doc. No. 1 ¶ 163. Further, the Complaint states that "grant funds," "rewards," "incentives" and "special employment" provided to "local officials involved in the enforcement of domestic violence or sexual assault crimes" result in "enforcement efforts … [that] elevate the false accusations of the accuser [], ignore exculpatory evidence and use selective enforcement and prosecution practices that do not apply in other classes of crimes." <u>Id.</u> ¶ 164. Similarly, the Complaint states that Mariposa County has a "specialized domestic violence and sexual assault prosecution unit that … engages in arbitrary and capricious enforcement of sexual assault and domestic violence laws against men, although it does not prosecute other crimes the same way," <u>id.</u> ¶ 166; and that "victim advocate" groups "assert pressure on the County to charge and prosecute men for sexual assault and domestic violence" "based on false statements and a policy of 'must believe women' which encourages false allegations." ¶¶ 167-68.

These allegations, however, have to do with the prosecution of certain "classes of crimes," and while it may be reasonable to infer that the improper tactics alleged in the Complaint would disproportionately—or even exclusively—affect males (given the "classes of crimes" in question), Cox sets forth no facts to support an inference that they were adopted or employed with the intent of discriminating against males, as opposed to protecting victims of domestic violence and sexual assault. <u>See</u> <u>Thornton v. City of St. Helens</u>, 425 F.3d 1158, 1167 (9th Cir. 2005) ("Mere indifference to the effects of a decision on a particular class does not give rise to an equal protection claim."); <u>cf.</u> <u>Hernandez v. New York</u>, 500 U.S. 352, 359–60, (1991) ("A court

addressing this issue must keep in mind the fundamental principle that 'official action will not be held unconstitutional solely because it results in a racially disproportionate impact …. Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.' "); Lee v. City of Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001) ("Discriminatory purpose ... implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." (quoted source and internal quotation marks omitted)). At one point, Cox alleges that that the County "selectively and invidiously enforces [] policies against heterosexual men but not against women or LGBTQ groups," but this conclusory allegation—which is not supported by a single alleged fact—does little more than restate an essential element of Cox's claim.  Moreover, the Court cannot find any indication in the Complaint of the admission supposedly made by "the deputies and the Sheriff," that "they acted with the motive of discriminating" against Cox "solely because he was heterosexual and a man." See Doc. No. 68 at 29:19-24. The Complaint can perhaps be read to allege that overzealous and unlawful enforcement practices are employed in domestic violence and sexual assault cases without due regard for the rights of defendants who are primarily heterosexual males, but the Court cannot infer that such practices were adopted " 'because of,' not merely 'in spite of,' [their] adverse effects upon" males (heterosexual or otherwise). See Feeney, 442 U.S. at 279.

Cox's equal protection claim will therefore be dismissed to the extent it is predicated on the criminal case, with leave to amend consistent with this order and Rule 11. The foregoing also applies to Cox's equal protection claim as alleged against Harris in connection with the criminal case.

### b.  Code Enforcement

The Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Olech, 528 U.S. at 564. For example, in *Village of Willowbrook v. Olech*, the Supreme Court found that the

1  plaintiff had adequately alleged a "class of one" equal protection claim where the defendant

2  village "intentionally demanded a 33–foot easement as a condition of connecting her property to

3  the municipal water supply where [it] required only a 15–foot easement from other similarly

4  situated property owners." Id. at 565.

5         In *Gerhart v. Lake County, Montana*, the Ninth Circuit explained that in order for a

6  property owner to succeed on a class of one claim, the plaintiff "must demonstrate that [the

7  defendant]: (1) intentionally (2) treated [the plaintiff] differently than other similarly situated

8  property owners, (3) without a rational basis." 637 F.3d 1013, 1022 (9th Cir.2011). Although

9  plaintiffs must demonstrate that the defendant's decision to treat the plaintiff differently was

10  intentional, plaintiffs "need not show that [the defendants] were motivated by subjective ill will."

11  Id. (citations omitted).

12        "The class-of-one doctrine does not apply to forms of state action that by their nature

13  involve discretionary decisionmaking based on a vast array of subjective, individualized

14  assessments," unless the plaintiff can show a "pattern of generally exercising the discretion in a

15  particular manner while treating one individual differently *and* detrimentally." Contasti v. City of

16  Solana Beach, 644 F. App'x 743, 744 (9th Cir. 2016) (emphasis original) (citation and internal

17  punctuation omitted); see also Towery v. Brewer, 672 F.3d 650, 661 (9th Cir. 2012) ("At the very

18  least, there must be some respect in which the discretion is being exercised so that the complaining

19  individual is being treated less favorably than others generally are.").

20        As noted above, Cox argues that the County Defendants "engaged in arbitrary and

21  selective enforcement of the health and safety code laws against [him], singling [him] out for [an]

22  unjust and disproportionate receivership case when such laws are rarely if ever used against

23  similarly situated farmers and property owners in the County." Doc. No. 68 at 29:23-27. The

24  County Defendants contend that Cox fails to state an equal protection claim with respect to code

25  enforcement because ""[s]elective enforcement of valid laws, without more, does not make the

26  defendants' actions irrational." Doc. No. 45-1 at 25:14-25.

27        The County Defendants' argument, however, presupposes that the County Defendants'

28  actions with respect to code enforcement authentically involved the "enforcement of valid laws."

The Court agrees with the County Defendants that selective enforcement alone is insufficient to state an equal protection claim, see Novotny v. Tripp Cty., S.D., 664 F.3d 1173, 1179 (8th Cir. 2011) (finding that "the enforcement of county weed ordinances" did not give rise to an equal protection claim), but the Complaint also alleges that scores of determinations as to code compliance were deliberately fallacious and that those deliberately fallacious determinations led not only to confiscation of the Property, but also to Cox's financial and reputational ruin. In the Court's view, these code compliance determinations are properly considered non-discretionary in that they involved applying settled standards to the Property, cf. Olech, 528 U.S. at 564–65 (finding equal protection violation where village required 15–foot easements of property owners seeking access to water supply but conditioned plaintiff's connection on a grant of a 33–foot easement), but at a minimum, they show a "pattern of generally exercising [] discretion in a particular manner while treating one individual differently and detrimentally."[7] Contasti, 644 F. App'x at 744.

The County Defendants' motion to dismiss will therefore be denied to the extent Cox's equal protection claim arises from code enforcement.

**C. Third Claim: Fourth Amendment**

Cox alleges that various actions relating to both the criminal case and Receivership action—including searches of the Property, as well as the prosecution of the Receivership action and his arrest, detention and prosecution on criminal charges—were taken without probable cause in violation of his rights under the Fourth Amendment.

