1
2
3
4

**UNITED STATES DISTRICT COURT**

5

**EASTERN DISTRICT OF CALIFORNIA**

6
7

JERRY COX, an Individual, and JDC LAND
COMPANY, LLC, a limited liability company,

CASE NO. 1:19-cv-01105-AWI-BAM

8

Plaintiffs,

**ORDER DENYING DEFENDANT
ASHLEY HARRIS'S MOTION TO
DISMISS THE FIRST AMENDED
COMPLAINT**

9
10

v.

11
12

MARIPOSA COUNTY; SHERIFF DEPUTY
WILLIAM ATKINSON; SHERIFF DEPUTY
WESLEY SMITH; ASHLEY HARRIS, AND
DOES 1 THROUGH 100, INCLUSIVE,

13

Defendants.

(Doc. No. 132)

14
15
16
17        Defendant Ashley Harris ("Harris") brings a motion under Rule 12(b)(6) of the Federal

18   Rules of Civil Procedure[1] to dismiss the claims against her in the First Amended Complaint

19   ("FAC") on the grounds of res judicata. Doc. No. 132. The motion has been fully briefed and the

20   Court has deemed it suitable for decision without oral argument pursuant to Local Rule 230(g).

21   For the reasons set forth below, the motion will be denied.

22                                **BACKGROUND**

23   **A.    Summary of Relevant Allegations in First Amended Complaint**

24        Plaintiff Jerry Cox ("Cox") once owned—through the JDC Land Company, LLC

25   ("JDC")—several hundred acres of land in Mariposa County ("Bison Creek Ranch") where he

26   resided and "operated a farm, ranch and agritourism business."[2] Doc. No. 128 ¶ 55.

27   _____

28   [1] Unless otherwise indicated, "Rule," as used herein, refers to the Federal Rules of Civil Procedure.
   [2] "Agritourism … involves an agriculturally based operation or activity that brings visitors to a farm or ranch." Doc.
   No. 128 ¶ 55.

In mid-October 2015, Harris contacted Cox on a dating website called FarmersOnly.com. Doc. No. 128 ¶ 56. Harris began staying at Bison Creek Ranch in the last week of October 2015, and a "dating relationship ensued" between Cox and Harris. Id. Harris remained at Bison Creek Ranch through November 13, 2015. Id. ¶¶ 58-59. For part of that time, Harris and Cox engaged in consensual sex. Id. On November 13, 2015, Cox asked Harris to vacate the guest cabin she was occupying to make room for paying guests. Id. ¶ 61. Harris became upset, consumed "several alcoholic beverages" at a bar, and "went to the Mariposa California Highway Patrol ('CHP') station to report an alleged rape" to a CHP officer. Id. ¶ 62. She was accompanied by one Darlene Windham, id. ¶ 63, who was also staying at Bison Creek Ranch at the time. Id. ¶ The CHP officer examined Harris's cell phone, which showed "normal correspondence" between Harris and Cox, but since the alleged rape had not occurred on state land, the CHP officer referred the matter to the Mariposa County Sheriff ("MCS"). Id. ¶ 63.

Harris was initially interviewed by MCS Deputy William Atkinson and MCS Detective Wesley Smith (both of whom are named as Defendants in this case). Doc. No. 128 ¶¶ 64-65. Harris had her mobile phone with her during the interview and indicated that it contained email and text messages with and relating to Cox. Id. ¶ 65. Harris also stated falsely that she had met Cox for the first time on November 11, 2015 through FarmersOnly.com, and that Cox had raped her, sodomized her and held her against her will from November 11-13, 2015. Id. ¶ 66. Atkinson and Smith did not seek consent from Harris to access messages transmitted through FarmersOnly.com or Facebook, view her cell phone or download information from her cell phone. Id. ¶ 70. Further, they disregarded and mischaracterized, in MCS records, statements by Windham, who informed them that Harris had lied about her alcohol intake on the day of the report; that Harris's sexual relations with Cox were consensual; and that Harris had never been confined against her will. Id. ¶ 71.

Cox was arrested without a warrant on November 13, 2015 and booked in the Mariposa County jail for rape, kidnapping, false imprisonment, oral copulation, sodomy, intimidating a witness and criminal threats. Doc. No. 128 ¶ 72. Cox was interviewed and had his cell phone seized by MCS while he was in jail. Id. ¶¶ 72-73. Cox denied the accusations against him; stated

that he and Harris had met weeks before November 11, 2015; and provided the names of witnesses who were at Bison Creek Ranch during the relevant period and could corroborate his version of events. Id. ¶ 72. Cox remained in jail for two weeks because Atkinson filed a motion to increase bail to $500,000. Id. ¶ 73.

Several events took place on November 14, 2015. First, Atkinson swore an affidavit stating that there was probable cause to search Cox's person and Bison Creek Ranch. Doc. No. 128 ¶ 75. The affidavit was based on Harris's version of events and did not reflect information provided by Windham. Id. ¶ 75. Second, MCS conducted a search of Bison Creek Ranch that showed that there were multiple windows in the cabin where Harris was supposedly confined incommunicado that could be opened from the inside; that the door to the cabin could be unlocked from the inside; and that the cabin had cell phone service, as well as a functioning landline. Id. ¶ 76. Third, Atkinson interviewed Harris for a second time. Id. ¶ 80. At that interview, Atkinson informed Harris that he needed her cell phone to obtain a record of her conversations with Cox, but Atkinson did not download—or otherwise make a record of—the contents of Harris's phone. Id. ¶ 80.

On November 16, 2015, Mariposa County District Attorney Thomas Cooke and Mariposa County Deputy District Attorney Gina Florick brought an 11-count felony criminal complaint against Cox, and on February 22, 2016, Cooke amended the complaint to allege 16 separate felonies with enhancements. Doc. No. 128 ¶ 77.

On November 25, 2015, Harris was interviewed by Smith and Florick. Doc. No. 128 ¶ 81. Florick photographed a selection of text messages between Harris and Cox on Harris's cell phone, but the cell phone was not retained or downloaded and Florick did not photograph—or otherwise make a record of—exculpatory text messages. Id. ¶ 81.

On December 23, 2015, Mariposa County completed its forensic download of Harris's cell phone but did not provide a copy of the download to Cox. Doc. No. 128 ¶ 93.

On April 4, 2016, Cox's counsel sought from Mariposa County, "[a] copy of all messages between Ashley Harris and Cox in the prosecution's possession …," and on April 15, 2016, an investigator for the defense served Harris with a subpoena for a preliminary hearing that, at the time, was set for May 17, 2016. Doc. No. 128 ¶ 84.

On April 19, 2016, Cox moved for an order compelling the prosecution to produce "[a] copy of all messages between Ashley Harris and Cox, or any other person where facts relevant to this case were discussed, in the prosecution's possession, be they text/SMS messages, Facebook messages, messages transmitted through FarmersOnly.com, or otherwise." Doc. No. 128 ¶ 85. On April 21, 2016, Mariposa County responded that the material in question was not available because the Department of Justice was still analyzing Harris's phone and computer, and on May 4, 2016, Mariposa County filed a motion to quash Cox's subpoena for Harris to attend the preliminary hearing. Id. ¶ 86.

On May 13, 2016, the Mariposa County Superior Court judge presiding over Cox's criminal case endorsed a subpoena for Harris's mother, Krystal McElree, covering "[a]ll messages in [her] possession, in whatever form, be it written audio or electronic, relating to Ashley Harris, Cox, Bronze, Bronsius, Bison Creek Ranch, or internet dating sites between 2014 and the present, and any device used to communicate those messages." Doc. No. 128 ¶ 87. McElree dodged the subpoena and Mariposa County made no attempt of its own to obtain evidence from her even though phone records showed that McElree engaged in several phone calls with Harris during the period of Harris's supposed imprisonment. Id.

On June 20, 2016, Mariposa County's forensic download of Cox's cell phone was provided to Cox's defense team. Doc. No. 128 ¶ 89. It contained no less than 22 text messages between Harris and Cox during the period that Harris claimed to have been held against her will in the guest cabin and numerous messages evidencing an ongoing consensual sexual relationship between Harris and Cox. Id. The phone records, however, had not been fully preserved and, consequently the messages were not complete, containing only the first few words of any given message. Id. ¶ 89.

On August 8, 2016, the court authorized Cox's attorneys to issue subpoenas to Verizon Communications, Facebook, Inc. and FarmersOnly.com. Doc. No. 128 ¶ 91. Mariposa County had not previously sought to obtain messages from these providers. Id.

Verizon destroys the content of messages transmitted through their network three to five days after transmission, but records produced by Verizon showed that 166 text messages were sent

and received by Harris between November 10 and November 13, 2015. Doc. No. 128 ¶ 94.

On October 14, 2016, Mariposa County and MCS executed a civil search warrant calling for inspection of "all areas of the interior and exterior of all buildings, structures, homes, houses, rooms, barn, garages, vehicles, basements, attics, sheds, units, open fields, yards, storage facilities, compartments, drawers, cabinets, papers, and electronic files located on [Bison Creek Ranch]." Doc. No. 128 ¶ 104. The warrant was based on an affidavit containing false allegations about Cox in connection with the criminal case. Id. ¶ 156.

On Friday, December 2, 2016, Mariposa County issued a Notice and Order to Repair or Abate ("N&O") based on the October 14, 2016 search of Bison Creek Ranch. Doc. No. 128 ¶ 105. The N&O identified 101 "dangerous violations" and called for all repairs and abatement to be completed within 30 days. Id. ¶ 105-06.

