1
2
3
4

**UNITED STATES DISTRICT COURT**

5

**EASTERN DISTRICT OF CALIFORNIA**

6
7

JERRY COX, an Individual, and JDC LAND
COMPANY, LLC, a limited liability company,

CASE NO. 1:19-cv-01105-AWI-BAM

8

Plaintiffs,

**ORDER GRANTING IN PART AND
DENYING IN PART COUNTY
DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

9
10

v.

11

MARIPOSA COUNTY; SHERIFF DEPUTY
WILLIAM ATKINSON; SHERIFF DEPUTY
WESLEY SMITH; ASHLEY HARRIS, AND
DOES 1 THROUGH 100, INCLUSIVE,

12
13

Defendants.

(Doc. No. 135)

14
15
16
17

Defendants Mariposa County, William Atkinson and Wesley Smith (collectively, the

18

"County Defendants") bring a motion to dismiss certain aspects of the First Amended Complaint

19

("FAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. No. 135. The

20

motion has been fully briefed and deemed suitable for decision without oral argument pursuant to

21

Local Rule 230(g). Doc. No. 157. For the reasons that follow, the motion will be granted in part

22

and denied in part.

23

**BACKGROUND**

24

Many of the allegations in the FAC are summarized in the Court's September 13, 2022

25

order denying Defendant Ashley Harris's motion to dismiss the FAC. See Do. No. 166. This

26

section focuses, in particular, on allegations most pertinent to the arguments set forth in the

27
28

1  County Defendants' motion to dismiss.[1]

2       Plaintiff Jerry Cox ("Cox") once owned—through Plaintiff JDC Land Company, LLC

3  ("JDC")—several hundred acres of land in Mariposa County (the "Property") where he

4  resided and "operated a farm, ranch and agritourism business."[2] Doc. No. 128 ¶ 55.

5       In October 2015, Cox commenced a sexual relationship with Defendant Ashley Harris,

6  who briefly resided in a guest cabin on the Property. Doc. No. 128 ¶¶ 56-60. Cox asked Harris to

7  vacate the guest cabin to make room for paying agritourism clients. Id. ¶ 61. Harris became upset

8  and falsely reported to the Mariposa County Sheriff ("MCS") that Cox had raped and otherwise

9  sexually abused her. Id. 62-65. Harris's account was contradicted by Harris's cell phone records,

10  eyewitness testimony and other evidence, but the MCS deliberately failed to collect obviously

11  exculpatory evidence and numerous meritless charges were brought against Cox on November 13,

12  2015. Id. 65-77. Wrongdoing with respect to the collection, preservation and presentation of

13  evidence continued as the criminal case against Cox was being prosecuted. Id. at 75-93.

14       On October 14, 2016, Mariposa County and MCS executed a civil search warrant calling

15  for "any Code Enforcement Officer, Building and Safety Official or Inspector, Fire Inspector,

16  Environmental Inspector, Planning or Zoning Inspector, Animal Control Officer …, Health

17  Officer, Tax Officer, Assessor, Peace Officer and/or any other law enforcement related agent or

18  agent of the County" to conduct an inspection of "all areas of the interior and exterior of all

19  buildings, structures, homes, houses, rooms, barn, garages, vehicles, basements, attics, sheds,

20  units, open fields, yards, storage facilities, compartments, drawers, cabinets, papers, and electronic

21  files located on [the Property]." Doc. No. 128 ¶ 104. The warrant was based on an affidavit

22  containing false allegations about Cox in connection with the criminal case, id. ¶¶ 105 &156, and

23  the inspection "identified 101 so-called 'dangerous violations' " " on the Property that were

24  "completely false and/or exaggerated." Id. ¶¶ 8 ("the alleged code violations were all phony and

25

26  _____
[1] Plaintiffs and the County Defendants request that the Court take notice of various records relating to an action in
Mariposa County Superior Court involving property at issue in this case. See Doc. Nos. 137, 150 & 156. All three

27  requests are GRANTED. See Duckett v. Godinez, 67 F.3d 734, 741 (9th Cir. 1995) ("We may take notice of
proceedings in other courts whether in the federal or state systems.").

28  [2] "Agritourism … involves an agriculturally based operation or activity that brings visitors to a farm or ranch." Doc.
No. 128 ¶ 55.

1  made up"), 105-06, 114-29 (alleging facts indicating that specific violations—including, for

2  example, violations involving a bridge, septic system and jacks—were "exaggerated and

3  falsified").

4        On Friday, December 2, 2016, Mariposa County issued a Notice and Order to Repair or

5  Abate ("N&O") giving JDC 30 days over the holidays to repair the violations supposedly

6  identified in the October 14, 2016 search. Id. ¶¶ 105-06, 114-29, 175.

7        On March 13, 2017, Mariposa County filed a Verified Complaint for Nuisance and

8  Abatement or Receivership ("Receivership Complaint") against JDC (and Continental Heritage

9  Insurance Company[3]) in connection with Property based on the violations addressed in the N&O.

10  Doc. No. 128 ¶ 114. The Receivership Complaint stated that the action was brought "in order to

11  correct numerous illegal, substandard and dangerous conditions on the [] Property," Doc. No. 137-

12  1 at 3:9-10, including violations of, *inter alia*, the "Health and Safety Code ('HSC'), California

13  Government Code ('CGC'), the California Public Resources Code ('CPRC'), California Building

14  Code ('CBC'), California Residential Code ('CRC'), California Fire Code ('CFC'), California

15  Electrical Code ('CEC'), California Plumbing Code ('CPC'), California Mechanical Code

16  ('CMC'), and the Mariposa County Code ('MCC')," as well as a "Land Conservation

17  (Williamson) Act contract encumbering" the Property. Id. at 5:4-10.[4]

18        Based on these and other such allegations, the Receivership Complaint set forth six causes

19  of action against JDC and Continental. The first cause of action was for a violation of California

20  Health and Safety Code § 17980 et seq.—characterized in the filing as "State Housing Law"—

21  alleging that the Property "contains buildings constructed, altered, converted, maintained, and

22  used in a manner that violates State and local laws." Doc. No. 137-1 at 8:3-6. The second cause of

23  action was for "public nuisance" in violation of the California Civil Code, alleging that "the

24  numerous violations of State and local law … that [] exist[ed] on the [] Property pose[d] a severe

25  and immediate threat to the health and safety of the occupants, nearby residents, and the public."