1. Parties' Arguments

The County Defendants contend that, with respect to the criminal case, the proper defendant for Cox's Section 1983 claim for alleged violations of his Fourth Amendment rights "would be the District Attorney, who is not a party to this action" and that Cox's Fourth

---

[7] A putative "class-of-one" plaintiff must plead facts identifying similarly situated individuals in order to demonstrate disparate treatment. Long v. Cty. of Fresno, 2014 WL 3689694, at *5 (E.D. Cal. July 24, 2014). The Court finds Cox's allegation that other Mariposa County property owners are not subject to similar treatment to be sufficient because it is plausible (given the timing, scale and consequences of the code enforcement action in question), and Cox could not reasonably be expected to have additional facts at this stage in these proceedings. Moreover, the County Defendants do not take issue with this aspect of Cox's claim in their briefing.

Amendment claim against Atkinson and Smith are time-barred because they arise from actions that took place in 2015. The County Defendants further argue that Cox lacks standing to bring a Fourth Amendment claim in connection with code enforcement actions because the Property was owned by JDC and that, regardless, the claim must be dismissed because the search was conducted with a warrant.

Cox contends he has stated a Fourth Amendment claim based on allegations as to "arrests without probable cause, unlawful detentions, warrants based on falsified evidence, the unlawful and overly broad searches and seizures from the criminal case and then the Receivership case which continued well into 2019, destruction of [his] property pursuant to seizures and occupation of his property, and other unlawful acts …." Doc. No. 68 at 30:5-11. Further Cox argues that the fact that searches were conducted with warrants is irrelevant because he has "clearly and properly alleged that those warrants were defective, overly broad, based on falsified evidence, and devoid of probable cause in fact." Id. at 30:11-16.

2. Discussion

As set forth above, the County Defendants have failed to address the accrual dates of Cox's Section 1983 claims and thus the Court cannot find on this motion that they are time-barred. See, e.g. McDonough, 139 S. Ct. at 2156-57 (finding that a Section 1983 claim arising from the use of fabricated evidence in criminal proceedings did not accrue until the termination of those proceedings in favor of the criminal defendant). Further, the Court finds the County Defendants' contention that the Mariposa County district attorney is the "proper defendant" on this claim to be without merit, since claims implicating the Fourth Amendment can be brought against state actors other than prosecuting attorneys. See, e.g., Awabdy, 368 F.3d at 1065. The fact that searches may have been conducted pursuant to warrants does not bar any aspect of Cox's claim because Cox is entitled to rebut *prima facie* showings of probable cause by showing, as he has alleged, that warrants were "induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith." See id. at 1067. And it is not necessary to consider the County Defendants' standing argument since the Court will grant leave to amend the Complaint to join JDC as a plaintiff with respect to claims arising from the Property. Moreover, although the County

1 Defendants do not address this issue, Cox's allegations appear to implicate his personal rights

2 under the Fourth Amendment.

3       The County Defendants' motion to dismiss will therefore be denied as to Cox's Fourth

4 Amendment claim.

5       **D.  Fourth Claim: Takings Clause of the Fifth Amendment**

6       The Fifth Amendment provides, in relevant part, that "[n]o person shall be … deprived

7 of life, liberty, or property, without due process of law; nor shall private property be taken for

8 public use, without just compensation." U.S. Const., amend. V.

9       Cox alleges that the County and Receiver effected a taking by using the "health and safety

10 code case … to restrict and regulate [the Property] beyond the legitimate purpose of the law." Doc.

11 No. 1 ¶ 198. Further, he alleges that the County and Receiver "brought and maintained a bad faith

12 criminal and receivership action to deprive [him] of [his] residence, property and business" and

13 "used the receivership and taking of [the Property] for their use, enjoyment and ultimate financial

14 benefit without due process or just compensation." Id. ¶ 199.

15       The County Defendants contend that Cox does not have standing to assert a takings claim

16 because he did not hold legal title to the Property at the time the alleged taking occurred. Further,

17 the County Defendants contend that the "Takings Clause is not applicable" where "government

18 seizes property in the exercise of its police powers." Doc. No. 45-1 at 28:27-28. Finally, the

19 County Defendants contend that the claim must be dismissed as to the County because the County

20 did not "seek" or "order" the sale of the Property, which occurred pursuant to an order of the

21 Mariposa Superior Court on a motion brought by the Receiver.

22       This claim does not fail for lack of standing because Cox will be granted leave to join JDC

23 as a plaintiff to cure whatever defect there may be in prudential standing. The Court agrees with

24 the County Defendants, however, that Cox has failed to allege conduct attributable to the County

25 that could be construed as a taking under the Fifth Amendment. According to the Complaint, it

26 was the court-appointed Receiver that controlled, misused and ultimately sold the Property under

27 the supervision of the Mariposa Superior Court. The Court has already found that it does not have

28 jurisdiction over claims against the Receiver arising from the Receivership, see Doc. No. 42, and

Cox has made no showing as to how the County could be liable under Section 1983 for the acts of the Mariposa Superior Court and the Receiver.[8] Cox alleges that the County entered the Property to perform the code enforcement search prior to the commencement of the Receivership action, but even if such entry were unlawful, it would not implicate the unlawful appropriation of property rights.[9] See Cedar Point Nursery v. Hassid, 141 S. Ct. 2063, 2078-80 (2021) (noting the "distinction between trespass and takings").

In sum, the search conducted by the County cannot be construed as a taking and, even assuming redress is somehow available for a taking allegedly effected by a court, the Court sees no basis for imputing liability for the conduct of the Mariposa Superior Court and the Receiver to the County. These pleading defects cannot be cured, and this cause of action will therefore be dismissed with prejudice. See Willden, 678 F.3d at 1005.

### E. Tenth Claim: RICO

Cox brings a claim under 18 U.S.C. § 1962(b), (c) and (d) against the County and the Receiver, alleging that they "derived income and are seeking to derive income directly or indirectly from a pattern of racketeering or the collection of an unlawful debt by forcing the sale of [the] Property to satisfy their $700,000.00 plus bill for services they never performed in a receivership set up under false allegations of code violations that did not exist." Doc. No. 1 ¶ 251. According to the Complaint, the Receiver and "one or more persons at County operated [the Receivership] through a pattern of racketeering activities" that included, *inter alia*, obstruction of justice involving false code violations, witness tampering and obstruction of criminal

---

[8] Nor, for that matter, has Cox addressed the extent to which recourse exists for a taking allegedly effected by a state court or what form such a cause of action would take. See Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot., 560 U.S. 702, 714 (2010) ("Our precedents provide no support for the proposition that takings effected by the judicial branch are entitled to special treatment, and in fact suggest the contrary."); Eliahu v. Israel, 2015 WL 981517, at *5 (N.D. Cal. Mar. 3, 2015), aff'd sub nom. Eliahu v. State of Israel, 659 F. App'x 451 (9th Cir. 2016) ("The contours and viability of the theory of so-called 'judicial takings'—where a court decision may be deemed to have effectively taken property rights from an individual—are unclear even in the courts of this country.")