The Department of Justice finally downloaded Harris's cell phone on December 8, 2016—more than a year after the alleged rape and approximately one week after the civil search of Bison Creek Ranch supposedly turned up 101 "dangerous violations." Doc. No. 128 ¶ 95. That download was to be withheld from Cox's counsel for an additional three months. Id.

The County denied Cox's December 20, 2016 request for additional time to perform the work on Bison Creek Ranch required by the N&O. Doc. No. 128 ¶ 107.

On March 7, 2017, Mariposa County provided Cox's defense with the download of Harris's cell phone. Doc. No. 128 ¶ 95.

Cox's defense reconstructed Harris's cell phone activity using the download from Harris's cell phone, Cox's records and the records subpoenaed from Verizon. Doc. No. 128 ¶ 97. That analysis showed the permanent loss of exculpatory content, in addition to 49 exchanges between Harris and Cox that were on Cox's cell phone but not on Harris's cell phone. Id.

On March 13, 2017, the County filed a Verified Complaint for Nuisance Abatement and Receivership against Cox and JDC based on the alleged violations in the N&O. Doc. No. 128 ¶ 114.

On June 2, 2017, Harris testified under oath at a deposition in a separate worker's compensation case that she had never been a victim of sexual assault or abuse. Doc. No. 128 ¶

100.

On June 19, 2017, Mariposa County filed a Motion for Appointment of Receiver in connection with the N&O, and on July 17, 2017, Mariposa Superior Court put Bison Creek Ranch into a corrupt receivership that culminated in the sale of Bison Creek Ranch at less than half of its market value. Doc. No. 128 ¶¶ 108-09, 130-55.

On August 14, 2017, all criminal charges against Cox were instantaneously dismissed at the request of the Mariposa County District Attorney pursuant to section 1385 of the California Penal Code. Doc. No. 128 ¶ 156.

On July 26, 2019, Harris's request for a restraining order against Cox in California Superior Court for San Luis Obispo County was denied on findings that Harris "lacked credibility" and that no "reasonable person could [] conclude her story was straight." Id. ¶¶ 69, 101.

**B.** **Procedural History**

Cox filed this case on August 12, 2019, alleging fourteen causes of action under state and federal law against Harris, Mariposa County, MCS, Atkinson, Smith, Mark Adams and the California Receivership Group ("CRG"). Doc. No. 1. As to Harris in particular, Cox alleged claims under California law for negligence and intentional interference with prospective economic advantage, as well as federal civil rights claims under 42 U.S.C. § 1983 for violation of his due process and equal protection rights under the Fourteenth Amendment; violation of his rights against unreasonable search and seizure under the Fourth Amendment; and conspiracy to deprive him of his constitutional rights. Id.

Harris brought a motion to dismiss the Complaint on May 26, 2020, asserting that Cox's claims failed because: (i) "Harris is a private person, and Cox [did] not state facts sufficient to support a claim that she was acting under state law" as required for § 1983 liability; (ii) "Harris's allegedly false police report of her rape [] is absolutely privileged under Section 47(b) of the California Civil Code"; (iii) Cox failed to allege facts sufficient to show conspiracy; and (iv) the two-year statute of limitations in section 335.1 of the California Code of Civil Procedure had run.

1   Doc. No. 52 at 2:9-24.[3]

2         The Court dismissed the state law claims as time-barred but denied the motion as to the §

3   1983 claims on findings that allegations in the Complaint went "well beyond" merely filing a

4   police report and supported a reasonable inference of "joint action" between Harris and the County

5   Defendants "to destroy and delay the production of exculpatory evidence directly relevant" to Cox

6   and to otherwise burden his defense. Doc. No. 122 at 14:17-28. Similarly, the Court rejected the

7   assertion that "the only substantive allegation [Cox] makes against Harris with any specificity is

8   that she filed a police report" and found that Cox had adequately alleged the "meeting of the

9   minds" between Harris and the County Defendants[4] required for a § 1983 conspiracy claim based,

10  *inter alia*, on allegations that "the County Defendants: (i) took immediate possession of Cox's

11  phone, but left Harris's phone in her sole possession for more than a year, after ignoring messages

12  that contradicted Harris's accusations; (ii) selectively preserved messages that inculpated Cox; and

13  (iii) conveyed to Harris during interviews that cell phone records would bear on the outcome of

14  the criminal case," while giving her an opportunity (that she took) to destroy certain cell phone

15  records. Doc. No. 122 at 15:1-17:6.

16        The Court concurrently issued an order on the motion to dismiss the Complaint brought by

17  the County Defendants, which raised several arguments as to §1983 claims that Cox did not make.

18  Doc. No. 123.

19        Cox filed a First Amended Complaint ("FAC") on November 17, 2021. Doc. No. 1. The

20  FAC alleges claims against Harris for violation of Cox's substantive and procedural due process

21  rights under the Fourteenth Amendment; violation of Cox's equal protection rights under the

22  Fourteenth Amendment; violation of Cox's rights against unreasonable search and seizure under

23  the Fourth Amendment; and conspiracy to violate Cox's constitutional rights under 42 U.S.C. §

24  1985(3).

25

26  [3] Unless otherwise indicated, citations to page numbers in records on the Court's electronic docket are to the page
    number in the CM/ECF stamp at the top of each page.

27  [4] "County Defendants" refers to Mariposa County, MCS, Atkinson and Smith in connection with the motion to
    dismiss the Complaint and to Mariposa County, Atkinson and Smith in connection with the motion to dismiss the

28  FAC. MCS was terminated as a Defendant in the Court's order on the County Defendants' motion to dismiss the
    Complaint. See Doc. No. 123 at 47:25-26; Doc. No. 125.

1    In the instant motion, Harris seeks dismissal of all claims against her in the FAC based on

2    res judicata. See Doc. No. 132. In addition, Harris purports to join the motion to dismiss the FAC

3    filed by the remaining County Defendants. Doc. Nos. 135 & 139. The requested joinder and the

4    merits of the County Defendants' motion to dismiss will be addressed in a subsequent order. This

5    order addresses only the question of whether Cox's claims against Harris are barred by res

6    judicata.

7                                          **HARRIS'S MOTION**

8    Harris argues in her opening brief that the claims against her in the FAC are barred under

9    the doctrine of res judicata based on an action that Cox brought against her in California state

10   court (the "State Court Action") because both actions are "premised on the same 'primary right.' "

11   Doc. No. 132 at 2:7-10. According to Harris, the "primary right" at issue in both cases is "Cox's

12   'right to be free' from allegedly unfounded criminal charges." Doc. No. 133 at 11:2-11.

13   Cox argues that Harris's motion should be denied under Rule 12(g)(2) of the Federal Rules

14   of Civil Procedure because Harris failed to argue res judicata in her May 26, 2020 motion to

15   dismiss the Complaint. Doc. No. 147 at 5:5-6. Further, Cox argues that the Court must

16   "extensively examine the facts underlying the dismissal in [] state court" to make a res judicata

17   determination, Id. at 8:2-9, and that res judicata does not apply here because Cox "was not

18   afforded due process" in the State Court Action. Id. at 9:5.

19                                         **LEGAL FRAMEWORK**

20   "A defendant may raise the affirmative defense of res judicata by way of a motion to

21   dismiss under Rule 12(b)(6)." Drawsand v. F.F. Properties, L.L.P., 866 F. Supp. 2d 1110, 1125

22   (N.D. Cal. 2011) (citing Scott v. Kuhlmann, 746 F.2d 1377, 1378 (9th Cir. 1984)); Bayone v.

23   Baca, 130 F. App'x 869, 872 n.5 (9th Cir. 2005) ("We have held that the affirmative defense of res

24   judicata may be raised in a motion to dismiss under Rule 12(b)(6).").

25   Under the doctrine of res judicata, "all claims based on the same cause of action must be

26   decided in a single suit; if not brought initially, they may not be raised at a later date." Mycogen

27

28

Corp. v. Monsanto Co., 28 Cal.4th 888, 897 (2002). Through 28 U.S.C. § 1738,[5] "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so …." Allen v. McCurry, 449 U.S. 90, 96 (1980); Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984) ("It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."). This is true even where cases in federal court involve claims under 42 U.S.C. § 1983 for the violation of constitutional rights. Allen, 449 U.S. at 96 (holding that preclusion principles apply to claims brought in federal court under 42 U.S.C. § 1983); Adams v. Trimble, 2012 WL 260160, at *4 (E.D. Cal. Jan. 27, 2012).

Under California law, "res judicata precludes a plaintiff from litigating a claim if: the claim relates to the same 'primary right' as a claim in a prior action, the prior judgment was final and on the merits, and the plaintiff was a party or in privity with a party to the prior action." Trujillo v. County of Santa Clara, 775 F.2d 1359, 1366 (9th Cir. 1985) (citations omitted); Bucur v. Ahmad, 244 Cal. App. 4th 175, 187 (2016) (finding res judicata barred claims "relat[ing] to the same primary right").

Dismissal can be ordered based on res judicata when the required elements are established by the text of the complaint and judicially-noticeable facts. See, e.g., Headwaters Inc. v. U.S. Forest Serv., 399 F.3d 1047, 1054 (9th Cir. 2005); see also Scott, 746 F.2d at 1378 (Rule 12(b)(6) dismissal can be granted if the court is able to discern the relevant facts by way of judicial notice of the earlier court proceeding).

Finally, the Ninth Circuit has held that "[t]he party asserting preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment." Clark v. Bear Stearns & Co., 966 F.2d 1318, 1321 (9th Cir. 1992). "It is not enough that the party introduce the decision of the prior court; rather, the party must introduce a sufficient record of the prior

---

[5]  28 U.S.C. § 1738 provides, in part: "Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

1  proceeding to enable the trial court to pinpoint the exact issues previously litigated." <u>United States</u>

2  <u>v. Lasky</u>, 600 F.2d 765, 769 (9th Cir. 1979).