26

27  [3] The Receivership Complaint alleges that Continental had a "recorded interest" in the Property. Doc. No. 137-1 at
3:14-16. Continental is not a party to this action.

28  [4] Citations to page numbers in documents on the Court's electronic docket are to the page numbers in the CM/ECF
stamp at the top of each page.

Id. at 9:4-8. The third cause of action was based on the same facts as the second cause of action, but alleged nuisance based on the Mariposa County Code (as opposed to the California Civil Code). Id. at 10:1-6. The fourth cause of action was for "Transient Occupancy Tax Violations" under Chapter 3.36 of the Mariposa County Code, alleging that JDC "failed to obtain a transient occupancy registration certificate." Id. at 11:4-8. The fifth cause of action was for breach of contract, alleging that JDC violated California Land Conservation Act Contract No. 89-3, which supposedly limits use of the Property to "to the production of agricultural commodities for commercial purposes and certain other compatible uses enumerated in Mariposa County Resolution No. 10-150." Id. at 11:23-25. And the sixth cause of action was for violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17203, alleging that JDC failed to comply with building and housing codes and failed "to obtain a transient occupancy permit, to comply with transient occupancy reporting requirements and to pay transient occupancy taxes." Id. at 13:3-8.

On June 19, 2017, the County filed a motion for appointment of a receiver pursuant to Section 17980.7, subdivision (c), of the California Health and Safety Code. Doc. No. 128 ¶ 108. As alleged, the receiver selected by the County had a practice of using "alleged code violations as a pretext to seize properties from law abiding citizens" by "run[ning] up inflated and phony receivership bills, and us[ing] the receivership bills … to foreclose on … and sell the properties." Id. ¶ 47.

The same superior court judge was presiding over both the criminal case against Cox and the receivership action against JDC. On July 14, 2017, counsel for Cox in the criminal case sent a letter to the judge stating that they had subpoenaed a 2017 deposition transcript from Travelers Insurance in which Harris—the alleged victim in the criminal case—supposedly testified that she had not been the victim of any violent crime or sexual abuse since a stalking incident in Santa Rosa in 2012—three years before Cox's crimes allegedly took place. Doc. No. 77 at 1. Further, Cox's counsel requested that "the Court exercise its discretion pursuant to Penal Code section 1385 and dismiss [the] case in the interest of justice based in part upon the anticipated contents of [the deposition transcript]." Id. at 2.

On July 17, 2017, the superior court issued an order appointing a receiver over the Property on findings, *inter alia*, that: (i) the Property was "substandard,, … a public nuisance, and … maintained in a manner that violates State and local laws"; (ii) "[t]he building violations on [the Property] [were] so extensive and of such a nature that the health and safety of the residents and the public was] substantially endangered"; and (iii) that Mariposa County had "properly issued" the N&O and "afforded [JDC] a reasonable time to rehabilitate" the Property. Doc. No. 137-2 at 3:12-20. Further, the superior court gave the receiver "full and complete possession and control" of the Property, in addition to authorizing the receiver to "borrow funds as necessary" for work on the Property and to seek permission from the court to sell the property to recover such funds. Id. at 5:4, 6:1-10. The superior court did not conduct an evidentiary hearing or allow JDC to cross-examine witnesses in opposition to the motion, Doc. No. 137-3 at 51, and the order appointing the receiver was issued as drafted by the County, with no facts as to any specific code violations. Doc. No. 137-2. Cox timely appealed the order. Doc. No. 137-3 at 14.

On August 14, 2017, the Mariposa County District Attorney filed a request to dismiss all criminal charges against Cox pursuant to Section 1385 of the California Penal Code, as requested in the letter submitted to the superior court by Cox's defense counsel on July 14, 2017. Doc. No. 128 ¶ 156. The superior court granted the request the same day. Id.

On July 12, 2018, the receiver recorded a notice of default and election to sell the Property. Doc. No. 128 ¶ 128.

On October 5, 2019, the superior court issued an order confirming sale of the receivership property, authorizing the receiver to sell the property for $700,000 and collect payment for various costs supposedly incurred in the course of the receivership. Doc. No. 137-4. JDC appealed the order but could not afford a bond or undertaking, as necessary to halt the sale pending appeal. Doc. No. 137- 5 at 2.

Court of Appeal Opinion on Appeal of Order Appointing Receiver

On August 25, 2020, the California Court of Appeal issued a split opinion affirming the superior court order appointing the receiver. Doc. No. 137-3. In its appeal, JDC argued, *inter alia*, that the superior court violated due process by appointing a receiver based solely on the

declarations filed by the County, and without conducting an evidentiary hearing or allowing JDC

to conduct discovery, cross-examine Mariposa County's declarants or present testimony. See id.

The majority found that JDC had failed to preserve a due process argument and that, in any

event, JDC had failed to show that "due process requires the presentation of live testimony and

cross-examination in the context of appointing a receiver," Doc. No. 137-3 at 25. Justice

Poochigian dissented, finding that the question of due process was "well-preserved" for appeal

because JDC expressly requested a trial at which it could "put witnesses on," in addition to

arguing, *inter alia*, that "[a] trial [was] required before the court [could] determine the

appropriateness of any relief sought by the County" and that the County was improperly trying "to

have [the] matter tried by declaration." Id. at 44 (also noting that JDC stated that it "[did] not

consent" to having the receivership motion decided by declaration). Further, Justice Poochigian

found that "[g]iven the considerable powers of a receiver and the substantial property interests at

risk," the due process guarantees of the United States Constitution (as well as the due process

guarantees of the California Constitution) were applicable to the appointment of a receiver and

that "due process requires an evidentiary hearing with witness testimony and an opportunity for

cross-examination, before the government may divest a property owner of control over private

property under section 17980.7." Id. at 51 (also stating the Due Process Clause of the Fourteenth

Amendment was "designed to protect the fragile values of a vulnerable citizenry from the

overbearing concern for efficiency ...." (quoting Stanley v. Illinois, 405 U.S. 645, 656 (1972)

(internal quotation marks omitted)).