[9] The Court does not share the County Defendants' view that there was no taking simply because the actions in question here were styled as an exercise of police powers in connection with then enforcement of health, safety and building codes. It is true that "government health and safety inspection regimes will generally not constitute takings" and that "government searches that are consistent with the Fourth Amendment and state law cannot be said to take any property right from landowners," Hassid, 141 S. Ct. at 2079, but Cox has expressly alleged that the searches at issue in this case took place without probable cause and were otherwise unlawful.

1   investigations. Id. ¶ 252.

2          1.   Parties' Arguments

3          The County Defendants argue that the claim must be dismissed with prejudice because, as

4   a matter of law, government entities are incapable of forming the malicious intent necessary to

5   support a RICO action. Cox argues that the Complaint does not assert RICO liability against the

6   County itself but rather against "one or more persons at the County." According to Cox, the

7   County is "joined in the racketeering claims as a 'nominal' party," but the claim is actually

8   directed at individual defendants. Doc. No. 68 at 32:23-28. Cox further argues that, although the

9   County cannot be held directly liable for RICO damages and liability, "that does not preclude the

10  named Sheriff and deputies from asserting cross claims against the County (their employer) for

11  training them or instructing them to single mindedly pursue the judicial or extra judicial

12  destruction of [] Cox, his life savings, his reputation, and his ability to recover from their

13  vindictiveness." Id. at 33:10-14.

14         2.   Applicable Law

15         The RICO Act, passed in 1970 as Title IX of the Organized Crime Control Act, provides

16  for both criminal and civil liability. See 18 U.S.C. §§ 1961-1968. RICO outlaws four types of

17  activities: (i) Section 1962(a) prohibits a person from investing in an enterprise any income

18  derived from a pattern of racketeering activity; (2) Section 1962(b) prohibits a person from using

19  a pattern of racketeering activity to acquire or maintain any interest in or control over an

20  enterprise; (3) Section 1962(c) prohibits a person from conducting or participating in the affairs

21  of an enterprise through a pattern of racketeering; and (4) Section 1962(d) prohibits a person

22  from conspiring to violate §§ 1962(a), (b), or (c). See 18 U.S.C. §§ 1962. Plaintiff purports to

23  state claims under Sections 1962(b), (c) and (d).

24         "In order to state a claim under § 1962(b), a plaintiff must allege that '(1) the defendant's

25  activity led to its control or acquisition over a RICO enterprise, and (2) an injury to plaintiff

26  resulting from defendant's control or acquisition of an RICO enterprise.' " Wagh v. Metris

27  Direct, Inc., 363 F.3d 821, 830 (9th Cir. 2003) (citation omitted), overruled on other grounds by

28  Odom v. Microsoft Corp., 486 F.3d 541, 551 (9th Cir. 2007) (en banc); see also Nat'l Org. for

Women, Inc. v. Scheidler, 510 U.S. 249, 259 (1994) ("The 'enterprise' referred to in [Section 1962(b) ] is thus something acquired through the use of illegal activities or by money obtained from illegal activities."). To state a RICO claim under § 1962(c), a plaintiff must allege that defendants engaged in: (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity. See Sigmond v. Brown, 828 F.2d 8, 8 (9th Cir. 1987). "Though sections 1962(b) and (c) have some distinct elements, the touchstone of both is that each individual defendant must be shown to have personally participated in a pattern of racketeering activity." Zazzali v. Ellison, 973 F. Supp. 2d 1187, 1200 (D. Idaho 2013) ("In order to state a claim for a substantive RICO violation under either 18 U.S.C. § 1962(b) or (c), a plaintiff must plead the following elements: 1) conduct 2) of an enterprise 3) through a pattern 4) of racketeering activity.").

Finally, to state a claim for a violation of § 1962(d), a plaintiff must allege "either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." Howard v. America Online, Inc., 208 F.3d 741, 751 (9th Cir. 2000). The acts that serve as predicate offenses are listed in the statute. 18 U.S.C. § 1961(1). "It is the mere agreement to violate RICO that § 1962(d) forbids; it is not necessary to prove any substantive RICO violations ever occurred as a result of the conspiracy." Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n, 298 F.3d 768, 774-75 (9th Cir. 2002). "Although a civil RICO conspiracy claim can survive even if the substantive RICO claim does not, where the plaintiff has failed to allege the requisite substantive elements of RICO, a RICO conspiracy claim cannot stand." Ochoa v. Hous. Auth. of City Los Angeles, 47 Fed. Appx. 484, 487 (9th Cir. 2002) ("Because we affirm the district court's dismissal of Appellants' substantive RICO claims for failure to state a claim, we also affirm the district court's dismissal of Appellants' RICO conspiracy claims.").

### 3. Discussion

The Court agrees with the County Defendants that the case cited by Cox does not justify naming the County as a "nominal" defendant on a RICO claim. As the County Defendants point out, *United States v. District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America* merely holds that an individual can be named as a defendant

on a RICO claim for purposes of effecting full relief. 778 F. Supp. 738, 752 n.7 (S.D.N.Y. 1991). It does not address the question of naming a government entity as a RICO defendant in a "nominal" capacity or otherwise.

Moreover, the Complaint cannot be read to state a claim against "one or more persons at the County" because Cox makes no attempt to allege who, at the County, "personally participated in a pattern of racketeering activity." See Zazzali, 973 F. Supp. 2d at 1200. Similarly, the Complaint alleges that the Receivership was the RICO enterprise, Doc. No. 1 ¶¶ 251 ("one or more persons at County operated the subject receivership through a pattern of racketeering activities"), but the Court sees no allegation that any County personnel acquired an interest in or control of the Receivership, as required for a claim under § 1692(b), or that any County personnel played a role in operating the Receivership, as required for a claim under § 1692(c). Cox alleges in conclusory fashion that Adams, CRG and "one or more persons at County" forced the sale of the Property to "satisfy [the] $700,000 plus bill" for the Receivership, id. ¶ 251, but the factual allegations regarding Atkinson and Smith (the only County personnel named as defendants in this case) involve actions with respect to code enforcement and the criminal case that took place outside the scope of the Receivership and before the Receivership was created. Finally, there is no factual allegation—plausible or otherwise—as to an agreement involving "one or more persons at the County" to engage in two or more predicate RICO offenses, as required to state a claim under § 1692(d).