3  **<u>DISCUSSION</u>**

4  At the threshold, the Court agrees with Harris that it is not improper to raise a res judicata

5  defense on this motion. As noted above, the preclusive effect of California state court judgments

6  are governed by California law, <u>Wawrzynski v. Byron Hibshman</u>, 2011 WL 1004822, at *2 (S.D.

7  Cal. Mar. 18, 2011) ("Federal courts look to state law to determine the preclusive effect of a state

8  court judgment."), and California law provides that "the preclusive bar of res judicata" does not

9  attach "until an appeal from the trial court judgment has been exhausted or the time to appeal has

10  expired." <u>Franklin & Franklin v. 7-Eleven Owners for Fair Franchising</u>, 85 Cal. App. 4th 1168,

11  1174 (2000). Here, it is undisputed that the California Court of Appeal did not decide Cox's

12  appeal of the trial court judgment in question until September 30, 2021 and that remittitur was not

13  issued until November 30, 2021. Doc. No. 134-3 at 6. Thus, res judicata had not attached at the

14  time Harris filed her motion to dismiss the Complaint on May 26, 2020, <u>see</u> <u>Aronow v. Lacroix</u>,

15  219 Cal. App. 3d 1039, 1046 (1990), reh'g denied and opinion modified (May 24, 1990) (finding

16  "final judgment" required for res judicata defense attached upon remittitur "declaring []

17  affirmance" of trial court judgment), and Harris's res judicata defense is not barred by Rule

18  12(g)(2). <u>See</u> Fed.R.Civ.P. 12(g)(2) ("a party that makes a motion under this rule must not make

19  another motion under this rule raising a defense or objection that was available to the party but

20  omitted from its earlier motion").

21  Further, the Ninth Circuit has allowed defendants to raise affirmative defenses such as res

22  judicata after answering—or otherwise responding to—an initial pleading where doing so does not

23  prejudice the plaintiff. <u>See</u> <u>Owens v. Kaiser Found. Health Plan, Inc.</u>, 244 F.3d 708, 713 (9th Cir.

24  2001). Cox has made no showing of prejudice in connection with the timing of the res judicata

25  defense in this case and the Court finds, for that independently sufficient reason, that Harris's res

26  judicata defense has not been waived. <u>Cf.</u> <u>id.</u> at 713 (finding that defendant had not waived its

27  right to assert res judicata by failing to plead it in its original answer).

28  The Court will therefore address the merits of Harris's res judicata defense, starting with a

detailed review of the State Court Action. Cf. Scott, 746 F.2d at 1378 (a Rule 12(b)(6) dismissal

on the basis of res judicata can be granted where a court is able to discern the relevant facts by

way of judicial notice of an earlier court proceeding).

**A.    The State Court Action**

     **1.    Trial Court Filings**[6]

On August 22, 2018, Cox filed a pro se action against Harris in California Superior Court

for Mariposa County—*Cox v. Harris*, Case No. 11149 (Mariposa Sup. Ct. Aug. 22, 2018)—

alleging causes of action for defamation, libel, malicious prosecution and abuse of process. Doc.

No. 134-1. The factual allegations in the complaint were, in their entirety, as follows:

- "In 2015, [Harris] made false statements, oral and in writing, to the public and to the
  Sheriff, that [Cox] raped her";

- "As a result of the false accusation, the County of Mariposa brought criminal charge[s]
  against Plaintiff"; and

- "The charges were dismissed several years later and the District Attorney admitted, in a
  public hearing, that Defendants had lied."

Id. at 4-15.

In November 2018, Cox hired an attorney to represent him, Doc. No. 134-2 at 6, and on

December 18, 2018, Cox voluntarily dismissed the defamation, libel and abuse of process claims,

---

[6] In the course of this case, both Harris and Cox have filed—and sought judicial notice for—authenticated records relating to the State Court Action without objection from another party. On May 26, 2020, Harris filed and sought judicial notice for: (i) the complaint; (ii) her briefs in support of her special motion to strike the complaint under section 425.16 of the California Code of Civil Procedure; (iii) a transcript of the hearing on her special motion to strike; (iv) Cox's request to dismiss certain claims in the complaint; (v) an order granting the special motion to strike; (vi) notice of Cox's appeal of the order granting the special motion to strike; and (vii) the docket from Cox's appeal. Doc. No. 53 at 14-79. On December 28, 2021, similarly, Harris filed and sought judicial notice for the complaint and appellate docket, as well as the opinion denying Cox's appeal. Doc. Nos. 134 & 134-1 through 134-3. On November 23, 2020, Cox sought judicial notice for the trial court's orders in connection with Harris's special motion to strike; his memorandum in opposition to the special motion to strike, including his declaration, various exhibits and an evidentiary objection; and the request for—and order granting—dismissal of all criminal charges against him. Doc. Nos. 72, 74 & 75. The Court takes judicial notice of all the foregoing records—and, specifically, GRANTS the request for judicial notice, Doc. No. 134, Harris filed in connection with this motion—for purposes of ascertaining what transpired in the State Court Action. See Duckett v. Godinez, 67 F.3d 734, 741 (9th Cir. 1995) ("We may take notice of proceedings in other courts whether in the federal or state systems."). The Court DENIES as moot the request for judicial notice Cox filed in opposition to the instant motion, Doc. No. 150, on the ground that the document in question (the receiver discharge order from *County of Mariposa v. JDC Land Company, LLC*, Case No. 10887 (Mariposa Sup. Ct. Feb. 3, 2022)) is irrelevant.

1  leaving only the malicious prosecution claim. Id. at 6.

2      On December 19, 2018, Harris brought a special motion to strike Cox's complaint under

3  section 425.16 of the California Code of Civil Procedure. Doc. No. 134-2 at 3. Section 425.16—

4  better known as California's anti-SLAPP[7] statute—"provides a procedure for weeding out, at an

5  early stage, *meritless* claims arising from protected activity" if certain requirements are met.

6  Sweetwater Union High Sch. Dist. v. Gilbane Bldg. Co., 6 Cal.5th 931, 940 (2019) (emphasis

7  original).

8      As discussed further below, courts follow a two-step process in deciding anti-SLAPP

9  motions. Roberts v. McAfee, Inc., 660 F.3d 1156, 1163 (9th Cir. 2011); see also Cal. Code Civ.

10  Proc. § 425.16, subd. (b). First, "the defendant must make a *prima facie* showing that plaintiff's

11  claims arise from an act or acts in furtherance of the defendant's rights of petition or free speech in

12  connection with a public issue." Roberts, 660 F.3d at 1163 (quoted source and internal quotation

13  marks omitted). Then, "once the defendant makes this showing, the burden shifts to the plaintiff to

14  demonstrate a probability of prevailing on the challenged claims." Id. at 1163 (quoted source and

15  internal quotation marks omitted).

16      Harris argued "that her right to report the rape to the police is protected by the anti-SLAPP

17  statute and that Cox [could not] show probability of prevailing" on his malicious prosecution

18  claim. Doc. No. 134-2 at 5. Cox supported his opposition with a declaration ("Cox Declaration"),

19  Doc. No. 75 at 17, and five exhibits: (i) a November 13, 2015 "Sex Crimes Narrative" from the

20  MCS ("November 13, 2015 Sheriff's Report"), id. at 23; (ii) an excerpt from a putative June 2,

21  2017 deposition of Harris in an unrelated worker's compensation case ("June 2, 2017 Deposition

22  Transcript"), id. at 29; (iii) a supplement to the November 13, 2015 Sheriff's Report dated

23  September 14, 2016 ("September 14, 2016 Supplement"), id. at 34; (iv) a supplement to the

24  November 13, 2015 Sheriff's Report dated June 30, 2016 ("June 30, 2016 Supplement"), id. at 38;

25  and (v) a request for—and order granting—dismissal of the criminal case against him dated

26  August 14, 2017. Id. at 46.

27

28  _____
[7] "SLAPP" stands for Strategic Lawsuits Against Public Participation. See Makaeff v. Trump Univ., LLC, 715 F.3d 254, 261 (9th Cir. 2013).

1      The relevant contents of these exhibits for purposes of the instant res judicata analysis are

2  summarized below.

3                                          Cox's Declaration

4      The declaration Cox filed in opposition to the anti-SLAPP motion states that he "went to a

5  hotel and had sex" with Harris shortly after meeting her "in or around mid-October 2015" and that

6  "[a] sexual relationship continued from that point, with [Harris] driving to Mariposa and staying at

7  … Bison Creek Ranch." Doc. No. 75 at 17:6-12. Further, Cox states that "Sunday, November 8,

8  2015" was "the last time [they] ever had sex," id. at 18:1-3, and denies raping, kidnapping,

9  sodomizing or battering Harris, stating that "[t]he whole story she told the Sheriff was a lie." Id. at

10  20:16-18. Cox also states that the criminal case against him "was eventually dismissed after the

11  District Attorney saw that [Harris] admitted in her Workers' Compensation deposition … that she

12  was not raped or sexually assaulted," id. at 20:19-20; and that "[t]he District Attorney admitted on

13  video that [Harris] had lied." Id. at 20:21-24. The declaration includes a link to the putative video (

14  www.youtube.com/watch?v=mi6vp3RXe_o ). Id. It lasts approximately 28 seconds and shows a

15  male of middle-age who apparently resembles Cooke stating (without referencing a specific case

16  or any names) that he moved to dismiss a case after learning from a defense filing that a witness

17  had lied in deposition. The faces of three other adults are clearly featured in the video and the

18  room in which the statement took place had a distinctive table and extremely distinctive wall

19  coverings consisting of posters and photographs.