### Court of Appeal Opinion on Appeal of Order Confirming Sale of the Property

On April 10, 2020, the Court of Appeal affirmed the superior court order confirming sale

of the Property, finding that JDC's appeal was moot because the Property had already been sold.

Doc. No. 137-5 at 2. The sale proceeded after JDC filed its appeal because JDC had not

"obtain[ed] a bond or undertaking." Id. at 2-3, 5, 8 ("Had an undertaking or bond been obtained in

filing an appeal of the sale order, the trial court proceedings would have been stayed and no sale

would have occurred to cause mootness."). The Court of Appeal acknowledged that "the costs of a

bond or an undertaking necessary for a stay may be beyond the reach of many parties," but found

that the question of whether JDC could afford to stay the sale of the property was not

"dispositive." Id. at 8.

Superior Court Order Discharging the Receiver

The superior court judge presiding over Cox's criminal case and the receivership action

retired in January 2021, and at some point thereafter, a retired superior court judge from Monterey

County, Judge Robert Moody, was assigned to preside over what remained of the receivership

action. Doc. No. 150-1 at 10. On February 3, 2022, Judge Moody issued an order discharging the

receiver. Id. at 1.

The order set forth "some casual and some specific observations" on the Receivership

Action and the events that preceded it, which Judge Moody characterized as a "13-year

odyssey/fiasco." Id. at 2. Judge Moody stated, *inter alia*, that:

- "the asset forfeiture laws promulgated by the State of California over the years ….
  have turned out to often incentive misuse by police and governmental agencies,
  whose powers and leverage over citizens to seize their property strongly outweigh
  the powers of property owners to defend against seizures," Doc. No. 150-1 at 3;

- "asset forfeitures constitute increasingly significant proportions of the budgets of
  law enforcement agencies," id.;

- "the placement of property worth $700,000 into receivership and sold, without a
  trial, to effect nuisance abatements seems on its face draconian," id.;

- he was "haunted … by Justice Poochigian's dissenting contention that … federal
  constitutional due process principles should have required an evidentiary hearing"
  before appointing a receiver over the Property, id.;

- "the appointment of the receiver … created a second lopsided power situation
  which raises due process issues," in that the receiver "operate[d] as a quasi-law
  enforcement entity and a quasi-public service attorney" that was "arguably
  incentivized by the very statutory scheme that creates asset forfeitures … [to] sell
  the property with little actual court oversight," id. at 4;

- "due process" in cases such as the receivership action "means determining the

7

1    actual facts on the ground by the presentation of witnesses who get cross examined

2    by interested opponents," id.; and

3  • the court oversight in the receivership action was insufficient to ensure due process

4    because "the reality is that the court had no way to effectively evaluate whether,

5    for instance, it was going to take $475,000 or $26,000 to abate [] nuisances based

6    upon statements or declaration without the presentation of evidence challenged by

7    cross examination." Id.

8    Further, Judge Moody stated that he was "skeptical of many of the line-item billings

9  generated by the Receiver," Doc. No. 150-1 at 6; id. at 8 ("The court finds that there were

10 accounting and billing irregularities on the part of the Receiver …."), and that "the only funds

11 expended in achieving the restoration of the property in question to status of a code complaint

12 entity" were "the $26,000 which Defendant Cox/JDC Land expended." Id. at 7.

13    Against this backdrop, Cox and JDC allege against the County Defendants in the FAC: (i)

14 a 42 U.S.C. § 1983 ("Section 1983) claim for violation of substantive due process rights under the

15 Fourteenth Amendment; (ii) a Section 1983 claim for violation of procedural due process rights

16 under the Fourteenth Amendment; (iii) a Section 1983 claim for violation of equal protection

17 rights under the Fourteenth Amendment; (iv) a Section 1983 claim for violation of rights against

18 unreasonable search and seizure under the Fourth Amendment; (v) a claim for conspiracy to

19 violate constitutional rights under 42 U.S.C. § 1985(3); and (vi) a *Monell* claim. Doc. No. 128.

20                                    **LEGAL FRAMEWORK**

21    Under Federal Rule of Civil Procedure 12(b)(6), a cause of action may be dismissed where

22 a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

23 Dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the

24 absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar,

25 646 F.3d 1240, 1242 (9th Cir. 2011); Johnson v. Riverside Healthcare Sys., LP, 534 F.3d 1116,

26 1121−22 (9th Cir. 2008). To survive a Rule 12(b)(6) motion for failure to allege sufficient facts, a

27 complaint must include a "short and plain statement of the claim showing that the pleader is

28 entitled to relief." Fed. R. Civ. P. 8(a)(2). Compliance with this rule ensures that the defendant has

"fair notice of what the ... claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)) (internal quotation marks omitted). Under this standard, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570) (internal quotation marks omitted). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. Id. at 663 (citation omitted).

In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. See Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015); Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008). But the Court is "not 'required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.' " Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoted source omitted). Complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Iqbal, 556 U.S. at 678; Johnson v. Fed. Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015). Rather, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quoting Iqbal, 556 U.S. at 678).

"If the running of [a] statute [of limitations] is apparent on the face of the complaint, the defense may be raised by a motion to dismiss." Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980) (citations omitted). A motion to dismiss based on the running of a statute of limitations period, however, may be granted only "if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1206–07 (9th Cir. 1995) (quoting Jablon, 614 F.2d at 682) (internal quotation marks omitted). "In fact, a complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness

9

of the claim." Id. (citing Jablon, 614 F.2d at 682).

If a motion to dismiss is granted, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Henry A. v Willden, 678 F.3d 991, 1005 (9th Cir. 2012) (quoted source omitted).