In sum, the Court agrees with the County Defendants that Cox cannot state a RICO claim directly against the County, as he purports to do in the Complaint. See Pedrina v. Chun, 97 F.3d 1296, 1300 (9th Cir. 1996) (summarily rejecting RICO claims against a city based on holding that government entities are incapable of forming the malicious intent necessary to support a RICO action). Further, Cox has failed to make out a claim against either of the individual defendants in this case. The Court will therefore dismiss Cox's RICO claim with prejudice as to the County, while granting Cox leave to amend as to Atkinson and Smith, to the extent he can do so consistent with this order and Rule 11.

**F.  Eleventh Claim: Conspiracy**

The County Defendants contend that this claim must be dismissed because Cox has failed to make a showing that the alleged conspirators acted out of "class based discriminatory *animus*" as required to state a conspiracy claim under 42 U.S.C. § 1985(3). Cox argues that he has adequately alleged the discriminatory animus required for conspiracy to violate his equal protection rights under Section 1985(3) and that he has also adequately alleged conspiracy to violate constitutional rights under Section 1983.

### 1. Applicable Law

42 U.S.C. § 1985(3) prohibits conspiring, *inter alia*, "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). To state a claim for conspiracy under Section 1985(3), "a plaintiff must show, *inter alia*, (1) that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action,' ... and (2) that the conspiracy 'aimed at interfering with rights' that are 'protected against private, as well as official, encroachment.' " Butler v. Elle, 281 F.3d 1014, 1028 (9th Cir. 2002) (quoting Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 267–68 (1993) (some internal quotation marks omitted).

### 2. Discussion

For the reasons set forth above in the discussion of Cox's equal protection claim, the Court agrees with the County Defendants that (even assuming Section 1985(3) extends to classes based on gender or sexual orientation)[10] Cox has failed to allege the class-based animus required for a Section 1983(5) claim. Further, district courts consistently find that a "class of one" theory does not provide a sufficient basis for a Section 1985(3) claim. See, e.g., Bennett v. Cty. of Shasta, 2016 WL 3743151, at *9 (E.D. Cal. July 13, 2016) ("Membership in a 'class of one' is plainly insufficient to entitle Plaintiff to relief under § 198[5](3)."); Mancini v. City of Cloverdale Police Dep't, 2015 WL 4934503, at *4 (N.D. Cal. Aug. 18, 2015); Cobb v. Adams, 2014 WL 2212162, at

---

[10] The Ninth Circuit has recognized that Supreme Court jurisprudence requires "lower courts to exercise restraint in extending [Section] 1985(3) beyond racial prejudice," Butler, 281 F.3d at 1028 (citation omitted); see also Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992).

*5 (N.D. Cal. May 28, 2014); Kolstad v. Cty. of Amador, 2013 WL 6065315, at *9 n.6 (E.D. Cal. Nov. 14, 2013) ("To this court's knowledge, no court has yet to hold that a class of one may constitute a protected class for purposes of alleging a § 1985(3) claim."). Thus, the County Defendants' motion will be granted as to Section 1985(3), with leave to amend consistent with this order and Rule 11 to the extent Cox amends his underlying equal protection claim to show class-based animus.

The County Defendants do not, however, squarely address Cox's contention that he has stated a conspiracy claim under Section 1983.[11] Thus, to the extent the County Defendant's motion seeks dismissal of conspiracy claims under Section 1983, it will be denied. The foregoing also applies to Cox's conspiracy claim as alleged against Harris.

## G. Fourteenth Claim: *Monell*

Liability against a government entity starts from the premise that there is no *respondeat superior* liability under 42 U.S.C. § 1983, *i.e.*, no entity is liable simply because it employs a person who has violated a plaintiff's rights. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Local governments can be sued directly under Section 1983 only if the public entity maintains a policy or custom that results in a violation of plaintiff's constitutional rights. Monell, 436 U.S. at 690–91.

To impose *Monell* entity liability under Section 1983 for a violation of constitutional rights, a plaintiff must show that (1) the plaintiff possessed a constitutional right and was deprived of that right, (2) the municipality had a policy, (3) the policy amounts to deliberate indifference to the plaintiff's constitutional rights, and (4) the policy was the moving force behind the constitutional violation. Plumeau v. Sch. Dist. # 40 Cty. of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997).

The Ninth Circuit has explained how the existence of a policy or custom may be established:

There are three ways to show a policy or custom of a municipality: (1) by showing

---

[11] The elements of a cause of action for conspiracy under Section 1983 are: (1) the existence of an express or implied agreement to deprive a plaintiff of constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement. Ting v. United States, 927 F.2d 1504, 1512 (9th Cir. 1991).

1
2
3

"a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate."

4   Menotti v. City of Seattle, 409 F.3d 1113, 1147 (9th Cir. 2005) (quoting Ulrich v. City and Cty. of

5   San Francisco, 308 F.3d 968, 984–85 (9th Cir. 2002)); accord, e.g., Parker v. City of Pittsburg,

6   2017 WL 2986225, at *5 (N.D. Cal. July 13, 2017) (applying standard on a motion to dismiss). In

7   short, "[o]fficial municipal policy includes the decisions of a government's lawmakers, the acts of

8   its policymaking officials, and practices so persistent and widespread as to practically have the

9   force of law." Connick v. Thompson, 563 U.S. 51, 61 (2011).

10          The County Defendants contend that Cox has failed to state a *Monell* claim because he has

11   "made no attempt to specify the County policy, custom, or practice that allegedly resulted in the

12   violation of [Cox's] constitutional rights." Doc. No. 97 at 32:7-10. The Complaint, however,

13   alleges that:

14   • the County prosecuted the failed criminal case against Cox "following [] policies,

15       practices and protocols that assume that all men accused of domestic violence or

16       sexual assault are guilty," Doc. No. 1 ¶ 5;

17   • the "County's domestic violence/sexual assault vertical prosecution unit and

18       [Mariposa County Sheriff] personnel" take a " 'must believe the victim' at all cost

19       approach when it comes to investigating and prosecuting [domestic

20       violence]/sexual assault crimes against men," id. ¶ 31;

21   • the County enforces "domestic violence and sexual assault laws using reckless

22       investigatory and prosecutorial standards that would not apply to other classes of

23       crimes," id. ¶ 139; and

24   • such practices are "commonplace" in California counties that depend on federal

25       funding under the Violence Against Women Act ("VAWA") and similar programs

26       at the state level. Doc. No. 1 at 3 n.1.