20                                November 13, 2015 Sheriff's Report

21      The November 13, 2015 Sheriff's Report shows, based on Harris's report, that Cox was

22  suspected of violating the following provisions of the California Penal Code:

23   • P.C. 261-Rape by force/fear

24   • P.C. 207-Kidnapping

25   • P.C. 236-False imprisonment

26   • P.C. 288A- Oral Copulation

27   • P.C. 286- Sodomy

28   • P.C. 136- False imprisonment

                                              13

1      • P.C. 422 - Criminal Threats

2  Doc. No. 75 at 23.

3                    <u>June 2, 2017 Deposition Transcript</u>

4         The June 2, 2017 Deposition Transcript consisted of a caption page and three pages of

5  transcribed Q&A. Doc. No. 75 at 29-32. The caption page stated, "VOLUME II DEPOSITION

6  OF ASHLEY HARRIS SAUSALITO, CALIFORNIA JUNE 2, 2017," and indicated that the

7  deposition had been taken in connection with a matter—*Ashley Harris v. Guide Dogs for the*

8  *Blind, Inc.*— before the State of California Worker's Compensation Appeals Board. <u>Id.</u> Further, it

9  identified the court reporter who transcribed the deposition (including the court reporter's name

10  and "CSR No.") and the relevant court reporting agency. <u>Id.</u>  Each of the three dialogue pages

11  included in the exhibit were formatted—including line numbers, for instance—in the way that

12  deposition transcripts are typically formatted, with had a header that read, "Atkinson-Baker Court

13  Reporters <u>www.depo.com</u>," and a footer that read, "Ashley Harris June 2, 2017." <u>Id.</u> at 29-32.

14         The exhibit was presented to the trial court through a request for judicial notice, Doc. No.

15  74 at 12, and a declaration signed by Cox's attorney that stated in pertinent part as follows:

16         Attached as Exhibit "[B]" to Plaintiff's Notice of Lodgment is a true and correct
           copy of the deposition of Ashley Harris dated June 2, 2017 that I obtained from
17         Plaintiff's criminal defense attorney in or around. [sic] On or about December 10,
           2019 [sic], I contacted Atkinson Baker to obtain a certified copy of said deposition
18         transcript. They told me they had to wait about a month to see whether they receive
           any objection. On January 24, 2019, Atkinson Baker informed me that they did
19         receive an objection and therefore could not produce the deposition.

20  <u>Id.</u> at 12:22-13:15.

21         The relevant excerpt from the transcript reads as follows:

22         Q.     Okay. There was something I just need to clear up.

23                You mentioned in the deposition that you were the victim of an attack in
                  2010, and then there was an off-the-record discussion that I can only
24                speculate about.

25                Do you recall that? Your testimony?

26         A.     Yes.

27         Q.     Then the deposition also mentioned a -- that you were being stalked by
                  somebody in Rohnert Park?
28

                                          14

1

A.     Yes. That was a neighbor.

2

Q.     Other than these incidents, have there been any other incidents where
       you've been the victim of - - I'll start with - - violent crime?

3

A.     Not that I recall.

4

Q.     No sexual or physical abuse since the Rohnert-Park thing?

5

A.     Not that I recall.

6

Doc. No. 75 at 30-31.

7

<u>June 30, 2016 Supplement</u>

8

The June 30, 2016 Supplement to the November 13, 2015 Sheriff's Report, states that the

9

downloaded contents of Cox's phone were reviewed by MCS on May 22, 2016 and shows that

10

there were more than 20 text messages from Harris to Cox on November 10, 2015, Doc. No. 75 at

11

39-40; more than 20 text messages from Harris to Cox on November 11, 2015, <u>id.</u> at 40-41; four

12

messages from Harris to Cox on November 12, 2015, <u>id.</u> at 41; and 10 messages from Harris to

13

Cox on November 13, 2015. <u>Id.</u> at 41.

14

The report was submitted to the state trial court through a declaration signed by Cox's

15

attorney that stated, in pertinent part, as follows:

16

Attached as Exhibit "D" to Plaintiffs Notice of Lodgment is a true and correct copy
of the forensic download of Plaintiff's phone records as well as a summary of

17

Ashley Harris' phone records, both of which I received from Plaintiff's criminal
defense attorney and that was filed with the court in Plaintiff's criminal case that

18

was dismissed.

19

Doc. No. 74 at 13.

20

<u>Request for—and Order Granting—Dismissal of Criminal Case</u>

21

On August 14, 2017, Mariposa County District Attorney Thomas Cooke filed a request for

22

dismissal of the criminal complaint against Cox that read in its substantive entirety as follows:

23

Pursuant to Section 1385 of the California Penal Code, the District Attorney of
Mariposa County, California, herein requests that the Complaint in the above

24

referenced case against the defendant, JERRY DUANE COX be dismissed, in the
furtherance of justice.

25

Doc. No. 75 at 47.

26

Section 1385 provides that "[t]he judge or magistrate may, either of his or her own motion

27

or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to

28

15

1  be dismissed." Cal. Pen. Code § 1385, subd. (a).

2     The presiding judge signed an order granting the request, without written explanation or

3  discussion of any kind, on the very day the request was made. Doc. No. 75 at 47.

4     In addition to the foregoing materials, Cox filed a hearsay objection to a "[p]olice report

5  interviewing Jerry Cox" that had been submitted by Harris in support of her reply. Doc. No. 74 at

6  10. The objection stated as follows:

7     In response to Defendant's Reply to Opposition to Anti-SLAPP Motion, the police
      report submitted to Defendant is completely inaccurate as Plaintiff was answering
8     what he heard was a question of what happened during that night. He said he never
      had sex with her or even sexual contact with her. He will testify truthfully to what
9     happened.

10 Id.

11     **2.     Trial Court Hearing and Orders**

12     A hearing on Harris's anti-SLAPP motion was held in Mariposa Superior Court on March

13 11, 2019. Doc. No. 53 at 50. As to evidentiary issues, the trial court found that the November 13,

14 2015 Sheriff's Report was relevant and "contain[ed] reference to interviews and other types of

15 evidence that, if offered at trial, most likely would … not be hearsay." Id. at 56:2-8. The trial court

16 sustained Harris's "objection to the admission" of the June 2, 2017 Deposition Transcript for

17 "failure to authenticate." Id. at 56:9-13. The trial court struck the YouTube video referenced in

18 Cox's declaration for lack of foundation and failure to authenticate, and on the ground that Cox

19 failed to provide a transcript, as required under Rule 2.1040(b)(1) of the California Rules of Court.

20 Id. at 58:10-21. Finally, the trial court excluded the statement in Cox's declaration that "the

21 criminal case was dismissed after the DA saw that the Defendant admitted in a [] deposition that

22 she had not been raped or sexually assaulted …" as hearsay and for lack of foundation. Id. at 58.

23     As to the merits, the trial court granted the motion for two reasons. First, the trial court

24 found that Cox had failed to allege a cause of action for malicious prosecution because dismissing

25 the other three causes of action stripped all factual allegations from the complaint. Doc. No. 53 at

26 63:3-12. Second, the trial court "g[a]ve weight to the independent investigation doctrine"[8] and

27

28 ─────────────
[8] The "independent investigation doctrine" holds, in essence, that "[a] party may not sue for malicious prosecution
where the proceeding at issue was initiated after an independent investigation of the defendant's charges by the

found that Cox did not have "a probability of prevailing" on a malicious prosecution claim because "Cox denied having any sexual contact with [Cox] whatsoever" but "the DNA test corroborate[d] that [] Cox did have sexual intercourse with [Harris]." <u>Id.</u> at 63:13-24. Further, because Harris prevailed on the motion, the trial court found that she was entitled to attorney fees. <u>Id.</u> at 63:25-65:4.

The trial court issued two parallel orders granting the motion. An abbreviated order on a court form stated in pertinent part as follows:

> The court has reviewed all motions by the parties. Defendant Harris addressed court. Objection is overruled, Sheriff's report is relevant. As to deposition transcripts—there is a failure to authenticate—Objection is sustained. As to YouTube Video per 2.10[4]0(b)(1) Rules of Court-Nothing was provided, stricken for lack of Evidence. Objection sustained. Plaintiff's declaration—Objection is sustained. Objection to District Attorney's admission-Objection sustained. Motion to strike is granted. Defendant is awarded reasonable attorney's fees under Rule 3.37(b) ….

Doc. No. 74 at 2-3.

And on May 6, 2019, the trial court issued an "Order After Hearing" prepared by Harris at the trial court's direction stating in pertinent part as follows:

> The Court having reviewed and considered the anti-SLAPP motion, Plaintiff's opposition, Defendant's reply, all supporting declarations and exhibits, Plaintiff's Request for Judicial Notice, Defendant's Objection to Defendant's Request for Judicial Notice, Defendant's Objections to Evidence, and Plaintiff's Objection to Evidence, and arguments in support and opposition thereof, and good cause appearing, **IT IS HEREBY ORDERED THAT**: Defendant's anti-SLAPP motion is **GRANTED** and Defendant's request for attorney's fees in connection with her anti-SLAPP motion is **GRANTED**.

Doc. No. 74 at 9; <u>see also</u> Doc. 63 at 68-69.

The trial court later issued a third order awarding Harris $46,031.57 in attorneys fees. Doc. No. 74 at 5.

### 3.   Appellate Review

Cox timely filed a notice of appeal on May 10, 2019. Doc. No. 134-2 at 10.