## DISCUSSION

The County Defendants make several arguments for dismissal. First, they contend, in a suite of interrelated arguments, that JDC's claims are barred by the receivership action under the doctrines of res judicata and collateral estoppel and because they were compulsory counterclaims under Section 426.30 of the California Code of Civil Procedure. Doc. No. 136 at 14:9-16:14, 18:4-20:24. Second, they contend that certain of JDC's claims are time-barred. Id. at 16:15-18:3. Third, they contend that statutorily created entities, such as JDC, cannot assert a substantive due process claim and that JDC can state nothing beyond a Fourth Amendment or equal protection claim because, unlike Cox, it was not subject to alleged improprieties in the prosecution of the criminal case. Id. at 21:4-22:1. Fourth, they contend that Cox's procedural due process claim and JDC's procedural due process claim must be dismissed because the FAC fails to identify any actions allegedly taken by the County Defendants that would constitute a procedural due process violation. Id. at 22:2-24:28. And fifth, they contend that JDC cannot show the class-based animus required for a claim under 42 U.S.C. § 1985(3). The Court will address each of these arguments in turn.

### A.    Compulsory Cross-Claims

The County Defendants contend that JDC's claims against them in this action are barred by Section 426.30 of the California Code of Civil Procedure because they "constitute compulsory cross-claims that JDC should have filed in the Receivership Action." Doc. No. 136 at 14:12-20. According to the County Defendants, JDC "is engaging in impermissible forum shopping by bringing this lawsuit against the County in federal court." Id. at 15:13-16:14.

California's compulsory cross-claim statute provides as follows:

Except as otherwise provided by statute, if a party against whom a complaint has

1      been filed and served fails to allege in a cross-complaint any related cause of action
which ... he has against the plaintiff, such party may not thereafter in any other
2      action assert against the plaintiff the related cause of action not pleaded.

3  Cal. Civ. Proc. Code § 426.30.

4      A "related cause of action" is defined as a "cause of action which arises out of the same

5  transaction, occurrence, or series of transactions or occurrences as the cause of action which the

6  plaintiff alleges in his complaint." Cal. Civ. Proc. Code § 426.10, subd. (c); <u>Saunders v. New</u>

7  <u>Capital for Small Businesses, Inc.</u>, 231 Cal. App. 2d 324, 336 (1964) (finding that the term

8  "transaction "is not confined to a single, isolated act or occurrence ... but may embrace a series of

9  acts or occurrences logically interrelated"). The Ninth Circuit has held that federal courts can

10  dismiss claims that should have been brought as cross-claims under Section 426.30 in an earlier-

11  filed state court lawsuit. <u>See</u> <u>Pietak v. State Farm Fire & Cas. Co.</u>, 1999 WL 599478, at *1 (9th

12  Cir. Aug. 20, 1999) (affirming district court's dismissal of a Section 426.30 compulsory cross-

13  claim under Rule 12(b)(6)); <u>Cheiker v. Prudential Ins. Co. of Am.</u>, 820 F.2d 334, 337 (9th Cir.

14  1987) (similar).

15      As the Court of Appeal stated, the receivership action was a "suit for nuisance abatement,"

16  Doc. No. 137-3 at 3, turning on the condition of the Property relative to standards set forth in state

17  and local law pertaining to building, health, safety and land use. <u>See</u> Doc. No. 137-1. The claims

18  against the County Defendants in this case, by contrast, arise from the conduct of the County in

19  the context of a criminal investigation, criminal prosecution, property inspection and receivership

20  proceeding relative to standards established by certain amendments to the United States

21  Constitution. <u>See</u> Doc. No. 128. The Court therefore finds that the claims in this case do not arise

22  from "the same transaction, occurrence or series of transactions or occurrences" as the claims in

23  the receivership action and are therefore not barred as compulsory cross-claims under Section

24  426.30, subdivision (a), of the California Code of Civil Procedure.

25  **B.**     **<u>Collateral Estoppel and Res Judicata</u>**

26      The County Defendants argue that all of JDC's claims are barred by the receivership action

27  under the doctrines of res judicata and collateral estoppel. Doc. No. 136 at 18:6-20:24.

28      The Court finds, at the threshold, that neither res judicata nor collateral estoppel applies

based on the receivership action because "only proceedings that meet the minimal requirements of due process are accorded preclusive effect" in federal court. See Commc'ns Telesystems Int'l v. California Pub. Util. Comm'n, 196 F.3d 1011, 1018 (9th Cir. 1999) (citing Kremer v. Chem. Const. Corp., 456 U.S. 461, 483 (1982)). As a general rule, a proceeding that does not provide a party with a " 'full and fair opportunity' to litigate" does not have preclusive effect. Kremer, 456 U.S. at 480-81; cf. Bridge Aina Le'a, LLC v. Land Use Comm'n, 950 F.3d 610, 639 (9th Cir. 2020), cert. denied sub nom. Bridge Aina Le'a, LLC v. Hawaii Land Use Comm'n, 141 S. Ct. 731 (2021) ("Federal courts will not afford preclusive effect to a prior state court judgment if the party lacked a full and fair opportunity to litigate the issue on the merits."); United States v. Banco Intrenacional/Bital S.A., 110 F. Supp. 2d 1272, 1279 (C.D. Cal. 2000) ("For claim preclusion purposes, the requirement of a full and fair opportunity to litigate stems from the right to procedural due process."). Records subject to judicial notice show that the Property was put into receivership based solely on declarations proffered by the County, without trial or even an evidentiary hearing in which JDC could offer testimony or cross-examine declarants. See, e.g. Doc. No. 137-3. Further, the Court sees no factual findings in the order appointing the receiver as to individual alleged violations on the Property. See, e.g. Doc. No. 137-2. The Court, therefore, agrees with Justice Poochigian's assessment as to the constitutionality of the receivership action (which was echoed by Judge Moody[5]) and declines, for lack of due process, to give the receivership action preclusive effect here.