27   Further, Cox states that "[v]arious county officials … were keenly aware that the allegations

28   against Cox had no merit" during the period that the criminal case was pending, Doc. No. 1 ¶ 9,

1  and that the Mariposa County district attorney directed key evidence not be examined by "forensic

2  and laboratory officials." Doc. No. 1 ¶ 17.

3       In sum, Cox alleges that Mariposa County has a policy and practice—in both the district

4  attorney's office and the Sheriff's office—of believing the alleged victim, presuming the guilt of

5  domestic violence and sexual assault suspects, and applying prejudicial investigatory and

6  prosecutorial standards in domestic violence and sexual assault cases in order to increase

7  convictions and secure funding from certain state and federal sources focused on women's issues.

8  These are not mere boilerplate allegations. They contain sufficient factual content to give the

9  County the notice needed to defend itself effectively, and if taken as true, they plausibly suggest

10  entitlement to relief on Cox's part for violations of his constitutional rights in connection with

11  actions taken by County personnel with respect to code enforcement and the criminal case.

12       The Court therefore finds that Cox has adequately alleged *Monell* liability against

13  Mariposa County in connection with the Section 1983 claims that are not dismissed on this

14  motion. See Solis v. City of Vallejo, 2014 WL 2768847 (E.D. Cal. June 18, 2014) (finding

15  plaintiff had stated a *Monell* claim by alleging "it was the policy, practice and custom of [the

16  county] to violate the Fourth Amendment" by "entering private residences without a warrant and

17  without exigent circumstances; pointing firearms at residents, in their own home, and who were

18  cooperating with officer commands; detaining residents without the requisite cause; and using

19  unreasonable, unjustified, and/or excessive force"). The Court expresses no view here as to

20  whether Cox's allegations are sufficient to state a *Monell* claim against the County in connection

21  with the Section 1983 claims that will be dismissed on this motion and will address such

22  questions, to the extent necessary, if Cox amends the Complaint.

23  **VI.**    **QUALIFIED IMMUNITY**

24       The doctrine of qualified immunity shields government officials performing discretionary

25  functions from liability for damages "insofar as their conduct does not violate clearly established

26  statutory or constitutional rights of which a reasonable person would have known." Dunn v.

27  Castro, 621 F.3d 1196, 1198–99 (9th Cir. 2010) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818,

28  (1982) (internal quotation marks omitted)). "Qualified immunity gives government officials

1  breathing room to make reasonable but mistaken judgments and protects all but the plainly
2  incompetent or those who knowingly violate the law." Stanton v. Sims, 571 U.S. 3, 6 (2013)
3  (quoted source and internal quotation marks omitted).

4          Under the test set forth by the Supreme Court in *Saucier v. Katz*, courts look to two distinct
5  questions in analyzing whether a government official is entitled to qualified immunity. Dunn, 621
6  F.3d at 1199; see Saucier v. Katz, 533 U.S. 194, 197 (2001). First, the court determines whether
7  the facts alleged, construed in the light most favorable to the injured party, establish the violation
8  of a constitutional right. Dunn, 621 F.3d at 1199 (citing Saucier, 533 U.S. at 201). Second, the
9  court decides whether the right is clearly established such that a reasonable government official
10  would have known that "his conduct was unlawful in the situation he confronted." Id. (citing
11  Saucier, 533 at 202). A government official violates clearly established law when, "at the time of
12  the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable
13  official would [have understood] that what he is doing violates that right.' " Ashcroft v. al-Kidd,
14  563 U.S. 731, 741 (2011) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). The
15  Supreme Court has instructed that courts are "permitted to exercise their sound discretion in
16  deciding which of the two prongs of the qualified immunity analysis should be addressed first in
17  light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236
18  (2009).

19          The County Defendants argue under the first prong of the *Saucier* framework that
20  Atkinson and Smith are entitled to qualified immunity because they had probable cause to arrest
21  Cox on November 13, 2015 based solely on Harris's allegations; the November 14, 2015 search of
22  the Property was conducted pursuant to a judge-issued warrant; and the Mariposa County district
23  attorney found probable cause to charge Cox with rape on November 16, 2015. According to the
24  County Defendants, whether the district attorney discovered exculpatory evidence two years later,
25  has "no bearing" on the probable cause determination made by Atkinson and Smith in 2015.

26          This argument, however, fails to address alleged wrongdoing on the part of the Deputy
27  Defendants with respect to the falsification, destruction and suppression of evidence, and in any
28  event, the Court is not prepared to find at this juncture that the Deputy Defendants acted with

probable cause in arresting Cox or searching the Property. The Complaint alleges that Harris was obviously intoxicated (and wearing makeup intended to look like a bruise) at the time she made her accusations against Cox; that the CHP officer who interviewed Harris did not believe she was telling the truth; and that Harris's claim that she had been held captive by Cox was decisively contradicted by cell phone records readily available to the Deputy Defendants prior to Cox's arrest. Similarly, the Complaint alleges that the Deputy Defendants ignored eyewitness testimony that contradicted Harris's claims; that Atkinson falsified evidence to secure the warrant for the November 14, 2015 search; and that Atkinson failed to take account of evidence generated from that search showing that the cabin to which Harris claimed to have been confined had a functional landline telephone and doors and windows that unlocked from the inside. The fact that a warrant was issued prior to the November 14, 2015 search may constitute a *prima facie* showing of probable cause for the November 14, 2015 search, but Cox is entitled to rebut that showing (particularly in light of his allegation that the warrant was based on false information furnished by Atkinson) and, regardless, it does not speak directly to the question of whether there was probable cause for the arrest. Cf. Awabdy, 368 F.3d at 1067. The fact that the district attorney decided to file charges similarly does not settle the question of whether there was probable cause for actions taken prior to that point by the Deputy Defendants.

In short, as set forth above in the Court's analysis of Cox's claims under the Fourth and Fourteenth Amendments, Cox has adequately alleged that the Deputy Defendants were involved in violations of his constitutional rights. The County Defendants have not shown that the rights in question were not of the sort known to reasonable law enforcement officers, and the Court therefore cannot find on this motion that either Atkinson or Smith is entitled to qualified immunity on Cox's Section 1983 claims.

## STATE LAW CLAIMS

Cox brings six state tort claims in this action including claims for slander of title, breach of fiduciary duty, intentional interference with prospective economic advantage, conversion, negligence, and negligent hiring, training and supervision. In addition, Cox brings a claim for unlawful, unfair and fraudulent business acts and practices in violation of Section 17200, et seq. of

the California Business & Professions Code.

The County Defendants argue Cox has failed to allege facts showing a right to relief under any of these theories, in addition to arguing that claims are barred by statutes of limitations and failure to comply with requirements under California's Government Claims Act. The Court will start with argument relating to the Government Claims Act and address the County Defendants' other arguments to the extent necessary.