In deciding the appeal, the appellate court found that the first prong of the anti-SLAPP analysis (protected activity) was clearly satisfied" because, despite its potential falsity, "Harris's

---

responsible authorities." <u>See</u> <u>Lockwood v. Sheppard, Mullin, Richter & Hampton, LLP</u>, 2009 WL 9419499, at *8 (C.D. Cal. Nov. 24, 2009) (citations omitted).

police report … constituted protected petitioning activity for purposes of the anti-SLAPP statute." Doc. No. 134-2 at 13.

In addressing the second prong of the anti-SLAPP analysis (probability of prevailing on the merits), the appellate court examined the individual elements of a malicious prosecution claim under California law[9] and addressed each of the two rationales (failure to state a claim and the independent investigation defense) set forth by the trial court for granting the motion.

As to the first rationale, the appellate court "t[ook] issue with the trial court's interpretation of the dismissal" and stated that "it [did] not appear from plaintiff's request for dismissal that any particular allegations within the complaint were being removed or stricken from the pleading, but only that three of the four causes of action—each of which were premised on the same set of underlying facts—were being dismissed." Doc. No. 134-2 at 15-16. Thus, the Court of Appeal "conclude[d] that Cox [had] set forth a legally sufficient claim." Id. at 16.

As to the trial court's second rationale, the appellate court stated that independent investigation "may create an affirmative defense to a malicious prosecution cause of action," but found that "to the extent the independent investigation doctrine may potentially be applicable [to Cox's claim], it would involve issues of fact that, on the record before the trial court, could not be resolved as a matter of law …." Doc. No. 134-2 at 18. In short, the appellate court not only rejected both of the trial court's grounds for granting the motion but also found, in essence, that the trial court had improperly weighed evidence. See id.

In addition to the foregoing, the appellate court undertook its own, independent assessment of whether Cox had made out a prima facie claim for malicious prosecution under California law. In doing so, the appellate court found that Cox had made an adequate prima facie showing as to the second and third elements—lack of probable cause and malice—because Cox was prepared to testify at trial that he never raped or kidnapped Harris and that she had lied to the police. Doc. No. 134-2 at 17. The appellate court then broke the first element into two parts, first

---

[9] The appellate court stated that "[t]he elements of a cause of action for malicious prosecution are that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in the plaintiff's favor; (2) was brought without probable cause; and (3) was initiated with malice." Doc. No. 134-2 at 15 (citing Casa Herrera, Inc. v. Beydoun, 32 Cal. 4th 336, 341 (2004)).

examining whether Cox had made a sufficient prima facie showing that criminal prosecution

against him was "commenced by or at the direction of" Harris and then looking separately at

whether the action was "pursued to a legal termination in [his] favor." Id. at 18.

As to the first of these issues, the appellate court found that Cox had made an adequate

showing that the action was "commenced by or at the direction of" Harris because "the evidence

presented by the parties reflects that Harris was actively instrumental in causing the prosecution;

that is, she sought out the police and reported that Cox had raped her." Doc. No. 134-2 at 18.

Thus, the sole remaining question before the appellate court was whether Cox had made an

adequate showing that the action against him was "pursued to a legal termination in [his] favor."

Id. at 19-22.

In addressing this issue, the appellate court summarized applicable California law as

follows:

> Termination in favor of the plaintiff is an essential element of the tort of malicious
> prosecution, and the requirement is strictly enforced. [citation] "The core concept is
> that the termination must reflect on the *merits* of the prior action." [citation] " 'The
> theory underlying the requirement of favorable termination is that it tends to
> indicate the innocence of the accused, and coupled with the other elements of lack
> of probable cause and malice, establishes the tort [of malicious prosecution].' "
> [citation] Therefore, in order for the termination of the prior action to be considered
> favorable to the malicious prosecution plaintiff, it must *reflect on the merits and
> indicate the plaintiff's innocence of the misconduct alleged in the prior action*.
> [citations].

Doc. No. 134-2 at 19 (emphasis original). Further, the appellate court found that "[b]y itself"

dismissal "in the furtherance of justice" pursuant to section 1385 "does not necessarily involve a

consideration of the merits of the case or indicate the innocence of the accused." Id. at 20.

Applying the law of malicious prosecution to the facts of Cox's case, the appellate court

noted that "Cox attempted to indicate the reason for the dismissal of the criminal case against him

by making reference to the existence of a YouTube video." Doc. No. 134-2 at 20, but "presumed"

the trial court's order excluding the YouTube video "to be correct" because Cox had not presented

"any legal or factual analysis of whether the trial court's evidentiary ruling excluding the YouTube

video constituted error" aside from a "perfunctory mention that the YouTube video should not

have been excluded." Id. at 21. Consequently, the appellate court concluded, "there was no

1   evidence on the essential issue of a favorable termination, … and the trial court correctly granted

2   the anti-SLAPP motion." Id. at 22.

3          The Court will now address each of Cox's arguments as to the preclusive effect of the

4   State Court Action on his claims against Harris in this case, beginning with a review of

5   California's "primary rights" doctrine and then turning to due process.

6   **B.      <u>Primary Rights</u>**

7          As noted above, California employs the "primary rights" theory to determine whether a

8   claim is "identical to a claim ... litigated in a prior proceeding" for purposes of res judicata.

9   <u>Boeken v. Philip Morris USA, Inc.</u>, 48 Cal.4th 788, 798 (2010); <u>see</u> also <u>Lodin v. Bank of Am.,</u>

10  <u>N.A.</u>, 2014 WL 296927, at *3 (N.D. Cal. Jan. 27, 2014) (under the primary rights theory, "[t]here

11  is an identity of claims if the two proceedings are 'based on the same primary right or injury' "

12  (quoting <u>Fed'n of Hillside & Canyon Ass'ns v. City of Los Angeles</u>, 126 Cal.App. 4th 1180, 1202

13  (2004)).

14         Under the primary rights theory, "the right of an injured party to seek legal relief [is]

15  analyzed in terms of the plaintiff's 'primary right,' the defendant's 'primary duty,' and a breach

16  of that duty entitling the plaintiff to a remedy." <u>Baral v. Schnitt</u>, 1 Cal.5th 376, 381 (2016)

17  (quoting 4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 34, p. 98) (some internal quotation

18  marks omitted). "As far as its content is concerned, the primary right is simply the plaintiff's right

19  to be free from the particular injury suffered." <u>Mycogen Corp.</u>, 28 Cal.4th at 904 (citation and

20  internal quotation marks omitted). "[I]f two actions involve the same injury to the plaintiff and the

21  same wrong by the defendant then the same primary right is at stake[,] even if in the second suit

22  the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new

23  facts supporting recovery." <u>San Diego Police Officers' Ass'n v. San Diego City Employees'</u>

24  <u>Retirement Sys.</u>, 568 F.3d 725, 734 (9th Cir. 2009) (citation and internal quotation marks

25  omitted). Thus, in seeking to determine whether successive actions involve the same "primary

26  right," courts look at "whether plaintiff suffered injury to more than one interest." <u>L.A. Branch</u>

27  <u>NAACP v. L.A. Unified Sch. Dist.</u>, 750 F.2d 731, 738 (9th Cir. 1984). "[T]hat the same facts are

28  involved in both suits is not conclusive." <u>Agarwal v. Johnson</u>, 25 Cal.3d 932, 954–55 (1979),

disapproved of on other grounds by White v. Ultramar, Inc., 21 Cal.4th 563 (1999) (citing Langley v. Schumacker, 46 Cal.2d 601, 602-603 (1956)).

Harris argues that Cox "seek[s] to protect the same primary right in this action that [he] sought to protect in the State Court Action: the right to be free from allegedly unfounded charges of criminal conduct." Doc. No. 154 at 7:22-23; see also id. at 5:10-12 ("[T]he doctrine of res judicata now bars this federal action based on Cox's assertion of the same primary right in both cases: to be free from allegedly unfounded charges of criminal conduct.").

The Court accepts, for purposes of this motion, Harris's characterization of the primary right at issue in the State Court Action. That characterization does not apply here, however, because the Court found, in deciding Harris's motion to dismiss the Complaint, that Cox's § 1983 claims against Harris arise not from the allegedly false police report, but from Harris's alleged role as a *de facto* state actor and conspirator in prolonging Cox's prosecution, undercutting his defense and otherwise exposing him to peril by destroying, failing to preserve and obstructing access to potentially exculpatory evidence. For example, the Court stated as follows:

> The Complaint … does not merely allege a false police report. It goes well beyond that to allege actions taken by the County Defendants and Harris to deprive Cox of perishable evidence directly relevant to rebutting Harris's assertions that she was held captive, forced to engage in nonconsensual sexual activity and otherwise abused by Cox over a period of three days.
>
> …
>
> Crediting [Cox's] allegations, … it is reasonable to infer that, after Harris made her initial report to police, Harris and the County Defendants worked in concert not only to perpetuate Harris's false accusations but also to destroy and delay the production of exculpatory evidence directly relevant to Cox's defense.

Doc. No. 122 at 14:1-26.

As noted above, the elements of a claim for malicious prosecution under California law are that an "action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in the plaintiff's favor; (2) was brought without probable cause; and (3) was initiated with malice." Casa Herrera, 32 Cal. 4th at 341. Thus, a malicious prosecution claim creates liability and provides relief based on how an action was "commenced," "brought" and "initiated," but does not address wrongdoing (such as the destruction or fabrication of evidence) in

1  the prosecution of a case. See Cuevas-Martinez v. Sun Salt Sand, Inc., 35 Cal. App. 5th 1109,

2  1118–19 (2019) (a "malicious prosecution action seeks 'to vindicate a single primary right—the

3  right to be free from defending against a lawsuit initiated with malice and without probable cause'

4  " (quoting Hindin v. Rust, 118 Cal. App. 4th 1247, 1258 (2004))). The claims against Harris in

5  this action, by contrast, arise from alleged misconduct after charges had been filed, thereby

6  implicating not Cox's right to be free from "allegedly unfounded charges of criminal conduct" (or

7  his right to be free from "defending against a lawsuit initiated with malice and without probable

8  cause"), but his right to be free from violations of his rights in the course of prosecution. C.f.