Further, the Court finds that collateral estoppel does not apply for two additional reasons. First, the County Defendants have not met their burden to show which relevant issues were supposedly decided in the receivership action. Hernandez v. City of Los Angeles, 624 F.2d 935, 937 (9th Cir. 1980) ("[t]he burden of pleading and proving the identity of issues rests on the party asserting the estoppel" and "[t]o sustain this burden a party must introduce a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action" (citations omitted)). And second, the fact that JDC was not afforded a "full and fair opportunity" to litigate

---

[5] The Court also notes, with concern, Judge Moody's findings in the discharge order as to, *inter alia*, irregularities in receivership accounting, the lack of meaningful judicial oversight for the receiver, and the gross disparity between the total cost of the receivership, on the one hand, and the cost of remediation, on the other.

1  alleged code violations in the receivership action precludes collateral estoppel, regardless of the

2  constitutional due process considerations addressed above. Allen v. McCurry, 449 U.S. 90, 95

3  (1980).

4        Finally, since JDC was a defendant—not a plaintiff—in the receivership action, res

5  judicata could only apply here to the extent it "bars a claim that should have been pled as a

6  compulsory counterclaim." Sands v. Reimers, 50 F.3d 16 (9th Cir. 1995) (citing Dragor Shipping

7  Corp. v. Union Tank Car Co., 378 F.2d 241, 244 (9th Cir.1967)). In other words, the County

8  Defendants' res judicata argument is duplicative of their Section 426.30 argument. As set forth

9  above, the claims at issue here (regarding the allegedly unconstitutional conduct of the County

10 Defendants in connection with multiple government actions) were not compulsory counterclaims

11 in the receivership action, which was, at bottom, a "nuisance action" turning on the use and

12 physical condition of the Property. See Doc. No.  The res judicata argument therefore fails.

13       For the foregoing reasons, the Court finds that the receivership action does not bar

14 litigation of any claims or issues in this case.

15 **C.**      **JDC's Substantive Due Process Claim**

16       The County Defendants contend that, unlike Cox, JDC cannot state a substantive due

17 process claim because JDC is a "strictly artificial being created by law" and therefore "does not

18 have a fundamental right on par with a natural person's right to 'marriage, family, procreation, and

19 bodily integrity' that warrants substantive due process protection." Doc. No. 136 at 21:4-16.

20       This argument fails because it incorrectly assumes that JDC's substantive due process

21 claim is predicated on a privacy right, when it is in fact based on various species of property

22 rights. See Doc. No. 128 ¶ 161 ("Plaintiff JDC is [] entitled to due process rights in its business

23 interests and ownership interests in its property in Mariposa County."). It is well settled that

24 substantive due process claims can arise from property rights, cf. Brennan v. Stewart, 834 F.2d

25 1248, 1257 (5th Cir.1988) ("It is generally well established that a violation of substantive due

26 process occurs only when the government deprives someone of a protected liberty or property

27 interest. "), and that legal entities—including limited liability companies and corporations—can

28 bring such claims. See, e.g., N. Pacifica LLC v. City of Pacifica, 526 F.3d 478, 485 (9th Cir. 2008)

(deciding substantive due process claim brought by an LLC in connection with alleged infringement of property rights); Crown Point Dev., Inc. v. City of Sun Valley, 506 F.3d 851, 857 (9th Cir. 2007) (recognizing that incorporated property developer could state a substantive due process claim in connection with property rights); see also Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 545 (2005) (recognizing "substantive due process challenges to government regulation" affecting corporations). This argument is, therefore, without merit.

The County Defendants further argue that JDC's substantive due process claim "must be analyzed under the Fourth Amendment or the Equal Protection Clause" because, unlike Cox, "JDC was not the subject of any criminal prosecution." Doc. No. 136 at 21:19-22. According to the County Defendants, JDC's substantive due process claim is based solely on "the seizure of its property through an alleged discriminatory and selective code enforcement action." Id. at 21:25-28.

The Ninth Circuit, however, has recognized the potential viability of a substantive due process claim for abuse of process where misconduct is sufficiently egregious. See Johnson v. Barker, 799 F.2d 1396, 1400 (9th Cir. 1986) (recognizing that abuse of process could violate substantive due process where it "offends those canons of decency and fairness which express the notions of justice of English-speaking peoples," but finding that the conduct in question did not rise to that level); see also Danielson v. Inslee, 945 F.3d 1096, 1102 (9th Cir. 2019) (following Janus v. Am. Fed'n of State, Cnty. & Mun. Emps., Council 31; AFL-CIO, 942 F.3d 352, 365 (7th Cir. 2019) and finding that abuse of process was the "best analogy" for plaintiffs' Section 1983 claim).

Courts look to elements of an abuse of process claim under state law to determine whether an analogous Section 1983 claim has been stated. Hunley v. Breceda, 2010 WL 11582944, at *15–16 (C.D. Cal. Jan. 4, 2010) (assuming for purposes of analysis that a Section 1983 action for abuse of process can be maintained and finding that "such a claim would incorporate the elements of the tort of abuse of process under California law"); Campbell v. City of Bakersfield, 2006 WL 2054072, at * 21 (E.D. Cal. Jul. 21, 2006) (Ishii, J.) (similar).

Under California law, "[t]he essence of the tort 'abuse of process' lies in the misuse of the

power of the court; it is an act done in the name of the court and under its authority for the purpose of perpetrating an injustice ....” Flores v. Emerich & Fike, 416 F. Supp. 2d 885, 904 (E.D. Cal. 2006) (quoted source and internal quotation marks omitted). As set forth by the California Supreme Court, “the two fundamental elements of the tort of abuse of process [are] ‘first, an ulterior purpose, and second, a wilful act in the use of the process not proper in the regular conduct of the proceeding.’ ” Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc., 42 Cal. 3d 1157, 1168–70 (1986) (quoting In Templeton Feed & Grain v. Ralston Purina Co., 69 Cal.2d 461, 466 (1968)).