# I.   CALIFORNIA GOVERNMENT CLAIMS ACT

## A.  Applicable Law

Suits for money or damages filed against a public entity are regulated by statutes contained in division 3.6 of the California Government Code (§ 810 et seq.), commonly referred to as the Government Claims Act. DiCampli-Mintz v. Cty. of Santa Clara, 55 Cal. 4th 983, 989 (2012). Broadly, the intent of the Government Claims Act is "not to expand the rights of plaintiffs against government entities" but rather "to confine potential governmental liability to rigidly delineated circumstances." Id. at 991 (quoted source and internal quotation marks omitted).

The Government Claims Act imposes certain procedural requirements that a party must comply with before filing an action in court. See City of Stockton v. Superior Court, 42 Cal. 4th 730, 737–38 (2007). Section 945.4 of the Government Code requires the filing of a claim that meets the requirements of Section 910 as a prerequisite to an action in tort against a state agency. Blair v. Superior Ct., 218 Cal. App. 3d 221, 223 (1990). Section 905, similarly, requires presentation of "all claims for money or damages[12] against local public entities,"[13] subject to enumerated exceptions not relevant here, Cal. Gov. Code § 905; and Section 910 provides that claims presented under the Government Claims Act "shall show," *inter alia*, "[t]he date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted"; "[a] general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may

---

[12] The term "money or damages" is not defined in the Government Claims Act, but "it is comprehensive in scope and includes tort claims arising out of negligence, nuisance, breach of statutory duties, and intentional wrongs." Loehr v. Ventura Cty. Cmty. Coll. Dist., 147 Cal. App. 3d 1071, 1079 (1983) (citations omitted).

[13] " 'Local public entity' includes a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the State ...." Cal. Gov. Code § 900.4.

be known at the time of presentation of the claim"; and "[t]he name or names of the public

employee or employees causing the injury, damage, or loss, if known." Cal. Gov. Code § 910.

"Although a claim need not conform to pleading standards, the facts constituting the

causes of action pleaded in the complaint must substantially correspond with the circumstances

described in the claims as the basis of the plaintiff's injury." Loehr, 147 Cal. App. 3d at 1082–83

(1983) (citations omitted). "Where there has been an attempt to comply but the compliance is

defective, the test of substantial compliance controls." Id. "Under this test, the court must ask

whether sufficient information is disclosed on the face of the filed claim 'to reasonably enable the

public entity to make an adequate investigation of the merits of the claim and to settle it without

the expense of a lawsuit.' " Id. (quoting City of San Jose v. Superior Court, 12 Cal. 3d 447, 456

(1974)). "The doctrine of substantial compliance, however, cannot cure total omission of an

essential element from the claim or remedy a plaintiff's failure to comply meaningfully with the

statute." Id. (citations omitted).

As to timing of claim presentation, Section 911.2 provides, in pertinent part, as follows:

> (a) A claim relating to a cause of action for death or for injury to person or to
> personal property or growing crops shall be presented as provided in Article
> 2 (commencing with Section 915) not later than six months after the accrual
> of the cause of action. A claim relating to any other cause of action shall be
> presented as provided in Article 2 (commencing with Section 915) not later
> than one year after the accrual of the cause of action.

Cal. Gov. Code § 911.2.

"The filing of a claim is a condition precedent to the maintenance of any cause of action

against the public entity and is therefore an element that a plaintiff is required to prove in order to

prevail." Del Real v. City of Riverside, 95 Cal. App. 4th 761, 767 (2002); see also Karim-Panahi

v. L.A. Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988) (indicating that compliance with the claim

presentation requirement must be affirmatively alleged in federal court), and the claim

presentation requirement must be satisfied even if the public entity has actual knowledge of facts

that might support a claim. City of Stockton, 42 Cal.4th at 738.

The County Defendants contend that Cox's state law claims are barred because the notice

of claims he provided to the County was substantively deficient and untimely under the

Government Claims Act.

**B.  Claims Filed by Cox with the County[14]**

On June 6, 2016, Cox filed a "Claim for Personal Injury and/or Property Damage" with the Mariposa County Board of Supervisors on a claim form furnished by Mariposa County. Doc. No. 30 at 9. The claim identifies Cox as the claimant and provides an address for him. It further indicates, by checking one of the boxes and filling in blanks provided, that the claim was based on "Personal Injury" that occurred on December 7, 2015 in the vicinity of the "Mariposa County Sheriff's Dept." Id. The "facts and circumstances that [gave] rise to the claim" are described as follows:

> 12/07 – The violation of 2[]d Amendment Rights
> 01/05/16 -The violation of 4th Amendment Rights
> 01/05/16 – The violation of 8th Amendment Rights

The notice further states that the "public employee(s)" who caused Cox's "injuries or damages" were "Mariposa County District Attorneys Office Thomas Cooke and Regina Flore[]." The form also states that the "injuries sustained by [Cox], as far as known, as of the date of presentation of th[e] claim" consisted of: "The loss of Economic Enterprise as CEO & President of Bison Creek Ranch." Id. at 10. The form is signed and dated and states that the damages incurred as of the submission date and projected damages were $0. Id. at 10. On June 6, 2016, the Mariposa County Board of Supervisors provided Cox with a copy of the claim, as proof that it had been filed. Id. at 11.

On June 7, 2016, Cox filed a single sheet of paper with the Mariposa County Board of Supervisors, with no header, footer or signature block, that read in its entirety as follows:

> All private registered Guns were in Mariposa sheriff departments custody 1/7/15
> Final unreasonable searches and seizures exercised upon private property and

---

[14] The County Defendants seek judicial notice for various records relating to proceedings in Mariposa Superior Court and for a claim form Cox filed with Mariposa County on June 17, 2019. Doc. Nos. 46, 99. The Court takes judicial notice of the June 17, 2019 claim form, Doc. No. 99-6, the authenticity of which Cox does not dispute. See Cal. Evid. Code § 452, subd. (h). The County Defendants' requests for judicial notice are otherwise denied on the grounds that the Court did not make use of the documents in question in deciding this motion. See Neylon v. County of Inyo, 2016 WL 6834097, at *4 (E.D. Cal. Nov. 21, 2016) (Ishii, J.). The request for judicial notice Cox filed in connection with this motion will be denied on the same grounds. See Doc. No. 72. The Court, however, does take judicial notice of the claim forms Cox filed with the County on June 6-7, 2016 (the authenticity of which the County Defendants do not dispute) as placed on the record through Cox's December 9, 2019 request for judicial notice in connection with another motion. Doc. No. 30 at 6-11; see Cal. Evid. Code § 452, subd. (h) .

people 1/05/2016
6 excessive fines/felony charges were added. Cruel and unusual punishment
exposed 1/05/2016

The Board of Supervisors provided Cox with a letter confirming receipt and characterizing the submission as "[a]dditional information provided for" the June 6, 2016 claim.