9  California v. Trombetta, 467 U.S. 479, 489 (1984) (due process requires that the government

10 preserve evidence that "possess[es] an exculpatory value that was apparent before the evidence

11 was destroyed" and is "of such a nature that the defendant would be unable to obtain comparable

12 evidence by other reasonably available means").

13      Harris implicitly acknowledges that Cox's state law malicious prosecution claim could

14 only arise from the filing of criminal charges against Cox based on Harris's November 13, 2015

15 report to the MCS, but argues that the res judicata bar nonetheless applies to claims involving the

16 destruction of evidence and alleged misconduct in connection with code enforcement and the

17 receivership because such claims "*could* have been raised" in the State Court Action. Doc. No.

18 133 at 11:2-23, n.3 (emphasis original). Under California law, however, res judicata only bars

19 litigation where the "requisite identity" to a prior lawsuit has been established.  Agarwal, 25

20 Cal.3d at 954–55. "Unless the … cause of action in the two actions is identical, the first judgment

21 does not stand as a bar to the second suit." Dunkin v. Boskey, 82 Cal. App. 4th 171, 181–82

22 (2000) (citing Agarwal, 25 Cal.3d at 954; Vary v. Forrest, 201 Cal. App. 3d 1506, 1511 (1988);

23 and Winn v. Board of Pension Commissioners, 149 Cal. App. 3d 532, 537 (1983)). To the extent a

24 cause of action in a prior lawsuit implicates the same primary right as a cause of action in a

25 subsequent lawsuit—and the causes of action are therefore deemed "identical" for res judicata

26 purposes—all theories of recovery corresponding to that cause of action are barred in the later

27 action regardless of whether they were alleged in the first action. See San Diego Police Officers'

28 Ass'n, 568 F.3d at 734. Where, as here, however, the second lawsuit does not involve the same

1  cause of action as the first lawsuit (from a primary right standpoint), res judicata does not apply,

2  even if facts underlying claims in second lawsuit overlap with facts underlying the claims in the

3  first lawsuit and even if facts underlying claims in the second lawsuit were known to the plaintiff

4  at the time of the first lawsuit. See Dunkin, 82 Cal. App. 4th at 181–82.

5          As set forth above, the claims against Harris in this action do not involve the same primary

6  right as the claim against Harris in the State Court Action. Consequently, they are not barred by

7  res judicata. See Agarwal, 25 Cal.3d at 954–55. The Court will now address the separate question

8  of whether Cox was afforded due process in the State Court Action, starting with a review of

9  applicable law.

10 **C.    Due Process**

11         **1.      Applicable Law**

12                 a.      Limitations on the Preclusive Effect of State Court Judgments

13         As noted above, § 1738 "requires federal courts to give the same preclusive effect to state

14 court judgments that those judgments would be given in the courts of the State from which the

15 judgments emerged." Kremer v. Chem. Const. Corp., 456 U.S. 461, 466 (1982).

16         The Due Process Clause of the Fourteenth Amendment, however, "places some limits on

17 the doctrine of res judicata" in that "only proceedings that meet the minimal requirements of due

18 process are accorded preclusive effect." Commc'ns Telesystems Int'l v. California Pub. Util.

19 Comm'n, 196 F.3d 1011, 1018 (9th Cir. 1999) (citing Kremer, 456 U.S. at 483–85); Kremer, 456

20 U.S. at 482 ("The State must … satisfy the applicable requirements of the Due Process Clause.");

21 Adams, 2012 WL 260160 at *10 ("Courts should not afford preclusive effect to state court

22 judgments that fail to 'satisfy the minimum procedural requirements of the Fourteenth

23 Amendment's Due Process Clause.' " (quoting Kremer, 456 U.S. at 481).

24         As a general rule, a proceeding that does not provide a party with a " 'full and fair

25 opportunity' to litigate" does not qualify for claim preclusion. Kremer, 456 U.S. at 480-81; cf.

26 Bridge Aina Le'a, LLC v. Land Use Comm'n, 950 F.3d 610, 639 (9th Cir. 2020), cert. denied sub

27 nom. Bridge Aina Le'a, LLC v. Hawaii Land Use Comm'n, 141 S. Ct. 731 (2021) ("Federal

28 courts will not afford preclusive effect to a prior state court judgment if the party lacked a full and

fair opportunity to litigate the issue on the merits."); United States v. Banco Intrenacional/Bital S.A., 110 F. Supp. 2d 1272, 1279 (C.D. Cal. 2000) ("For claim preclusion purposes, the requirement of a full and fair opportunity to litigate stems from the right to procedural due process."). Courts, however, must "bear in mind that no single model of procedural fairness, let alone a particular form of procedure, is dictated by the Due Process Clause." Kremer, 456 U.S. at 483 (citations omitted). Thus, the Court must determine, at the threshold, what due process requirements attach to the adjudication of an anti-SLAPP motion.

    b.  Process and Standard for Deciding Anti-SLAPP Motions

  "An anti-SLAPP motion is filed early in [a] case, usually within 60 days of service of the complaint," and "[d]iscovery is stayed once the motion is filed." Sweetwater, 6 Cal.5th at 943 (citing Cal. Code Civ. Proc. § 425.16, subd. (f) & (g)). The "central aim" of California's anti-SLAPP law is "screening out meritless claims that arise from protected activity, before the defendant is required to undergo the expense and intrusion of discovery." Id. (quoted source and internal quotation marks omitted). Suits subject to anti-SLAPP motions are "generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so." Wilcox v. Superior Ct., 27 Cal. App. 4th 809, 816–17 (1994), as modified on denial of reh'g (Sept. 15, 1994), and disapproved of on other grounds by Equilon Enterprises v. Consumer Cause, Inc., 29 Cal.4th 53 (2002) (citation omitted).

  As stated above, courts follow a two-step process in deciding anti-SLAPP motions. Roberts, 660 F.3d at 1163. First, "the defendant must make a *prima facie* showing that the suit arises from an act in furtherance of the defendant's rights of petition or free speech." Id. (quoted source and internal quotation marks omitted). If that showing is made, "the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims." Id. (quoted source and internal quotation marks omitted).

  The California Supreme Court has characterized the second prong of anti-SLAPP analysis as the "minimal merit" prong. Navellier v. Sletten, 29 Cal.4th 82, 95 n.11 (2002). Some courts have found that "the burden of proof the trial court must apply is 'much like that used in determining a motion for nonsuit or directed verdict, which mandates that no reasonable jury

could find for the plaintiff.' " Adams, 2012 WL 260160 at *4 (quoting Bulletin Displays, LLC v. Regency Outdoor Advert., Inc., 448 F. Supp. 2d 1172, 1179 (C.D. Cal. 2006)); Wilcox, 27 Cal. App. 4th at 823 (adopting nonsuit framework for anti-SLAPP motions). "Other courts have found the anti-SLAPP motion analysis to be similar—if not identical—to that used in deciding a motion for summary judgment." Adams, 2012 WL 260160 at *4 (collecting cases); see also Sweetwater, 6 Cal.5th at 940 (noting that the California Supreme Court has "described this second step as a 'summary-judgment-like procedure' " (quoted source omitted)); Varian Med. Sys. v. Delfino, 35 Cal.4th 180, 192 (2005) (stating that California's anti-SLAPP statute "establishes a procedure where the trial court evaluates the merits of the lawsuit using a summary judgment-like procedure at an early stage of the litigation").

  "A plaintiff is not required 'to *prove* the specified claim to the trial court' " in connection with the "minimal merit" determination. Mann v. Quality Old Time Serv., Inc., 120 Cal. App. 4th 90, 105 (2004), disapproved of on other grounds by Baral v. Schnitt, 1 Cal. 5th 376 (2016) (quoting Rosenthal v. Great Western Fin. Securities Corp., 14 Cal.4th 394, 411–412 (1996)). The court's "inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment." Sweetwater, 6 Cal.5th at 940 (quoted source and internal quotation marks omitted). The court "accepts the plaintiff's evidence as true," id. (quoted source and internal quotation marks omitted); Sycamore Ridge v. Naumann, 157 Cal. App. 4th 1385, 1389 (2008) ("… the court's responsibility is to accept as true the evidence favorable to plaintiff"), and "must draw 'every legitimate favorable inference' from the plaintiff's evidence." Cuevas-Martinez, 35 Cal. App. 5th at 1117 (quoting Wilcox, 27 Cal. App. 4th at 828).