Here, JDC alleges, in essence, that the County Defendants used investigative and prosecutorial powers at their disposal under both criminal law and civil law to hobble Cox, as JDC’s sole owner and operator, and bring a receivership action against JDC that was intended not to remedy conditions at the Property (the purpose of Section 17980 of the California Health and Safety Code), but to deprive JDC of the Property, while inflicting extra-legal punishment on Cox as the County’s criminal case against him fell apart. See, e.g., Doc. No. 128 ¶ 165 (“Defendants intentionally, in bad faith, and recklessly used false allegations from the criminal case, that they knew were false, to obtain search warrants, false declarations from County officials for exaggerated health and safety code violations, and used the code enforcement action and receivership process to levy unconstitutional fines, fees and liens on Plaintiffs’ property with the express aim of evicting Cox from his home and selling Plaintiffs’ land and property for profit.”). In the Court’s view, such allegations satisfy the “ulterior purpose” element of an abuse of process claim. Cf. Suthoff v. Yazoo Cnty. Indus. Dev. Corp., 722 F.2d 133, 136 (5th Cir. 1983) (recognizing a Section 1983 claim based on abuse of process where plaintiff alleged that defendants conspired to have a city initiate proceedings to expropriate plaintiff’s property).

Further, JDC alleges that the County Defendants secured the warrant for the overbroad inspection of the Property through affidavits they knew to contain false information; grossly exaggerated the number and magnitude of code violations on the Property; and selected an unscrupulous receiver practiced in the art of expropriation that would go along with their scheme. See, e.g., Doc. No. 128 ¶¶ 114 (“Except for minor issues which could have easily and cheaply

been resolved without evicting Cox from his home …, the vast majority of the 101 alleged code violations were phony and simply made up or grossly exaggerated …"), 47 (alleging that the receiver selected by the County had a practice of using "alleged code violations as a pretext to seize properties from law abiding citizens" by "run[ning] up inflated and phony receivership bills, and us[ing] the receivership bills … to foreclose on … and sell the properties"). In the Court's view, such allegations satisfy the willful, improper act element of an abuse of process claim. See Oren Royal Oaks Venture, 42 Cal. 3d at 1168–70.

The Court therefore finds that JDC has stated a substantive due process claim based on abuse of process.

**D.    Plaintiffs' Procedural Due Process Claims**

The County Defendants contend that "the FAC is devoid of any allegations of actions taken by the County Defendants that constitute a procedural due process violation" and that the Court should therefore dismiss Cox's procedural due process claim and JDC's due process claim with prejudice. Doc. No. 128 at 22:2-24:28. The Court will address each claim in turn.

**1.    Cox's Procedural Due Process Claim**

The County Defendants argue that Cox was given a probable cause hearing after his arrest, and that Cox's allegations that the County Defendants "failed to properly investigate his case and failed to provide timely discovery" bear only on "Cox's claim that his Fourth Amendment rights were violated when he was allegedly arrested without probable cause." Doc. No. 136 at 22:16-26.

The Ninth Circuit has found, however, that malicious prosecution can provide the basis for "a valid procedural due process claim" where it "is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights." Johnson, 799 F.2d at 1400 (quoting Bretz v. Kelman, 773 F.2d 1026, 1031 (9th Cir. 1985)); Cline v. Brusett, 661 F.2d 108, 112 (9th Cir. 1981) (same); Hill v. Clovis Police Dept., 2011 WL5828224, at *4 (E.D. Cal. Nov. 18, 2011) (Ishii, J.) (stating that procedural due process claim must allege deprivation of a "specific constitutional right" (citing Portman v. County of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993)).

Further, the Ninth Circuit has held that a plaintiff can recover on a procedural due process

claim on a showing that defendants either "continued their investigation of plaintiff despite the fact that they knew or should have known [plaintiff] was innocent" or "used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." Belinda K. v. Cnty. of Alameda, 2011 WL 2690356, at *10 (N.D. Cal. July 8, 2011) (quoting Costanich v. Dep't of Soc. & Health Servs., 627 F.3d 1101, 1111 (9th Cir. 2009)); Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir.2001).

The Court has already found that Cox's claim against the County Defendants in connection with the management of the criminal case is in the vein of malicious prosecution and that Cox has adequately alleged improprieties on the part of state actors in the perpetuation of the criminal case, including allegations that the County Defendants continued to engage in evidentiary improprieties after the case commenced and continued to prosecute Cox even though they knew he was innocent. Doc. No. 123 at 20:14-21:21. Further, it goes without saying that Cox had, at a minimum, a constitutionally protected liberty interest at risk in the criminal case. The Court therefore declines to dismiss Cox's procedural due process claim against the County Defendants for failure to state a claim.

**2. JDC's Procedural Due Process Claim**

The County Defendants argue that JDC was afforded due process prior to the appointment of the receiver because the County complied with the notice requirements in Section 17980 of the California Health and Safety Code by giving JDC more than 30 days for abatement and properly served JDC with the N&O, as well as notice of the Receivership Complaint. Doc. No. 136 at 23:21-24:16. Further, the County Defendants argue that the Court of Appeal rejected JDC's due process arguments with respect to the receivership action and that JDC is barred by the doctrines of res judicata and collateral estoppel from relitigating such issues here. Id. at 24:22-25.

Plaintiffs argue that JDC's procedural due process claim is validated by Judge Moody's discharge order stating that asset forfeiture laws such as Section 17980 "incentivize misuse by police and governmental agencies" and that "the court [was] haunted … by Justice Poochigian's [] contention that even if a trial [was] not statutorily required …, federal constitutional due process principles should have required an evidentiary hearing" prior to appointment of a receiver. Doc.

No. 148 at 27:2-18. Further, Plaintiffs state that JDC was deprived of a "trial on the merits" with respect to the condition and disposition of the Property and that JDC is "now requesting a trial on the merits regarding the constitutional infirmities present in the code enforcement and civil forfeiture process." Id. at 27:18-21.