Finally, on June 17, 2019, a "Claim for Personal Injury and/or Property Damage" was filed with the Mariposa County Board of Supervisors on behalf of Cox and JDC on a form provided by the Mariposa County Board of Supervisors (the "June 17, 2019 Claim"). Doc. No. 30 at 12. The states that there was "Property Damage" in the amount of "$25k or greater" in the vicinity of "6011 CYA Rd Mariposa CA" on July 17, 2018. The "facts and circumstances that [gave] rise to the claim" are described as: "Request special investigation of alleged 101 health and safety code violations in order to repair or abate." The names of the "public employee(s)" causing the "injuries or damages" in question are provided as: "Mariposa County Building Dept, Planning Dept, Health Dept." Id. at 12. The section seeking information regarding "injuries sustained by claimant" reads as follows: "Additional: 610[8] Mosher property vandalized by Court Appointed Receiver Mark Adams Request Special Investigation." Id. at 13. The damages claimed included "$250k+" for loss of earnings, $750 for "Front Door," $500 for "Porch Railings," $700k for "False Health Code Violations – Sale of Property," for a total in excess of "725k." Id. at 13. The Mariposa County Board of Supervisors provided Cox with a copy of the claim as proof that it had been filed. Id. at 14.

The Court sees no other records on the docket relating to claims presentation under the Government Claims Act.

**C. Discussion**

Reading the June 6, 2016 and June 7, 2016 filings as one submission (the "June 2016 Claim"), the first claim Cox presented to the County alleges that "Mariposa County District Attorneys Office Thomas Cooke and Regina Flore[]" violated Cox's Second Amendment Rights on December 7, 2015 and violated his Fourth and Eighth Amendment rights on January 5, 2016, without providing any description of the events or transactions underlying these purported violations. Beyond that, the claim makes some reference to registered guns dated January 7, 2015,

"unreasonable searches and seizures" occurring on January 5, 2016, and an increase in the "fines/felony charges" against Cox on January 5, 2016, supposedly resulting in "[c]ruel and unusual punishment."

The Court is unable to map these allegations to the allegations in the Complaint in any meaningful fashion, even under the most liberal conceivable reading. No member of the Mariposa County District Attorney's Office is named as a defendant in this action, and there is no reference of any kind in the claim to Atkinson, Smith or the Mariposa County Sheriff's Office. The claim consists largely of legal conclusions as to rights violations, is almost completely devoid of facts, and the dates in the claim do not even loosely line up with the dates in the Complaint. "Unreasonable searches and seizures" are an issue in this case, but the June 2016 Claim was filed four months *before* the code enforcement search allegedly took place (in October 14, 2016) and the search conducted in connection with Cox's arrest allegedly took place on November 14, 2015—two months prior to the date stated in the claim. Further, there is no indication in the Complaint that the district attorney's office was involved in the November 14, 2015 search. The least inscrutable portion of the claim is the portion that states "6 excessive fines/felony charges were added. Cruel and unusual punishment exposed 1/05/2016," because according to the Complaint, Cooke and deputy district attorney Regina Florick added several felonies to the criminal complaint against Cox on February 22, 2016. As noted above, however, neither Cooke nor Florick is a defendant in this action and it is impossible to glean from the June 2016 Claim what role, if any, Atkinson or Smith had in increasing the felonies or otherwise subjecting Cox to cruel and unusual punishment (or what, beyond the increase in felony charges, the cruel and unusual punishment supposedly entailed).

The Court therefore agrees with the County Defendants that the June 2016 Claim does not satisfy the Government Claims Act for any of the claims in this case. See Cal. Gov. Code § 910; Loehr, 147 Cal. App. 3d at 1082–83 ("the facts constituting the causes of action pleaded in the complaint must substantially correspond with the circumstances described in the claims as the basis of the plaintiff's injury").

The June 17, 2019 Claim, for its part, largely involves conduct on the part of the Receiver,

1  inasmuch as it states a claim for "$25k or greater" in property damage that allegedly took place on

2  July 17, 2018 due to vandalism by "Court Appointed Receiver Mark Adams." All claims against

3  the Receiver, however, have been dismissed from this action. See Doc. No. 42. The June 17, 2019

4  Claim also makes reference to damages arising from "101 health and safety code violations"

5  supposedly found by the "Mariposa County Building Dept, Planning Dept, Health Dept," but the

6  July 17, 2018 occurrence date specified in the claim is nearly two years removed from the October

7  14, 2016 code enforcement inspection at issue here. Thus, the Court finds that the June 17, 2019

8  Claim does not substantively satisfy Government Claims Act requirements as to any of the claims

9  in this case.

10      Turning (for the sake of thoroughness) to questions of timeliness under Section 911.2, the

11  County Defendants argue that any claims arising from the code enforcement actions accrued no

12  later than the date on which the Mariposa County Superior Court appointed the Receiver—July

13  17, 2017—and that consequently, Cox had to file his notice of claims relating to the Property by

14  July 17, 2018 (nearly a year before he actually did so). Similarly, Defendants argue that all claims

15  relating to the criminal case accrued no later than dismissal of the criminal case on August 14,

16  2017 and that consequently, notice of claims relating to the criminal case had to be filed by

17  August 14, 2018 at the latest.

18      Cox argues that notice was timely as to claims arising from the criminal case because he

19  filed the relevant notice—asserting various rights violations—in June 2016 and under Section

20  945.3 of the Government Code, claims relating to the criminal case did not accrue until the

21  criminal case was dismissed on August 14, 2017. Cox's assertion that Section 945.3 delays the

22  accrual of claims (as opposed to merely tolling statues of limitations) is incorrect,[15] but in any

23  event, the Court has found that the June 2016 Claim was substantively insufficient. The Court

24  cannot imagine any scenario in which claims arising from the criminal case could have accrued

25  after August 14, 2017 and thus agrees with the County Defendants that, more than four years later,

26  it is too late for Cox to cure the substantive defects in the June 2016 Claim. Cox's state law claims

27  are therefore barred by the Government Claims Act to the extent they arise from the criminal case.

28
_____

[15] See Cooley v. City of Vallejo, 2014 WL 1883808, at *4 (E.D. Cal. May 12, 2014).