  "The court's consideration of the defendant's evidence is limited to determining whether it defeats plaintiff's showing as a matter of law." Adams, 2012 WL 260160 at *3–4 (citation omitted); Cuevas-Martinez, 35 Cal. App. 5th at 1117. "The court does not weigh evidence, [] resolve conflicting factual claims," Sweetwater, 6 Cal.5th at 940 (quoted source omitted), or "make credibility determinations." Kashian v. Harriman, 98 Cal. App. 4th 892, 906 (2002); Adams, 2012 WL 260160 at *3–4 ("The trial court does not weigh the evidence or make

credibility determinations."). In other words, "[t]he court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment." Baral, 1 Cal.5th at 396.

    c.  Due Process in Connection with the Second Prong of Anti-SLAPP Analysis

  "In order to satisfy due process, the burden placed on the plaintiff must be compatible with the early stage at which the motion is brought and heard … and the limited opportunity to conduct discovery …." Wilcox, 27 Cal. App. 4th at 823. Moreover, courts must observe "substantive and procedural limitations that protect plaintiffs against overbroad application of the anti-SLAPP mechanism." Sweetwater, 6 Cal.5th at 943 (quoting Briggs v. Eden Council for Hope & Opportunity, 19 Cal.4th 1106, 1122-1123 (1999)); Equilon Enterprises v. Consumer Cause, Inc., 29 Cal.4th 53, 65 (2002) (finding that the anti-SLAPP statute would not "become a weapon to chill the exercise of protected petitioning activity by people with legitimate grievances" because "[t]he [California] Legislature … has provided, and California courts have recognized, substantive and procedural limitations that protect plaintiffs against overbroad application of the anti-SLAPP mechanism"). Weighing evidence or requiring a plaintiff to prove a claim in connection with deciding an anti-SLAPP motion, for example, violates "the plaintiff's right to jury trial." Wilcox, 16 Cal. App. 4th at 537–538; see also Sweetwater, 6 Cal.5th at 943. Thus, as a matter of due process, section 425.16 must be read "as requiring the court to determine only if the plaintiff has stated and substantiated a legally sufficient claim." Sweetwater, 6 Cal.5th at 943 (quoting Briggs, 19 Cal.4th at 1122-1123) (internal quotation marks omitted)); see also Rosenthal, 14 Cal.4th at 412 ("This court and the Courts of Appeal, noting the potential deprivation of jury trial that might result were these statutes construed to require the plaintiff first to prove the specified claim to the trial court, have instead read the statutes as requiring the court to determine only if the plaintiff has stated and substantiated a legally sufficient claim."); Lafayette Morehouse, Inc. v. Chron. Publ'g Co., 37 Cal. App. 4th 855, 869 (1995) ("properly construed section 425.16, subdivision (b) does not violate the right to a jury trial," because it "simply" requires a plaintiff "to demonstrate by affidavit a prima facie case").

    d.  Evidence Considered on the Second Prong of Anti-SLAPP Analysis

In *Sweetwater Union High School District v. Gilbane Building Company*, the California Supreme Court addressed a conflict in the California Court of Appeal on the "narrow question" of "what kind of evidence a court may consider in ruling on a pretrial anti-SLAPP motion in determining a plaintiff's probability of success." Sweetwater, 6 Cal.5th at 937, 939 n.7.

There, the plaintiff school district approved several contracts with defendants involving construction funded by a bond measure. Sweetwater, 6 Cal.5th at 937-38. A criminal bribery investigation ensued, and the district brought a lawsuit to void the contracts, alleging that the defendants had improperly made contributions to and on behalf of school district officials. Id. at 938. Two of the defendants brought a special motion to strike under section 425.16, asserting that the complaint stemmed from political expression. Id. at 938. In opposing the motion, the school district relied on guilty and no contest pleas from persons who had given or received gifts, as well as excerpts from grand jury testimony. Id. at 939. Defendants objected on the ground that such evidence was outside the scope of section 425.16, subdivision (b)(2), which states that "the court shall consider the pleadings, and supporting and opposing affidavits" in deciding anti-SLAPP motions. See id. The trial court overruled defendants' evidentiary objections and denied the special motion to strike. Id. The Court of Appeal affirmed. Id.

In affirming the Court of Appeal, the California Supreme Court stated that the question of "what kind of evidence a court may consider" in deciding an anti-SLAPP motion had "two aspects": one involving "the form in which the evidence is produced" and the other involving "whether that evidence will be admissible at an eventual trial." Sweetwater, 6 Cal.5th at 937.

As to the first issue—form of evidence—the court found that declarations and "statements that are the equivalent of affidavits and declarations because they were made under oath or penalty of perjury in California" are properly considered (in addition to affidavits and pleadings) in "determining a plaintiff's probability of success." Sweetwater, 6 Cal.5th at 945. This ruling was consistent, the court stated, with the "substantive and procedural limitations that protect plaintiffs against overbroad application of the anti-SLAPP mechanism" in that it addressed "the potential deprivation of jury trial that might result were [section 425.16 and similar] statutes construed to require the plaintiff first to *prove* the specified claim to the trial court, … [as opposed to] requiring

the court to determine only if the plaintiff has stated and substantiated a legally sufficient claim.' "
Id. at 943 (quoting Briggs, 19 Cal.4th at 1122-1123) (emphasis original).

The court then turned to the fact that courts had "long required that [] evidence relied on by
the plaintiff be admissible at trial." Sweetwater, 6 Cal.5th at 946. In examining this issue, the court
studied *Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles*, 117 Cal. App. 4th
1138 (2004). Id. at 947. In *Fashion 21*, a clothing retailer alleging defendants had handed out
defamatory flyers in front of its stores opposed defendants' anti-SLAPP motion based "entirely"
on an edited videotape purporting to show such activity. Fashion 21 v. Coal. for Humane
Immigrant Rts. of Los Angeles, 117 Cal. App. 4th 1138, 1146, as modified on denial of reh'g
(May 18, 2004). Defendants objected that the video had not been properly authenticated under
section 1402 of the California Evidence Code, which provides that the party offering an edited
videotape into evidence at trial bears the burden of showing the editing did not distort the meaning
of the activities depicted in the tape. Id.at 1146-47. The trial court overruled the objection and
"considered the tape in concluding Fashion 21 had established a reasonable probability of success
of its libel claim." Id. at 1146.

In affirming, the Court of Appeal recognized that failure to satisfy section 1402 of the
Evidence Code would preclude use of the video at trial, but found that the "the result of failing to
comply with [section 1402 was] different under the SLAPP statute" because "the proper view of
'admissible evidence' for purposes of the SLAPP statute is evidence which, by its nature, is
capable of being admitted at trial, i.e., evidence which is competent, relevant and not barred by a
substantive rule." Fashion 21, 117 Cal. App. 4th at 1146. "Evidence … which is only excludable
on the ground that it lacks proper authentication stands on a different footing in terms of its ability
to support [a] plaintiff's cause of action," the Court of Appeal stated, because "evidence that is
made inadmissible only because the plaintiff failed to satisfy a precondition to its admissibility
could support a judgment for the plaintiff assuming the precondition could be satisfied" and
"[g]enerally, authentication problems tend to be among the easiest evidentiary dilemmas to
overcome …." Id. at 1148.

The California Supreme Court adopted—and extended—the reasoning in *Fashion 21*,

28

finding that the records at issue in *Sweetwater* were properly used in deciding the anti-SLAPP motion because they were "potentially admissible at trial" and further noting that the "signers" of records in question "or other competent witnesses" could testify at trial in support the plaintiff's claims, "supplant[ing] any improper reliance" on the records themselves. Sweetwater, 6 Cal.5th at 949.

Finally, the California Supreme Court stated that considerations bearing on the acceptable forms of evidence also applied to the question of whether evidence had to be admissible at trial, finding, *inter alia*, that: due to "the timing of an anti-SLAPP motion and the stay of discovery," "[i]t may not be possible at the hearing to lay a foundation for trial admission, even if such a showing could be made after full discovery"; that "[w]hile it may prove difficult at this early stage to obtain declarations" from certain witnesses, "it is not unreasonable to expect that [such] witnesses may be deposed and/or produced for trial"; and that "[t]o strike a complaint for failure to meet evidentiary obstacles that may be overcome at trial" could "abort potentially meritorious claims due to a lack of discovery." Sweetwater, 6 Cal.5th at 949.

### 2. Analysis

The Court is cognizant that "[f]ederal district courts, as courts of *original* jurisdiction, may not serve as appellate tribunals to review errors allegedly committed by state courts," Turnbow v. Pac. Mut. Life Ins. Co., 934 F.2d 1100, 1103 (9th Cir. 1991) (quoted sources and internal quotation marks omitted) (emphasis original), and that a court may not disregard the preclusive effect of a decision merely because the court concludes the decision is incorrect. Adams, 2012 WL 260160 at *10 (citing Cal. Coastal Comm'n v. Sup. Court, 210 Cal. App. 3d 1488, 1501 (1989)). Thus, the Court will look solely at whether the State Court Action afforded Cox due process in connection with the anti-SLAPP motion. See Kremer, 456 U.S. at 481–82.

To synopsize a few key facts, the trial court in the State Court Action set forth two grounds for granting Harris's anti-SLAPP motion. First, the trial court found that by dismissing three of four theories of recovery, Cox had gutted his three-page pro se complaint and therefore lacked the factual allegations required to state a claim for malicious prosecution under California law. Second, the trial court found that Harris was likely to prevail on an independent investigation

defense because a report prepared by MCS indicated that Cox had falsely denied ever having sexual relations with Harris. In addition, the trial court found that the YouTube video could not be used in deciding the motion due to lack of authentication and lack of foundation, and because Cox had failed to provide the transcript of the video required by Rule 2.1040(b)(1) of the California Rules of Court. Finally, the trial court excluded the June 2, 2017 Deposition Transcript solely for lack of authentication.

The appellate court rejected both of the trial court's rationales for granting the anti-SLAPP motion, finding that the dismissal of other causes of action did not mean that the facts underlying Cox's malicious prosecution claim had been "removed or stricken from the pleading," Doc. No. 134-2 at 15, and that the independent investigation defense "involve[d] issues of fact that, on the record before the trial court, could not be resolved as a matter of law …." Id. at 19. The appellate court then found, on de novo review, that Cox had made a prima facie showing that the criminal case had been instigated by Harris with malice and without probable cause, but that "there was no evidence on the essential issue of a favorable termination." Id. at 19, 22. Consequently, the appellate court found that Cox had failed to make a prima facie showing that dismissal of the criminal charges against him "reflected his innocence," id. at 19, 22, and affirmed the trial court order granting the anti-SLAPP motion, in addition to affirming the trial court order awarding attorneys fees to Harris and finding that Harris was entitled to her costs on appeal. Id. at 23.