The Court agrees with the County Defendants that—despite the many troubling issues identified by Justice Poochigian, Judge Moody and this Court, see, e.g. Doc. No. 44 (chronicling the Property's suspect inspection history)—the question of whether JDC was provided with due process in the receivership action cannot be relitigated here. See Turnbow v. Pac. Mut. Life Ins. Co., 934 F.2d 1100, 1103 (9th Cir. 1991) ("Federal district courts, as courts of *original* jurisdiction, may not serve as appellate tribunals to review errors allegedly committed by state courts." (quoted sources and internal quotation marks omitted) (emphasis original)); but see Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot., 560 U.S. 702, 714 (2010) ("Our precedents provide no support for the proposition that takings effected by the judicial branch are entitled to special treatment, and in fact suggest the contrary."). As set forth above, however, the gravamen of JDC's claims against the County Defendants is abuse of process involving the falsification of evidence and culminating in the deprivation of constitutionally protected property rights. In the Court's view, the wrongdoing alleged by JDC is analogous to the wrongdoing alleged by Cox and the Court declines to dismiss JDC's procedural due process claim for the same reasons it declines to dismiss Cox's procedural due process claim.

**E.**     **42 U.S.C. § 1985(3) Claim**

The County Defendants contend that Plaintiffs claim for civil conspiracy under 42 U.S.C. § 1985(3) must be dismissed because Plaintiffs fail to allege that any of the actions taken by the County Defendants were "motivated by racial or other class-based animus," Doc. No. 136 at 25:24-28, and that a "class of one theory" does not provide a valid basis for a Section 1985(3) claim." Id. at 26:8-15. Plaintiffs argue that this is a "highly unusual matter where the FAC alleges, in essence, that the County Defendants did not like [] Cox for a variety of seemingly superficial reasons" and therefore "mustered the resources of law enforcement" to ruin him and profit from his destruction. Doc. No. 148 at 30:16-21. Similarly, Plaintiffs contend that Cox is entitled to

protection as a defendant in a sexual assault case and as "one of a class of citizens, caught up in the all powerful machinery of government run amok." Id. at 32:1-7.

As the County Defendants note, district courts are required "to exercise restraint in extending [Section] 1985(3) beyond racial prejudice." Butler v. Elle, 281 F.3d 1014, 1028 (9th Cir. 2002), and Plaintiffs provide no authority showing that Section 1985(3) applies to any of the groups he identifies. See id. (Section 1985(3) should "not be extended to every class which the artful pleader can contrive" (quoted source and internal quotation marks omitted)). Further, the County Defendants are correct that a Section 1985(3) claim cannot be based on a "class of one" theory. See, e.g., Bennett v. Cty. of Shasta, 2016 WL 3743151, at *9 (E.D. Cal. July 13, 2016) ("Membership in a 'class of one' is plainly insufficient to entitle Plaintiff to relief under § 198[5](3).").

This is Cox's second attempt at pleading a Section 1985(3). See Doc. No. 123 at 35:3-6. The Court sees no reason to believe either Plaintiff can cure the pleading defects identified here and Plaintiffs' Section 1985(3) claims will therefore be dismissed with prejudice. See Willden, 678 F.3d at 1005.

**F.   Statute of Limitations**

The County Defendants argue that JDC's claims are barred by the two-year statute of limitations in Section 335.1 of the California Code of Civil Procedure because they "cannot be held liable for the actions taken by the Court Receiver and the Mariposa County Superior Court after the Court Receiver was appointed on July 17, 2017." Doc. No. 136 at 17:12-14 (emphasis original).

Four of the six claims alleged by JDC against the County Defendants require statute of limitations analysis: (i) the substantive due process claim; (ii) the procedural due process claim; (iii) the equal protection claim; and (iv) the unreasonable search and seizure claim.[6] See Doc. No. 128.

"A procedural due process claim has two distinct elements: (1) a deprivation of a

_____

[6] JDC's *Monell* claim is derivative of other causes of action and as set forth above, Plaintiffs' Section 1985(3) claims will be dismissed with prejudice.

1 constitutionally protected liberty or property interest, and (2) a denial of adequate procedural

2 protections." Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist., 149 F.3d 971, 982 (9th Cir.

3 1998). Substantive due process, for its part, "forbids the government from depriving a person of

4 life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights

5 implicit in the concept of ordered liberty.' " United States v. Salerno, 481 U.S. 739, 746 (1987)

6 (quoted sources and internal quotation marks omitted); Corales v. Bennett, 567 F.3d 554, 568 (9th

7 Cir. 2009). As set forth by the United States Supreme Court, "accrual analysis" for a Section 1983

8 claim "begins with identifying 'the specific constitutional right' alleged to have been infringed,"

9 McDonough v. Smith, 39 S. Ct. 2149, 2155 (2019) (citation omitted), which in turn "depends

10 upon the substantive basis of the claim." Cabrera v. City of Huntington Park, 159 F.3d 374, 380

11 (9th Cir. 1998), disapproved of on other grounds by Shalabi v. City of Fontana, 11 Cal. 5th 842

12 (2021).

13     As stated above, the gist of JDC's substantive due process claim and procedural due

14 process claim is deprivation of one or more constitutionally protected property rights through

15 abuse of an infirm receivership process in which the County Defendants engaged in evidentiary

16 improprieties and selected a complicit receiver for the improper purpose of expropriating JDC.

17 Given the nature of the wrongdoing and harm alleged, the Court does not see how either the

18 substantive due process claim or the procedural due process claim could accrue before the

19 property deprivation occurred, see Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1574

20 (11th Cir. 1989) (stating that a "challenged decision" must be "final" before a plaintiff can bring a

21 substantive due process claim for deprivation of property rights) or the receivership action (as the

22 process allegedly abused) was complete. Brownstein v. Aldan, 2018 WL 3521411, at *7 (D. N.

23 Mar. I. July 23, 2018) (stating that "[b]y definition, a lawsuit in its entirety cannot constitute an

24 abuse of process when it has not yet been concluded" (quoting Access Fin. Lending Corp. v.

25 Keystone State Mortgage Corp., 1996 WL 544425, *5 and n.3 (W.D. Pa. Sept. 4, 1996));

26 Giordano v. Claudio, 714 F. Supp. 2d 508, 533 (E.D. Pa. 2010) (similar). The superior court order

27 confirming the sale of the Property was issued on October 5, 2019 and the order discharging the

28 receiver, which apparently brought the receivership action to a close, was not issued until February

3, 2022. The Court therefore finds that neither the substantive due process claim nor the procedural due process claim is time-barred.