1     Cox further argues that claims relating to code enforcement have not yet accrued because
2   he has alleged that the County Defendants engaged in a conspiracy with the Receiver and
3   conspiracy claims do not accrue "until 'the last over act' pursuant to the conspiracy has been
4   completed." Doc. No. 96 at 14:12-14. On its face, however, this argument applies only to Cox's
5   conspiracy claim and provides no basis for delaying accrual of Cox's other state law claims.[16]
6   Moreover, to the extent Cox's conspiracy claim (whether brought under federal law or state law)
7   implicates conduct involving the Receiver while the Receivership was in place, it is barred here by
8   the *Barton* Doctrine. See Wortley v. Bakst, 2018 WL 9617383, at *4 (S.D. Fla. Aug. 29, 2018)
9   (finding conspiracy claim against defendant who was "neither court-appointed nor court-
10  approved" was barred by the *Barton* Doctrine because it was based on an alleged conspiracy with
11  a bankruptcy trustee); Blixseth v. Brown, 470 B.R. 562, 567 (D. Mont. 2012) (similar).

12    The Court therefore agrees with the County Defendants that any conspiracy claim
13  cognizable by this Court involving the Receiver must have accrued by the time the Mariposa
14  Superior Court appointed the Receiver on July 17, 2017. Cf. In re J.S. II, L.L.C., 389 B.R. 570,
15  584 (Bankr. N.D. Ill. 2008) ("[T]he *Barton* doctrine would be inapplicable for events occurring
16  [prepetition].")). Cox did not present claims regarding code enforcement to the County until nearly
17  two years later on June 17, 2019, and thus his claim presentation was untimely.

18    Since it is no longer possible for Cox to bring himself into compliance with the
19  Government Claims Act, all his state law claims that are plainly for "money and damages"—
20  including his claims for slander of title, breach of fiduciary duty, intentional interference with
21  prospective economic advantage, conversion, conspiracy (to the extent Cox intended to state a
22  conspiracy claim under state law) and negligence—will be dismissed with prejudice. See Loeher,
23  147 Cal. App. at 1079.  Further the Court finds that the bar also extends to Cox's Section 17200
24  claim since Cox prays primarily for monetary (as opposed to injunctive) relief in connection with
25  that claim. See Doc. No. 1 ¶ 247 ("Pursuant to California Business & Professions Code §17203,
26  Plaintiff … seek[s] appropriate equitable monetary relief …."); id. at 69 (seeking "declaratory and

27

28  _____
[16] As stated above, it appears to the Court that Cox's conspiracy claim was brought under federal law, but for this analysis, the Court allows for the possibility that Cox also intended to state a conspiracy claim under state law.

injunctive relief" only as to "future violations of Plaintiff's constitutional rights"); Loeher, 147 Cal. App. at 1081 (applying the Government Claims Act to "causes of action for mandamus and injunctive relief" on finding that "the primary purpose of the[] claims [was] pecuniary in nature"). In light of these findings, it is unnecessary for the Court to address the County Defendants' arguments as to immunities, statutes of limitations and pleading deficiencies with respect to state law claims.

## CONCLUSION

In summary, all claims will be dismissed with prejudice as to Mariposa County. As it pertains to the remaining County Defendants, the motion will be denied with respect to Cox's Section 1983 claims for violation of his Fourth Amendment rights and his substantive due process rights under the Due Process Clause of the Fourteenth Amendment. Further, the motion will be denied as to Cox's Section 1983 claim under the Equal Protection Clause of the Fourteenth Amendment to the extent it is based on a "class of one" theory involving code enforcement. In addition, the motion will be denied as to Cox's conspiracy claim to the extent the conspiracy claim is alleged under Section 1983. The Court will dismiss, with leave to amend, Cox's Section 1983 claim for violation of his procedural due process rights under the Due Process Clause of the Fourteenth Amendment, as well as his Section 1983 claim under the Equal Protection Clause to the extent it is based on unequal treatment due to gender or sexual orientation. The conspiracy claim will also be dismissed, with leave to amend, to the extent it is brought under Section 1985(3). Finally, Cox's Fifth Amendment claim and all of his state law claims will be dismissed with prejudice.

## ORDER

Accordingly, IT IS HEREBY ORDERED that the motion to dismiss brought by the County Defendants (Doc. No. 45) is GRANTED IN PART and DENIED IN PART as follows:

1. All claims are DISMISSED WITH PREJUDICE as to Mariposa County and Mariposa County is hereby TERMINATED as a defendant in this case;

2. The motion is DENIED as to the *Monell* claim (Fourteenth Claim for Relief) and as to Plaintiff's claims under 42 U.S.C. § 1983 for:

     a.   Violation of his substantive due process rights under the Due Process Clause of the Fourteenth Amendment (First Claim for Relief);

     b.   Violation of his rights under the Equal Protection Clause of the Fourteenth Amendment to the extent the claim is based on a "class of one" theory involving code enforcement (Second Claim for Relief);

     c.   Violation of his Fourth Amendment rights (Third Claim for Relief); and

     d.   Conspiracy (Eleventh Claim for Relief);

3. The following claims under 42 U.S.C. § 1983 are DISMISSED WITH LEAVE TO AMEND:

     a.   Violation of Plaintiff's procedural due process rights under the Due Process Clause of the Fourteenth Amendment (First Claim for Relief); and

     b.   Violation of Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment to the extent the claim arises from unequal treatment based on gender or sexual orientation (Second Claim for Relief);

4. The RICO claim (Tenth Claim for Relief) is DISMISSED WITH LEAVE TO AMEND as to the Deputy Defendants only;

5. The conspiracy claim (Eleventh Claim for Relief) is DISMISSED WITH LEAVE TO AMEND to the extent it is brought under 42 U.S.C. § 1985(3);

6. Cox's claim under the Fifth Amendment (Fourth Claim for Relief) is DISMISSED WITH PREJUDICE;

7. All claims under state law are DISMISSED WITH PREJUDICE;

8. Dismissal of portions of Cox's First, Second and Eleventh Claims, as specified above, also applies to Defendant Ashley Harris;

9. LEAVE IS GRANTED to add JDC Land Company, LLC as a plaintiff;

10. Plaintiff is GRANTED 21 days from the date of electronic service of this order to file a First Amended Complaint ("FAC") consistent with this order;

11. All Defendants will have 21 days from the date of electronic service of any FAC to answer or otherwise respond to the FAC;

12. If Plaintiff does not file a FAC within 21 days of electronic service of this order, leave to amend will be automatically and immediately withdrawn, with no further notice to the Parties, and Defendants will then have an additional 21 days to answer the Complaint (Doc. No. 1) consistent with this order and the order issued on Harris' motion to dismiss (Doc. No. 52);

13. This matter is referred back to the magistrate judge for further proceedings consistent with this order.

IT IS SO ORDERED.

Dated:   October 26, 2021

_____

SENIOR DISTRICT JUDGE