The record before the appellate court included six records relevant to the instant due process analysis: (i) the November 13, 2015 Sheriff's Report, which showed Cox was arrested for seven felonies (including rape, sodomy, oral copulation, kidnapping, false imprisonment and criminal threats) on November 13, 2015; (ii) a sworn declaration in which Cox denied the criminal charges against him; (iii) the June 30, 2016 Supplement to the November 13, 2015 Sheriff's Report showing Harris sent dozens of text messages to Cox during the three-day period she claimed to have been attacked and imprisoned; (iv) the request for and order granting dismissal of all criminal charges against Cox, dated August 14, 2017; (v) the June 2, 2017 Deposition Transcript; and (vi) the YouTube video. The trial court and appellate court both credited the first four of these records (at least in part) in deciding the anti-SLAPP motion, but neither court

credited either the June 2, 2017 Deposition Transcript or the YouTube video.

The Court does not see how the appellate court reached the conclusion that there was "no evidence" as to the "favorable termination" of the criminal case against Cox. Relevant records credited by both the trial court and the appellate court show, at a minimum, that Cox was charged with some of the most heinous crimes imaginable; that Cox denied all charges against him; that phone records compiled and maintained by MCS itself squarely contradicted Harris's accusations; that Mariposa County sought dismissal of all charges against Cox, without explanation, in a boilerplate, three-line filing after nearly two years of prosecuting the case; and that the trial court granted the dismissal the same day, without explanation of any kind. Not only does that strike the Court as "evidence" bearing on the "favorable termination" of the criminal case, but in the Court's view, the abrupt dismissal of a horrifying sexual assault case without explanation at the request of the prosecution and with the immediate acquiescence of the court after nearly two years of prosecution is sufficient for a jury to infer that Mariposa County had come to the conclusion that it did not have a case against Cox. See Cuevas-Martinez, 35 Cal. App. 5th at 1117 (in deciding an anti-SLAPP motion, a court must "must draw 'every legitimate favorable inference' from the plaintiff's evidence"). Similarly, the Court has trouble reconciling the exclusion of the YouTube video with *Fashion 21* and *Sweetwater* since, at a minimum, it appears Cooke himself could have been called to testify at trial regarding the reasons for dismissing the charges against Cox even if the video itself could not be made admissible.[10] See Sweetwater, 6 Cal.5th at 949 (finding that records could be used in deciding anti-SLAPP motion where "signers" or "other competent witnesses" could testify at trial, supplant[ing] any improper reliance" on the records themselves).

The most black-and-white problem from a due process standpoint, however, has to do with the June 2, 2017 Deposition Transcript. As noted above, the trial court excluded the June 2, 2017

---

[10] As noted above, the trial court cited Cox's failure to comply with Rule 2.1040(b)(1) of the California Rules of Court as an independently sufficient basis for excluding the YouTube video. Rule 2.1040(b)(1), however, appears in Title 2 ("Trial Court Rules"), Division 8 ("Trials") of the California Rules of Court. In other words, it pertains to the admissibility of evidence at trial. Consequently, mere failure to comply Rule 2.1040(b)(1) does not, without more, provide a proper ground for excluding evidence on a pre-trial anti-SLAPP motion. See Sweetwater, 6 Cal.5th at 946 (rejecting view that evidence must be "admissible at trial"). While it is not the basis for any aspect of this order, the trial court's reliance on Cox's supposed Rule 2.1040(b)(1) violation in excluding the YouTube video only reinforces the Court's view that improper standards that do not satisfy due process—and that are plainly not in alignment with controlling case law—were applied in adjudicating the anti-SLAPP motion.

Deposition Transcript solely for lack of authentication. Doc. No. 53 at 56:9-13. That was improper

because there was every indication that the transcript could be authenticated prior to trial, see

Sweetwater, 6 Cal.5th at 947 ("evidence may be considered at the anti-SLAPP motion stage if it is

reasonably possible the evidence … will be admissible at trial"), and mere lack of authentication

has been squarely rejected as a basis for excluding evidence in opposition to an anti-SLAPP

motion. See Fashion 21, 117 Cal. App. 4th at 1148 ("[g]enerally, authentication problems tend to

be among the easiest evidentiary dilemmas to overcome …."). In ruling as it did, the trial court

placed an undue burden on Cox by effectively requiring him to resolve the anonymous third-party

objection to production of a certified transcript (which appeared to be the only impediment to

authentication) prior to the hearing on the anti-SLAPP motion. See Sweetwater, 6 Cal.5th at 949

("the timing of an anti-SLAPP motion and the stay of discovery" pose challenges with due process

implications for plaintiffs opposing anti-SLAPP motions). Thus, the trial court violated the

"substantive and procedural limitations that protect plaintiffs against overbroad application of the

anti-SLAPP mechanism," Equilon Enterprises, 29 Cal. 4th at 65, and in doing so violated Cox's

due process rights to discovery and jury trial. Wilcox, 27 Cal. App. 4th at 823 ("In order to satisfy

due process, the burden placed on the plaintiff must be compatible with the early stage at which

the motion is brought and heard … and the limited opportunity to conduct discovery ….");

Sweetwater, 6 Cal.5th at 949 (stating that "[t]o strike a complaint for failure to meet evidentiary

obstacles that may be overcome at trial" could "abort potentially meritorious claims due to a lack

of discovery").

     The appellate court, for its part, acknowledges that the June 2, 2017 Deposition Transcript

was among the exhibits submitted by Cox and states that "the trial court sustained Harris's

objection on the ground it was not adequately authenticated." Doc. No. 134-2 at 9. The appellate

court did not, however, address why exclusion of the June 2, 2017 Deposition Transcript was

proper (or immune from appellate review) or make any use of the June 2, 2017 Deposition

Transcript in determining, de novo, whether Cox's malicious prosecution claim had "minimal

merit." Crediting the June 2, 2017 Deposition Transcript, Cox's showing as to the "favorable

termination" element of his malicious prosecution claim included not only all the factors discussed

above, but also the fact that the abrupt and unexplained dismissal of the two-year sex-crime case

against him occurred just two months or so after Harris gave sworn testimony that (aside, possibly,

from an event in 2010 and an event involving a stalker neighbor in Rohnert Park) she had never

been the victim of sexual assault. Such evidence plainly "tends to indicate" that Cox was innocent,

see Casa Herrera, 32 Cal.4th at 341, and Cox was entitled to that "legitimate favorable inference"

in the adjudication of the pre-trial anti-SLAPP motion. Cuevas-Martinez, 35 Cal. App. 5th at

1117.

       To the extent the state courts failed to credit the June 2, 2017 Deposition Transcript for

mere lack of authentication, they placed a burden on Cox that was not "compatible with the early

stage at which the [anti-SLAPP] motion [was] brought and heard … and the limited opportunity to

conduct discovery …." Wilcox, 27 Cal. App. 4th at 823. And to the extent the appellate court

concluded that Cox could not carry his evidentiary burden even with the June 2, 2017 Deposition

Transcript, they effectively required more than a mere prima facie showing as to the "favorable

termination" element of his malicious prosecution claim. See Sweetwater, 6 Cal.5th at 940

(court's "inquiry [] limited to whether the plaintiff has stated a legally sufficient claim and made a

prima facie factual showing sufficient to sustain a favorable judgment"); Rosenthal, 14 Cal.4th at

412 (similar). In either case, there was a failure to observe the "substantive and procedural

limitations that protect plaintiffs against overbroad application of the anti-SLAPP mechanism" and

a concomitant lack of due process. Consequently, none of the orders relating to the anti-SLAPP

motion in the State Court Action (including the trial court order granting the motion, the trial court

order awarding attorneys fees, and the appellate court order affirming the trial court order and

awarding costs) are entitled to preclusive effect in this Court. Commc'ns Telesystems Int'l, 196

F.3d at 1018 ("only proceedings that meet the minimal requirements of due process are accorded

preclusive effect"); Adams, 2012 WL 260160 at *10 ("Courts should not afford preclusive effect

to state court judgments that fail to 'satisfy the minimum procedural requirements of the

Fourteenth Amendment's Due Process Clause.' " (quoting Kremer, 456 U.S. at 481)).

## **CONCLUSION**

       Harris has not met her burden to show that the claims against her in this action involve the

same primary right as the state law malicious prosecution claim in the State Court Action. Further, the Court finds that adjudication of the State Court Action did not satisfy the due process requirements applicable to pre-trial anti-SLAPP motions, as recognized by the California Supreme Court and the California Court of Appeal. For each of these independently sufficient reasons, Harris's motion to dismiss the FAC will be denied.

Harris's putative joinder, Doc. No. 139, in the motion to dismiss the FAC brought by the remaining County Defendants (Mariposa County, Atkinson and Smith), Doc. No. 135, will be addressed in the Court's forthcoming order on that motion.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1.  Defendant Ashley Harris's motion to dismiss the First Amended Complaint ("FAC"), Doc. No. 132, is DENIED;

2.  Harris shall answer the FAC at the time and in the manner set forth in the Court's forthcoming order on the County Defendants' pending motion to dismiss the FAC.

IT IS SO ORDERED.

Dated: __September 13, 2022__     _____

                             SENIOR  DISTRICT  JUDGE