The gist of JDC's equal protection claim is that the County singled JDC out and does not use Section 17980 of the California Health and Safety code to expropriate other large landowners within its jurisdiction. See Doc. No. 138 ¶ 190 (alleging that "the County engaged in selective enforcement and discrimination against … JDC" and that "the County rarely if ever uses code enforcement and a receiver to seize large ranches and farms from their property owners over minor repairs"). The alleged discriminatory application of Section 17980—and thus the alleged violation of equal protection—necessarily continued for as long as the County was prosecuting the receivership action, which (again) lasted at least until Judge Moody issued his discharge order earlier this year. The Court therefore cannot find that JDC's equal protection claim is time-barred.

The Court agrees with the County Defendants, however, that tolling under Section 945.3 of the California Government Code does not apply to JDC since JDC was not a criminal defendant in California superior court during the relevant period, see Cal. Gov. Code § 945.3, and that JDC's unreasonable search and seizure claim is time-barred because the October 14, 2016 inspection of the Property that led to the receivership action occurred nearly three years before this case was filed. See Cordova v. Imperial Cnty. Narcotics Task Force, 2022 WL 84409, at *6 (S.D. Cal. Jan. 7, 2022) (a Fourth Amendment claim "begins accruing at the time of the search and seizure" (citing Belanus v. Clark, 796 F.3d 1021, 1025-27 (9th Cir. 2015)). Further, assuming the order appointing the receiver on July 17, 2017 constituted a seizure, that, too, occurred more than two years before this action was filed and, in any event, the County Defendants are obviously not liable for actions taken by the California superior court.

**G.    Amendments to the FAC**

The County Defendants contend that Plaintiffs' claim for punitive damages must be dismissed to the extent it is alleged against the County because no punitive damages can be sought against a public entity. Doc. No. 136 at 26:19-27:5. Further, the County Defendants contend that Plaintiffs' claim for damages under 18 U.S.C. § 1964 must be dismissed because the FAC contains no RICO claim. Id. at 136 at 27:8-19. Plaintiffs concede that the County—as opposed to

21

individual law enforcement officers—is not subject to punitive damages and state that they will amend the FAC to eliminate all references to any punitive damages claim against the County. Doc. No. 148 at 32:9-18. Similarly, Plaintiffs state that they will amend the FAC to "drop all references" to RICO damages. Id. at 32:21-28.

Finally, Plaintiffs request leave to amend the FAC to "add back the cause of action for conspiracy under Section 1983 as inadvertently omitted in the FAC as a stand-alone cause of action present in the original complaint." Doc. No. 148 at 33:2-7. The County Defendants have not raised an objection to that request and it will therefore be granted.

**H.  Joinder**

Harris filed a notice on January 4, 2022 stating that she joined the County Defendants' motion to dismiss the FAC on the ground that, with the exception of the County's objection to Plaintiffs' punitive damages claim, the County Defendants' dismissal arguments were "equally applicable" to her. Doc. No. 139 at 2. The request for joinder was filed before Plaintiffs filed their opposition to the Defendants' motions to dismiss and Plaintiffs have not objected to the request. See Doc. No. 148 at 5. It will therefore be granted.

**CONCLUSION**

For the foregoing reasons, JDC's unreasonable search and seizure claim will be dismissed with prejudice as to the County Defendants and Harris, on the grounds that it is time-barred. Further, JDC's 42 U.S.C. § 1985(3) claim and Cox's 42 U.S.C. § 1985(3) claim will be dismissed with prejudice as to the County Defendants and Harris for failure (and inability) to allege membership in a protected class.

In addition, Plaintiffs will be ordered to amend the FAC to eliminate all references to damages under 18 U.S.C. § 1964 and all references to punitive damages against Mariposa County. Finally, Plaintiffs will be granted leave to amend the FAC to add back the Section 1983 conspiracy claim alleged as the Eleventh Claim for Relief in the Complaint. Doc. No. 1 at 65. The Court denied the Defendants' motions to dismiss the Section 1983 conspiracy claim as pled in the Complaint. Doc. No. 122 at 18:4-5; Doc. No. 123 at 48:7. Thus, none of the amendments authorized here appear to justify additional motion practice at this juncture. Further, the Court has

already adjudicated at least seven pre-answer motions in this case. The Defendants—including the County Defendants and Harris—will therefore be ordered to answer the Second Amended Complaint unless there is a good faith basis, consistent with Rule 11 of the Federal Rules of Civil Procedure and prior orders in this case, for responding in some other fashion.

## ORDER

Accordingly, IT IS HEREBY ORDERED that the County Defendants' motion to dismiss the First Amended Complaint ("FAC") (Doc. No. 135) is GRANTED IN PART and DENIED IN PART as follows:

1. The Fourth Claim for Relief is DISMISSED WITH PREJUDICE to the extent it is brought by JDC Land Company, LLC for unlawful search and seizure in violation of the Fourth Amendment to the United States Constitution;

2. The Fifth Claim for Relief under 42 U.S.C. § 1985(3) is DISMISSED WITH PREJUDICE in its entirety as to both Plaintiffs and all Defendants (including Mariposa County, Atkinson, Smith and Harris);

3. Plaintiffs shall file a Second Amended Complaint ("SAC") consistent with this Order within 7 days of the date of electronic service of this Order;

4. All Defendants (including Mariposa County, Atkinson, Smith and Harris) will have 14 days from the date of electronic service of the SAC to ANSWER the SAC, unless they can show a good faith basis, consistent with Rule 11 of the Federal Rules of Civil Procedure and the Court's prior orders in this case, for responding in some other fashion;

5. In any event, all responses to the SAC must be filed within 14 days of the date of electronic service of the SAC; and

6. This case is referred back to the Magistrate Judge for further proceedings consistent with this Order and the Court's September 13, 2022 Order denying Harris's motion to dismiss (Doc. No. 166).

/ / /

/ / /

23

IT IS SO ORDERED.

Dated:   September 30, 2022

SENIOR  DISTRICT  JUDGE